ACCEPTED
15-25-00060-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/9/2025 5:13 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/9/2025 5:13:09 PM
CHRISTOPHER A. PRINE
Clerk

No. 15-25-00060-CV

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

Marvin Glenn Berry and Bonnie Berry as Successor in Interest to
Dennis Wayne Berry,

*Appellants,*

v.

Albert Theodore Powers and Allied Ports, LLC,

*Appellees.*

Trial Court Case No. 24-BC11A-0025
Business Court Division 11A
Travis County, Texas

## APPELLEES' MOTION FOR REFERRAL OF ENFORCEMENT PROCEEDINGS TO THE TRIAL COURT

BECK REDDEN LLP

Mary Kate Raffetto
State Bar No. 24098296
mkraffetto@beckredden.com
M. Jake McClellan
State Bar No. 24109525
jmcclellan@beckredden.com
Madeline E. Gay
State Bar No. 24138681
mgay@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
T: (713) 951-3700
F: (713) 951-3720

GREENBERG TRAURIG, LLP

Elizabeth G. "Heidi" Bloch
State Bar No. 02495500
heidi.bloch@gtlaw.com
300 W. 6th Street, Suite 2050
Austin, Texas 78701
T: (512) 320-7253
F: (512) 320-7210

GREENBERG TRAURIG, LLP

Roland Garcia
State Bar No. 7645250
garciar@gtlaw.com
Cara Mittleman Kelly
State Bar No. 24074518
cara.kelly@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
T: (713) 374-3500
F: (713) 374-3505

COUNSEL FOR APPELLEES ALBERT THEODORE POWERS AND ALLIED PORTS, LLC

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

Pursuant to Rule 29.4, Appellees Allied Ports, LLC and Albert Theodore Powers respectfully request an order from this Court referring to the 11th Division Business Court the issue of enforcement of the Business Court's April 3, 2025, temporary injunction order that is currently on appeal in this proceeding ("TI Order") and instructing the Business Court to hear evidence and grant appropriate relief. Appellees show as follows:

## I. Introduction

Appellees believe that Appellants Marvin Berry and Bonnie Berry have violated the TI Order they have appealed. Appellees contend that, among other violations, Appellants have violated the TI Order by continuing to request relief from the 94th Judicial District Court of Nueces County, Texas Cause No. 2024-DCV-0045-C, styled *Lawrence Berry, et al. v. Marty Berry, et al.* ("Nueces County Lawsuit"), that should be adjudicated in the Business Court. For example, Appellants, directly, through counsel, and/or through entities they control, have filed a motion for summary judgment in the Nueces County Lawsuit, asking that court to adjudicate that Berry GP, Inc. and/or Redfish Bay Terminals, Inc. (entities Appellants control) own, control, and/or exclusively manage an entity called Axis Midstream Holdings, LLC ("Axis"). Appellants have set that motion for summary judgment for hearing on December 11, 2025.

Axis is critically important to the Lone Star Ports Project that is the subject of the underlying lawsuit in the Business Court (the "Project") as it holds several valuable permits to develop the Project. Ownership and management of Axis has been and continues to be a disputed issue in the underlying lawsuit in the Business Court and was a primary focus of the TI Order that is currently before this Court. Appellants, however, wish to have the issue of ownership, control, and management of Axis decided instead by the 94th Judicial District Court in Nueces County ("Nueces County Court") despite that this precise issue was first pending before the Business Court and is largely the subject of the Business Court's TI Order.[1]

## II.    Relief requested

As discussed in more detail below, Appellees first raised their concerns about Appellants' violations of the TI Order before the Business Court in November 2025. The Business Court instructed that Appellees file their application for a show cause order, which they did on November 25, 2025, along with the Nueces County Court's notice of hearing for December 10, 2025, at 10:00 a.m. App. D. The Business Court then issued an Order on

---

[1] *See* Case Detail; *In re Lone Star Ports Enterprises, et al.* pending in the Texas Supreme Court, wherein relators (parties aligned with Appellees) ask that Court to grant mandamus relief based on the dominant and first-acquired jurisdiction of the Business Court over the ownership and management of Axis and other Project-related entities and their properties.

December 3, 2025, ordering Appellants to appear for a show cause hearing for December 10, 2025, at 10:00 a.m. ("Show Cause Order"); App. A.

On December 8, 2025, Appellant Bonnie Berry filed in the Business Court an Emergency Motion to Vacate Show Cause Order based on Texas Rule of Appellate Procedure 29.4. "Berry Emergency Motion;" App. B. Appellant Marvin Berry filed a joinder thereto. App. B(b). Appellees are mindful that Rule 29.4 states that while an interlocutory appeal is pending, "only the appellate court in which the appeal is pending may enforce the [interlocutory] order." In response, Appellees notified the Business Court that they would seek referral of enforcement proceedings from this Court to the Business Court.

Subsequently, at 4:41 p.m. on December 8, 2025, the Business Court signed an Order abating its December 3 Show Cause Order and cancelling the December 10 hearing "pending resolution of Plaintiffs' request for a referral of enforcement of the TI Order made subject of Case No. 15-25-00060-CV." App. G.

Simply issuing the Show Cause Order, which has now been temporarily abated, is not an enforcement proceeding. *See Kruegel v. Williams*, 153 S.W. 903, 904 (Tex. App.—Dallas 1913, writ ref'd) ("The result of a contempt proceeding has not directly the office of enforcing a decree, but to punish an

offender for violation of duty, and warning him that the decrees of courts are not to be lightly regarded."); *see also Cadle Co. v. Lobingier*, 50 S.W.3d 662, 670 (Tex. App.—Fort Worth 2001, pet. denied) (noting that the *Kruegel* court distinguished a contempt proceeding from an enforcement proceeding).

Therefore, Appellees request that this Court refer to the Business Court the issue of enforcement of the TI Order with instructions to unabate the Show Cause Order, hold an evidentiary show cause hearing as soon as possible, and grant appropriate relief. *See* Tex. R. App. P. 29.4 ("the appellate court may refer any enforcement proceeding to the trial court with instructions to: (a) hear evidence and grant appropriate relief").

## III. The need for an urgent ruling.

This request is urgent because of Appellants' continuing attempts to have the Nueces County Court adjudicate the issues, such as ownership, management, and control of Axis, before the Business Court can do so. Appellants are engaging in these tactics despite that: 1) the TI Order remains in effect; 2) the Business Court first obtained jurisdiction over these issues; and 3) this Court denied Appellants' petition for writ of mandamus seeking to overturn the Business Court's jurisdictional and venue rulings. *See In re Marty Berry, et al.*, No. 15-25-00016-CV, in the Fifteenth Court of Appeals.

As noted above, Appellants are asking the Nueces County Court to adjudicate ownership of Axis at the summary judgment hearing on December 11, 2025. Parties aligned with Appellees in the referenced mandamus proceeding (*see* fn. 1) have asked the Texas Supreme Court to stay the December 11th summary judgment hearing in the Nueces County Lawsuit. But as of this filing, the Supreme Court has not yet issued the requested stay.[2] In the event that stay is not ordered, a show cause hearing before the Business Court becomes imperative since one of the alleged contempt actions is Appellants' asking the Nueces County Court to adjudicate the issue of ownership, management, and/or control of Axis on December 11, 2025.

The urgency of Appellees' request is largely due to the tactical delay by Appellants in seeking a stay of the Show Cause Order. Appellees first raised the issue of Appellants' contempt of the TI Order in a November 3, 2025 letter brief to the Business Court. App. C. However, not until December 8, just two days before the previously scheduled hearing, did Appellants ever suggest or raise the issue that only this Court may enforce the TI Order pending appeal, despite not raising such objections in their Objections to the

---

[2] The Supreme Court asked Real Parties in Interest (parties aligned with Appellants in this case) to file a response to the request for an emergency stay by 4:30 p.m. on December 8, 2025. Relators filed their reply on December 9, 2025.

proposed Show Cause Order filed on December 1, 2025, the deadline set by the Business Court to file any such objections. App. F.

Counsel for Appellees contacted counsel for Appellants via email on December 8 and 9, 2025, regarding the relief sought herein and Appellants are opposed to this motion.

## CONCLUSION

Appellees respectfully request that this Court issue an order pursuant to Texas Rule of Appellate Procedure 29.4 referring to the Business Court the issue of enforcement of the TI Order with instructions to conduct an evidentiary show cause hearing relating to Appellant's violations of the Business Court's TI Order as soon as possible and grant appropriate relief.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:*/s/ Elizabeth G. "Heidi" Bloch*
 Elizabeth G. "Heidi" Bloch
 State Bar No. 02495500
 heidi.bloch@gtlaw.com
 300 W. 6th Street, Suite 2050
 Austin, Texas 78701
 T: (512) 320-7253
 F: (512) 320-7210

Mary Kate Raffetto
State Bar No. 24098296
mkraffetto@beckredden.com
M. Jake McClellan
State Bar No. 24109525
jmcclellan@beckredden.com
Madeline E. Gay
State Bar No. 24138681
mgay@beckredden.com
BECK REDDEN LLP
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
T: (713) 951-3700
F: (713) 951-3720

Roland Garcia
State Bar No. 7645250
garciar@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
T: (713) 374-3500
F: (713) 374-3505

*Counsel for Appellees Albert Theodore Powers and Allied Ports, LLC*

**CERTIFICATE OF CONFERENCE**

I certify that I communicated about this Motion with Kathy Silver and Coleman Tucker, counsel for Appellants in the underlying case who advised they are opposed to this motion.

/s/ Roland Garcia
Roland Garcia

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this motion, including any attachments, was served on counsel of record by using the Court's e-filing system on the 9th day of December, 2025, addressed as follows:

Sarah Patel Pacheco
State Bar No. 00788164
efile-spacheco@jw.com
Kathrine M. Silver
State Bar No. 24013510
ksilver@jw.com
Austin K. Yancy
State Bar No. 24110558
ayancy@jw.com
Javier Gonzalez
State Bar No. 24119697
jgonzalez@jw.com
J. Davis LaBarre
State Bar No. 24131442
dlabarre@jw.com
JACKSON WALKER LLP
1401 McKinney St., Suite 1900
Houston, Texas 77010
T: (713) 752-4200
F: (713) 752-4221

*Counsel for Appellant Bonnie Berry, Individually*

Charlie Henke
State Bar No. 00784254
chenke@henkelawfirm.com
Jett Williams III
State Bar No. 21554000
jwilliams@henkelawfirm.com
Coleman Tucker
State Bar No. 00786442
ctucker@henkelawfirm.com

Debra Donaldson
State Bar No. 00787382
ddonaldson@henkelawfirm.com
HENKE & WILLIAMS, LLP
2929 Allen Parkway, 39th Floor
Houston, Texas 77019
T: (713) 940-4500
F: (713) 940-4545

*Counsel for Appellant Marvin Glen Berry*

Audrey Mullert Vicknair
State Bar No. 14650500
avicknair@vicknairlaw.com
LAW OFFICE OF
AUDREY MULLERT VICKNAIR
555 N. Carancahua St., Ste. 1400
Corpus Christi, Texas 78401
T: (361) 884-5400
F: (361) 884-5401

Douglas Allison
State Bar No. 01083500
doug@dallisonlaw.com
LAW OFFICE OF DOUGLAS ALLISON
403 N. Tancahua St.
Corpus Christi, Texas 78401
T: (361) 888-6002

*Counsel for Marvin Glen Berry and Bonnie Berry*

*/s/ Elizabeth G. "Heidi" Bloch*
Elizabeth G. "Heidi" Bloch

| APPENDIX | |
|---|---|
| **TAB** | **DOCUMENT** |
| A. | December 3, 2025 Show Cause Order |
| B. | December 8, 2025 Bonnie and Marvin Berry's Motions to Vacate Show Cause Order |
| C. | November 3, 2025 Plaintiffs' Letter to Court re Temporary Injunction Violation |
| D. | November 25, 2025 Plaintiffs' Application for Show Cause Order, Motion Sanctions, and Brief in Support |
| E. | December 3, 2025 Plaintiffs' Corrected Supplement to Application for Show Cause Order, Motion for Sanctions, and Brief in Support |
| F. | December 1, 2025 Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order and Marvin's Joinder re Same. |
| G. | December 8, 2025 Business Court Order Abating the OSC and Cancelling 12/10/25 Hearing |

# Tab A
## December 3, 2025 Show Cause Order



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § § | |
| *Plaintiffs,* | § § § | Cause No. 24-BC11A-0025 |
| v. | § § | |
| Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry, | § § § § | |
| *Defendants.* | | |

## ORDER

On April 2, 2025, this Court entered an Order Granting Temporary Injunction ("TI Order"). The Court ordered Defendants Marvin Glenn Berry ("Marty Berry") and Bonnie Berry ("Bonnie Berry" and together with Marty Berry, the "Defendants"), and "their employees, agents, representatives, and any others acting on their behalf or in active concert with them," be enjoined from taking any of the following actions:

> . . . A. Holding any meetings or taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;
> * * *
> C. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Lone Star Ports Holdings,

1

LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity;

D. Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity; and

E. Taking any action that would impact or affect Powers' or Allied Ports, LLC's ownership interest in the Project that is the subject of this lawsuit or in any of the following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity.

Plaintiffs allege as follows:

On October 14, 2025, Defendants as purported managers of Axis held a special meeting. The purpose of the meeting was to "discuss a change in Officers of Axis Midstream Holdings, LLC". At that meeting, Defendants as purported managers of Axis (i) named Todd Griggs as Vice President, Treasurer and CFO; (ii) accepted the resignation of James Klein as Vice President, Treasurer, and CFO; and (iii) "to clarify these changes," listed the officers for Axis as follows: Craig Crawford, President; Defendant Bonnie Berry, Vice-President; Defendant Marty Berry, Vice President; Crissy Hinojosa, Secretary; Mike Hummell, Vice President & General Counsel; and Todd Griggs, Vice President, Treasurer, CFO.

On October 22, 2025, a Certificate of Amendment was filed with the Texas Secretary of State for Axis, whereby Axis's certificate of formation was changed to: (i) name the following individuals as officers of Axis: Craig Crawford (President); Defendant Bonnie Berry (Vice President); Defendant Marty Berry (Vice President); Mike Hummell (Vice President & General Counsel); Todd Griggs (Vice President, Treasurer & CFO); Crissy Hinojosa (Secretary); and (ii) remove the following individuals as officers of Axis: Lawrence Berry (President); Dennis Berry (Vice President); Robert Powers (Vice President & Secretary); and James Klein (Vice President, Treasurer & CFO).

2

On October 22, 2025, a Statement of Change of Registered Office/Agent was filed with the Secretary of State for Axis, whereby Axis's registered agent was changed from Gretchen Reed to Mike Hummell and Axis's registered office address was changed from 5005 Riverway Drive, Suite 440, Houston, Texas 77056 to 1414 Valero Way, Corpus Christi, Texas 78409-3020.

On October 27 and 29, 2025 and November 18 and 20, 2025, certain actions taken by Defendants and/or entities exclusively controlled by them in *Lawrence Berry, individually and derivatively on behalf of Berry GP, Inc. v. Marty Berry, et al.*, Cause No. 2024DCV-0045-C pending in the 94th Judicial District Court of Nueces County, Texas sought to have adjudicated the very issues before this Court including, but not limited to, the ownership, management and/or control of Axis Midstream Holdings, LLC, whether Lawrence Berry had authority to sign certain documents on Defendants' behalf, and/or the various ownership, management and control over various Lone Star Ports Project entities, and their tangible and intangible rights.

Consequently, pursuant to Rule 692 of the Texas Rules of Civil Procedure, the Court ORDERS Defendants Marty Berry and Bonnie Berry to appear before this Court on December 10, 2025 at 10:00 a.m. to show cause why they should not be held in contempt for violation of this Court's Order of April 2, 2025.

If Defendants Marty Berry and Bonnie Berry fail to appear before this Court for the hearing scheduled for December 10, 2025 at 10:00 a.m., the Court will issue writs of attachment to secure their presence. The Court will assess any costs incurred in executing the attachment and necessary confinement against the individuals attached.

The Court also ORDERS Counsel for Plaintiffs to cause Defendants Marty Berry and Bonnie Berry to be personally served with a copy of this Order; and

The Court further ORDERS the Clerk of this Court to email a copy of this Order to each counsel and/or pro se party.

This Court therefore ORDERS the following:

3

A hearing is set in this case on December 10, 2025 at 10:00 a.m. before the Business Court of Texas, Eleventh Division. The hearing is to determine the validity of Plaintiffs' allegations that Defendants Marty Berry and Bonnie Berry have failed to comply with the Court's April 2, 2025 Order by:

    a. Acting as and/or serving as "Managers" of Axis;

    b. Acting as and/or serving as "Chairman: of Axis;

    c. Acting as and/or serving as "Secretary" of Axis;

    d. Holding a "special meeting of managers" of Axis on October 14, 2025;

    e. Naming Todd Griggs as Vice President, Treasurer and CFO of Axis;

    f. Naming the officers of Axis as follows: Craig Crawford, President; Defendant Bonnie Berry, Vice-President; Defendant Marty Berry, Vice President; Dr. Crissy Hinojosa, Secretary; Mike Hummell, Vice President & General Counsel; and Todd Griggs, Vice President, Treasurer, CFO;

    g. Certifying the October 14, 2025 Special Meeting of Managers of Axis as "Correct";

    h. Signing the October 14, 2025 Special Meeting of Managers of Axis as "Vice President";

    i. Attesting the October 14, 2025 Special Meeting of Managers of Axis;

    j. Signing the October 14, 2025 Special Meeting of Managers of Axis as "Secretary of meeting";

    k. Causing the October 22, 2025 Certificate of Amendment of Axis to be filed with the Secretary of State;

4

l. Causing the October 22, 2025 Certificate of Amendment of Axis to change Axis' certificate of formation by adding the following individuals as officers of Axis: Craig Crawford (President); Bonnie Berry (Vice President); Marty Berry (Vice President); Mike Hummell (Vice President & General Counsel); Todd Griggs (Vice President); and Crissy Hinojosa (Secretary);

m. Causing the October 22, 2025 Certificate of Amendment of Axis to change Axis' certificate of formation by deleting the following individuals as officers of Axis: Lawrence Berry (President); Dennis Berry (Vice President); Robert Powers (Vice President and Secretary); James Klein (Vice President, Treasurer & CFO);

n. Causing the October 22, 2025 Certificate of Amendment of Axis to become effective when the document was filed with the Texas Secretary of State;

o. Causing the October 22, 2025 Certificate of Amendment of Axis to be executed by Mike Hummell;

p. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to be filed with the Secretary of State;

q. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to remove Gretchen Reed as Registered Agent of Axis;

r. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to add Mike Hummell as Registered Agent of Axis;

s. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to change the registered office of Axis from 5005

5

Riverway Drive, Suite 440, Houston Texas 77056 to 1414 Valero Way, Corpus Christi, Texas 78409;

t. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to become effective when filed with the Texas Secretary of State.

u. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to be executed by Todd Griggs.

v. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to file the October 27, 2025 Motion for Partial Summary Judgment in the Nueces County Case;

w. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to file the October 29, 2025 Advisory to the Court in the Nueces County Case;

x. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to assert positions at the November 18, 2025 status conference in the Nueces County Case; and

y. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to file the November 20, 2025 Amended Motion for Summary Judgment in the Nueces County Case.

At that time Defendants Marty Berry and Bonnie Berry shall show cause why they should not be sanctioned under the Court's inherent powers, held in coercive contempt until they comply with the Court's Orders, held in criminal contempt, and/or be ordered to

6

pay the reasonable attorney's fees and costs incurred by Plaintiffs' counsel by their refusal to comply with this Court's Orders. Defendants may raise any challenges to the sufficiency of the declaration supporting Plaintiffs' Application for Show Cause Order and Motion for Sanctions at the December 10, 2025 hearing.

SO ORDERED.

SIGNED this 3rd day of December, 2025.

_____
Hon. Sofía Adrogué
Texas Business Court, Eleventh Division

# Tab B
## December 8, 2025 Bonnie and Marvin Berry's Motions to Vacate Show Cause Order

E-filed in the Office of the Clerk
for the Business Court of Texas
12/8/2025 10:12 AM
Accepted by: Alexis Jennings
Case Number: 24-BC11A-0025

**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

ALBERT THEODORE POWERS;
ALLIED PORTS LLC,

  *Plaintiffs,*

v.

ALLEN LAWRENCE BERRY;
MARVIN GLENN BERRY; and
BONNIE BERRY,

  *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Cause No. 24–BC11A–0025

**BONNIE BERRY'S EMERGENCY**
**MOTION TO VACATE SHOW CAUSE ORDER**

TO THE HONORABLE JUDGE ADROGUÉ:

Defendant Bonnie Berry, named in this lawsuit in her individual capacity ("Bonnie"), files this Emergency Motion to Vacate Show Cause Order (the "Motion") and respectfully shows this Honorable Court as follows:

***Overview***

1. Plaintiffs, by Application for Show Cause Order, Motion for Sanctions, and Brief in Support filed in the Trial Court (the "TI Enforcement Motion"), ask this Court to enforce the Order Granting Temporary Injunction (the "TI Order"). On December 4, 2025, this Court issued its Show Cause Order seeking to enforce the TI Order.

2. This Court lacks jurisdiction to enforce the TI Order pursuant to Texas Rule of Appellate Procedure 29.4, and **Bonnie requests that the Court vacate its Show Cause Order on or before 4:00 pm on December 8, 2025**.

1

47905079v.1

## *Authority and Argument*

3. Plaintiffs ask this Court to enforce the TI Order. Once again, Plaintiffs are leading this Court into error by seeking to compel relief the Court cannot render. *See* Tex. R. App. P. 29.4. And despite repeated warnings from Bonnie's counsel, and even the Court, Plaintiffs still have not followed the required procedure to enforce the TI Order.

4. Appellate Rule 29.4 reads in its entirety:

> While an appeal from an interlocutory order is pending, ***only the appellate court in which the appeal is pending may enforce the order.*** But the appellate court may refer any enforcement proceeding to the trial court with instructions to:
>
> > (a) hear evidence and grant appropriate relief; or
> >
> > (b) make findings and recommendations and report them to the appellate court.

Tex. R. App. P. 29.4 (emphasis added).

5. Because the validity of the TI Order is currently the subject of an interlocutory appeal before the Fifteenth Court of Appeals, only that appellate court has jurisdiction to enforce it: "While an appeal from an interlocutory order is pending, only the appellate court in which the appeal is pending may enforce the order." Tex. R. App. P. 29.4. And while the Fifteenth Court of Appeals *may* choose to refer an enforcement proceeding to the trial court if it is requested to do so, no request has been made, and the Court has no enforcement power beforehand. Unless that referral is made, the issuing trial court lacks jurisdiction to enforce its temporary injunction order. *In re Geomet Recycling LLC*, 578 S.W.3d 82, 88 (Tex. 2019) ("Under Rule 29.4's framework, enforcement power lies *first* with the court of appeals, which may then refer enforcement functions to the trial court.") (emphasis added).

6. Thus, the Court did not have jurisdiction to issue its Order to Show Cause, and by extension, lacks jurisdiction to conduct a hearing on enforcement. Any contempt order that the

2

Court issues after the show cause hearing on December 10, 2025, would be void. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("A judgment is void [] when it is apparent that the court rendering judgment 'had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'") (quoting *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

7.       As such, Bonnie asks this Court to vacate the Show Cause Order and cancel the related hearing set for December 10, 2025.  *See* Tex. R. App. 29.4.

8.       Bonnie requests that the Court vacate its Show Cause Order on or before 4:00 p.m. on December 8, 2025, to avoid the need for Bonnie to seek emergency relief.

Respectfully submitted,

**JACKSON WALKER LLP**

By: _____
     Sarah Patel Pacheco
     State Bar No. 00788164
     efile-spacheco@jw.com
     Kathrine M. Silver
     State Bar No. 24013510
     ksilver@jw.com
     Austin K. Yancy
     State Bar No. 24110558
     ayancy@jw.com
     Javier Gonzalez
     State Bar No. 24119697
     jgonzalez@jw.com
     J. Davis LaBarre
     State Bar No. 24131442
     dlabarre@jw.com
     1401 McKinney St., Suite 1900
     Houston, Texas 77010
     (713) 752-4200 – Telephone
     (713) 752-4221 – Fax

     *Counsel for Defendant Bonnie Berry,*
     *Individually*

3

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing instrument contains 572 words, inclusive of footnotes and endnotes, but exclusive of the case caption, any index, table of contents or table of authorities, signature blocks, attached evidence, or any required certificates, which is within the word limit of 7,500 words for motions and responses as set forth in the Local Rules of the Texas Business Court.

_____

Sarah Patel Pacheco

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 8, 2025, I conferred with Plaintiffs' counsel and he is opposed to this motion. Counsel for Lawrence Berry has not yet responded, but I assume he is opposed. Counsel for Marty Berry is not opposed to this motion.

_/s/ Kathrine M. Silver_____

Kathrine M. Silver

## CERTIFICATE OF SERVICE

I certify that on December 8, 2025, a true and correct copy of the foregoing instrument was served upon all counsel of record pursuant to the Texas Rules of Civil Procedure by e-service.

_____

Sarah Patel Pacheco

47905079v.1

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terri Denton on behalf of Kathrine Silver
Bar No. 24013510
tdenton@jw.com
Envelope ID: 108821327
Filing Code Description: Motions - All Other
Filing Description: Bonnie Berry's Emergency Motion to Vacate Show Cause Order
Status as of 12/8/2025 10:19 AM CST

Associated Case Party: Bonnie Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kathrine Silver | | ksilver@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Joel Glover | | jglover@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Richard Howell | | rahowell@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Austin Yancy | | ayancy@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Sarah Pacheco | | efile-spacheco@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Javier Gonzalez | | jgonzalez@jw.com | 12/8/2025 10:12:19 AM | SENT |
| Davis LaBarre | | dlabarre@jw.com | 12/8/2025 10:12:19 AM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Charles Henke | 784254 | chenke@henkelawfirm.com | 12/8/2025 10:12:19 AM | SENT |
| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/8/2025 10:12:19 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terri Denton on behalf of Kathrine Silver
Bar No. 24013510
tdenton@jw.com
Envelope ID: 108821327
Filing Code Description: Motions - All Other
Filing Description: Bonnie Berry's Emergency Motion to Vacate Show Cause Order
Status as of 12/8/2025 10:19 AM CST

Case Contacts

| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/8/2025 10:12:19 AM | SENT |
|---|---|---|---|---|
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 12/8/2025 10:12:19 AM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Angela Torres | | angela.torres@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Gladys Simone Brown | | browngl@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/8/2025 10:12:19 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/8/2025 10:12:19 AM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 12/8/2025 10:12:19 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/8/2025 10:12:19 AM | SENT |
| Jessica Valdez | | jvaldez@gibbsbruns.com | 12/8/2025 10:12:19 AM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 12/8/2025 10:12:19 AM | SENT |
| Foster Baird | | foster.baird@txcourts.gov | 12/8/2025 10:12:19 AM | SENT |
| Ethan Lim | | elim@henkelawfirm.com | 12/8/2025 10:12:19 AM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/8/2025 10:12:19 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terri Denton on behalf of Kathrine Silver
Bar No. 24013510
tdenton@jw.com
Envelope ID: 108821327
Filing Code Description: Motions - All Other
Filing Description: Bonnie Berry's Emergency Motion to Vacate Show Cause Order
Status as of 12/8/2025 10:19 AM CST

Associated Case Party: MarvinGlennBerry

| | | | | |
|---|---|---|---|---|
| Susan Gonzales | | susan@dallisonlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Shanna Gohlke | | gohlkes@bayltd.com | 12/8/2025 10:12:19 AM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | | adawson@beckredden.com | 12/8/2025 10:12:19 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/8/2025 10:12:19 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 12/8/2025 10:12:19 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/8/2025 10:12:19 AM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Cara MittlemanKelly | | Cara.Kelly@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 12/8/2025 10:12:19 AM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/8/2025 10:12:19 AM | SENT |

Associated Case Party: ButchBoyd

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terri Denton on behalf of Kathrine Silver
Bar No. 24013510
tdenton@jw.com
Envelope ID: 108821327
Filing Code Description: Motions - All Other
Filing Description: Bonnie Berry's Emergency Motion to Vacate Show Cause Order
Status as of 12/8/2025 10:19 AM CST

Associated Case Party: ButchBoyd

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Katrina Chamblee-Boyd | | katrinaboyd@butchboydlawfirm.com | 12/8/2025 10:12:19 AM | SENT |
| Grant Harvey | | grant@gharveylaw.com | 12/8/2025 10:12:19 AM | SENT |
| LeRae Karn | | LeRaeKarn@butchboydlawfirm.com | 12/8/2025 10:12:19 AM | SENT |
| Butch Boyd | | butchboyd@butchboydlawfirm.com | 12/8/2025 10:12:19 AM | SENT |

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § § § § § § § § § § § § | |
| *Plaintiffs,* | | |
| v. | | Cause No. 24–BC11A–0025 |
| ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; and BONNIE BERRY, | | |
| *Defendants.* | | |

**DEFENDANT MARVIN BERRY'S JOINDER TO BONNIE BERRY'S EMERGENCY MOTION TO VACATE SHOW CAUSE ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Marvin Glen Berry ("Marty," "Marty Berry" or "Defendant Marty Berry") files this Joinder to Defendant Bonnie Berry's Emergency Motion to Vacate Show Cause Order (the "Motion") and respectfully show this Honorable Court as follows:

**I. NOTICE OF JOINDER**

1. On December 8, 2025, Defendant Bonnie Berry filed her Emergency Motion to Vacate Show Cause Order. Defendant Marty Berry hereby notifies the Court and all parties that he joins in Defendant Bonnie Berry's Motion for the reasons stated therein. By this notice of joinder, Defendant Marty Berry adopts by reference the arguments and authorities set forth by Defendant Bonnie Berry in the Motion.

**II. CONCLUSION & PRAYER**

For the reasons stated in the Motion, which Defendant Marty Berry adopts and joins, the Court should vacate its Show Cause Order on or before 4:00 p.m. on December 8, 2025, to avoid the need for Bonnie Berry and Marty Berry to seek emergency relief.

1

Dated: December 8, 2025

Respectfully submitted,

**HENKE & WILLIAMS, LLP**

*/s/ Charlie Henke*
CHARLIE HENKE
State Bar No. 00784254
CHenke@HenkeLawFirm.com
JETT WILLIAMS III
State Bar No. 21554000
JWilliams@HenkeLawFirm.com
COLEMAN TUCKER
State Bar No. 00786442
CTucker@HenkeLawFirm.com
DEBRA DONALDSON
State Bar No. 00787382
DDonaldson@HenkeLawFirm.com
2929 Allen Parkway, 39th Floor
Houston, Texas 77019
Telephone: (713) 940-4500
Facsimile: (713) 940-4545

**COUNSEL FOR DEFENDANTS
MARVIN GLEN BERRY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following counsel of record via electronic service through the electronic filing manager ("EFM") if the following email addresses are on file with the EFM pursuant to TEX. R. CIV. P. 21a(a)(1), otherwise via electronic mail service pursuant to TEX. R. CIV. P. 21a(a)(2) on December 8, 2025:

Douglas A. Allison, Esq.
Law Offices of Douglas Allison
403 N. Tancahua Street
Corpus Christi, Texas 78401
doug@dallisonlaw.com

Vanessa D. Gilmore, Esq.
Roberts Markland LLP
2555 N MacGregor Way
Houston, Texas 77004
vg@robertsmarkland.com

**Attorneys for Defendants**
**Marty Berry and Bonnie Berry**

Sarah Patel Pacheco
Joel R. Glover
Jackson Walker, LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
spacheco@jw.com
jglover@jw.com

**Attorneys for Defendant Bonnie Berry**

Barrett Reasoner
Mike Absmeier
Bruce Baldree
Gibbs & Bruns, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002-5215
breasoner@gibbsbruns.com
mabsmeier@gibbsbruns.com
bbaldree@gibbsbruns.com

**Attorney for Defendant Allen Lawrence**
**Berry**

M. Jake McClellan, Esq.
Madeline E. Gay, Esq.
Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
jmcclellan@beckredden.com
mgay@beckredden.com

**Attorneys for Plaintiff**
**Albert Theodore Powers**

Roland Garcia, Esq.
Steven Higginbotham, Esq.
Greenberg Traurig, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
garciar@gtlaw.com
higginbothams@gtlaw.com

**Attorneys for Plaintiffs**
**Allied Ports, LLC and**
**Albert Theodore Powers**

/s/  *Charlie Henke*
Charlie Henke

3

# Tab C
## November 3, 2025 Plaintiffs' Letter to Court re Temporary Injunction Violation

E-filed in the Office of the Clerk
for the Business Court of Texas
11/3/2025 10:49 AM
Accepted by: Alexis Jennings
Case Number: 24-BC11A-0025



Cara Kelly
Tel 512.320.7209
Cara.kelly@gtlaw.com

November 3, 2025

**_VIA E-FILING_**
The Honorable Sofia Adrogue
Texas Business Court, Eleventh Division
301 Fannin Street, Fifth Floor
Houston, Texas 77002

> Re: *Albert Theodore Powers and Allied Ports LLC v. Allen Lawrence Berry, Marvin Glenn Berry, and Bonnie Berry* Cause No. 24-BC11A-0025, pending in the Business Court of Texas, Eleventh Division

To the Honorable Court:

This Firm represents Plaintiffs Albert Theodore Powers and Allied Ports LLC (collectively, "***Plaintiffs***") in the above-referenced matter. Plaintiffs write to alert the Court regarding certain important and alarming developments, of which Plaintiffs and undersigned counsel were only made aware in recent days. As a result of these developments, Plaintiffs have strong reason to believe that Defendants Marvin and Bonnie Berry (together, "***Defendants***") have violated this Court's April 2, 2025 Temporary Injunction Order (the "***TI Order***").[1] As a result, Plaintiffs respectfully request that the Court schedule a status conference with all parties **on an emergency basis** so that the Court can address what appears to be a blatant violation of the TI Order. In support of that request, Plaintiffs provide the following relevant background information:

As the Court is well aware, this lawsuit was filed in response to certain wrongful actions taken by Defendants to seek to terminate and assume Plaintiffs' ownership and management rights in Axis Midstream Holdings, LLC ("***Axis***") and the Lone Star Ports Project ("***Project***"), without authority. On April 2, 2025, this Court entered the TI Order for the express purpose of preserving the status quo. The TI Order includes the following (highlighted) language:

---

[1] A copy of the TI Order is attached as **Exhibit 1**.

At the four-day hearing on this matter, the testimony confirmed that Defendants Marty and Bonnie seek to terminate and assume Plaintiffs' management rights in Axis Midstream Holdings, LLC ("Axis") and the Lone Star Ports Project ("Project") without authority. Thus, if Defendants are not restrained, Plaintiffs will be irreparably harmed by the loss of management rights in Axis and the Project. In sum, if Defendants and their employees, agents, representatives, and any others acting on their behalf or in active concert with them are not temporarily enjoined as described herein, Plaintiffs face probable, imminent, and irreparable injury in the interim.

(Ex. 1, TI Order, p. 2).

The Court then issued an order enjoining "Defendants, their employees, agents, representatives, and any others acting on their behalf or in active concert with them" from, among other things, ". . . taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;" "[c]hanging, altering, or transferring in any way the ownership, management or tangible or intangible rights of . . . Axis, except as provided in the governing operating agreement for the respective entity;" and "[t]aking any action that would impact or affect [Plaintiffs'] ownership interest in the Project . . . or in . . . Axis, except as provided in the governing operating agreement for the respective entity":

ACTIVE 716013137v4

It is, therefore, **ORDERED** that, while this action is pending and until further order of the Court, Defendants, their employees, agents, representatives, and any others acting on their behalf or in active concert with them are **HEREBY ENJOINED** from taking any of the following actions unless expressly permitted by this Court to do so:

A. Holding any meetings or taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;

B. Changing, altering, or transferring in any way the permit (SWG-2018-00789) issued to Axis;[1]

C. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity;

D. Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity; and

E. Taking any action that would impact or affect Powers' or Allied Ports, LLC's ownership interest in the Project that is the subject of this lawsuit or in any of the following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity.

TI Order, pp. 3-4.

The spirit as well as the intent of the TI Order is simple: Defendants, as well as their "employees, agents, representatives, and any others acting on their behalf or in active concert with them" were ordered by this Court to refrain from certain actions to maintain the status quo while the Court determines the rights, obligations, and liabilities of the Parties during the pendency of suit.

However, on or about October 22, 2025, a "Certificate of Amendment" of Axis was filed with the Texas Secretary of State, as well as a Change of Registered Agent.[2] The Certificate of Amendment purported to change the officers of Axis. In so doing, the Certificate of Amendment purportedly **removed Defendant Lawrence Berry as President of Axis, replaced him with another individual, and installed Defendants Marty and Bonnie Berry, individually, as Vice Presidents of Axis**, among other changes:

---

[2] A copy of the October 22, 2025 Certificate of Amendment of Axis Midstream Holdings, LLC, as well as the October 22, 2025 Statement of Change of Registered Agent, are attached as **Exhibit 2.**

3

**3. Other Added, Altered, or Deleted Provisions**

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

☒ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

Crag Crawford - President  1414 Valero Way, Corpus Christi, Texas 78409
Bonnie Berry - Vice President  1414 Valero Way, Corpus Christi, Texas 78409
M.G. Berry - Vice President  1414 Valero Way, Corpus Christi, Texas 78409
Mike Hummell - Vice President & General Counsel  1414 Valero Way, Corpus Christi, texas 78409
Todd Griggs - Vice President, Treasurer & CFO  1414 Valero Way, Corpus Christi, Texas 78409
Crissy Hinojosa - Secretary  1414 Valero Way, Corpus Christi, Texas 78409

☐ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

☒ **Delete** each of the provisions identified below from the certificate of formation.
AL Berry - President
DW Berry- Vice President
Robert Powers Vice President & Secretary
James Klein, Vice President, Treasurer & CFO

Exhibit 2, p. 2.   The Certificate of Amendment changed the status quo because as of the TI Order and since November 2024, Lawrence Berry was President of Axis and Defendants Marty and Bonnie Berry were not officers. Moreover, the Registered Agent of Axis was changed from Gretchen Reed at an address in Houston, to Mike Hummell at 1414 Valero Way, Corpus Christi, Texas 78409, which is Defendants Marty and Bonnie's business address.[3]

The Certificate of Amendment was signed by Mike Hummell—who has previously held himself out as an agent and/or representative of Defendants Marty and Bonnie Berry, individually.[4] **Defendants' attempt to remove Lawrence Berry as President and install themselves as officers of Axis, remove Axis's Registered Agent and install Mike Hummell as Axis's Registered Agent instead, "changes, alters, or transfers" the "ownership, management, or tangible or intangible rights" of Axis, in direct violation of the Court's TI Order.**

---

[3] A copy of the November 22, 2024 Certificate of Amendment of Axis Midstream Holdings, LLC is attached as **Exhibit 3.**

[4] A copy of correspondence from Mike Hummel dated October 15, 2025 is attached as **Exhibit 4.**  In this correspondence, Mr. Hummel indicates that "Bonnie and Marty have asked" Mr. Hummel to address Plaintiff Powers' request to call certain annual meetings.  Given the emergency nature of this request, Plaintiffs have not been able to marshal all evidence in support of Mr. Hummel's representative and/or agency relationship with Defendants.  However, to the extent Defendants deny that Mr. Hummel executed this document at their direction, or "on their behalf or in active concert with them," Plaintiffs respectfully request that Defendants and Mr. Hummel be called to testify as to same under oath to this Court.

Nor could such conduct otherwise be construed as sanctioned by Axis's "governing operating agreement," which would be the only other explanation Defendants could provide to justify this conduct. TI Order, p. 3. The April 21, 2020 Amended and Restated Operating Agreement of Axis (the "***Operating Agreement***")[5] provides that Axis "shall be managed by the Manager" and that the Manager "has all of the rights and powers of a Manager as provided in the Act,[6] this Agreement, and as otherwise provided by law." Exhibit 5, § 8.1. Under Texas law, the "Officers of a domestic entity may be elected or appointed in accordance with the governing documents of the entity or *by the governing authority of the entity* unless prohibited by the governing documents." Tex. Bus. Orgs. Code Ann. § 3.103(a) (emphasis added). Likewise, "[u]nless otherwise provided by the governing documents of a domestic entity, an officer may be removed for or without cause *by the governing authority* or as provided by the governing documents of the entity." Tex. Bus. Orgs. Code Ann. § 3.104(a) (emphasis added). As the Axis Operating Agreement does not include provisions for the election, appointment, or removal of officers, only the "governing authority" of Axis—its Manager—has the authority to elect, appoint, or remove officers. Axis's sole Manager and sole Member is Lone Star Ports Enterprises, LLC, a Delaware limited liability company ("***LSPE***"). Ex. 3, p. 3. Thus, Defendants cannot claim they had authority under Axis's governing operating agreement to remove Axis's officers, either.

Additionally, Defendants Marty and Bonnie through their "employees, agents, representatives, and any others acting on their behalf or in active concert with them," including their previous counsel in this matter, Mr. Allison, are now seeking affirmative relief in Nueces County (in the same case to which this Court previously refused to transfer this action) to determine ownership of Axis and real property interests that are the subject of this dispute. Previously, on April 16, 2025, Mr. Dawson wrote to this Court of Marty and Bonnie's actions in Nueces County, noting that filings were being made in Nueces County that were "an improper attempt to disregard and circumvent this Court's rulings" and that "to the extent that Defendants Marty and Bonnie Berry (through their counsel) seek relief consistent with the pleadings that they have filed in Nueces County, we believe that would be a violation of this Court's prior jurisdictional and venue Orders and Temporary Injunction Order."[7] Defendants Marty and Bonnie are now doing just that—they have (1) filed a summary judgment motion asking the Nueces County District Court to determine the ownership of Axis,[8] and (2) filed an "advisory" representing that the Nueces County

---

[5] A copy of the Axis Operating Agreement is attached as **Exhibit 5.**

[6] The Operating Agreement defines "Act" to be the "Texas Business Organizations Code, Chapter 101, as amended." Exhibit 5, § 1.

[7] A copy of correspondence dated April 16, 2025 and previously filed with this Court is attached as **Exhibit 6.**

[8] A copy of Berry GP's Motion for Summary Judgment filed in the Nueces County lawsuit is attached hereto as **Exhibit 7.**

Court has authority to determine this issue.[9]  Seeking relief on these issues that this Court has already determined are to be litigated and determined *in this Court* violates this Court's prior Orders and the TI Order.

For those reasons, Plaintiffs request an emergency status conference with the Court and respectfully asks that the Court issue an Order for Defendants to Show Cause why the above-described conduct does not violate the TI Order, and for all further relief to which Plaintiffs show themselves justly entitled.

Respectfully submitted,

Cara Kelly

---

[9]  A copy of the Advisory filed on October 29, 2025 is attached as **Exhibit 8**.  The "Advisory" represents to the Court that the Nueces County court has "complete approval" to determine (1) Berry GP's and RFB's ownership of Axis; (2) RFB's ownership of its real property interests; and (3) CPH's ownership in a leasehold estate on Harbor Island."  Not only has this Court determined that all of these issues are properly before *this Court*, the Advisory omits that the mandamus denied by the Thirteenth Court of Appeals on this issue was not denied *on the merits* but on procedural grounds because the prior judge who decided the issue recused himself.  **Exhibit 9**.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Torres on behalf of Roland Garcia
Bar No. 7645250
Angela.Torres@gtlaw.com
Envelope ID: 107579770
Filing Code Description: No Fee Documents
Filing Description: Greenberg Traurig's Correspondence to the Court - TI Violation
Status as of 11/3/2025 11:25 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kathrine Silver | | ksilver@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Joel Glover | | jglover@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Richard Howell | | rahowell@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Charles Henke | 784254 | chenke@henkelawfirm.com | 11/3/2025 10:49:31 AM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Alistair Dawson | | adawson@beckredden.com | 11/3/2025 10:49:31 AM | SENT |
| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 11/3/2025 10:49:31 AM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 11/3/2025 10:49:31 AM | SENT |
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 11/3/2025 10:49:31 AM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 11/3/2025 10:49:31 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 11/3/2025 10:49:31 AM | SENT |
| Austin Yancy | | ayancy@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Sarah Pacheco | | efile-spacheco@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Davis LaBarre | | dlabarre@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Torres on behalf of Roland Garcia
Bar No. 7645250
Angela.Torres@gtlaw.com
Envelope ID: 107579770
Filing Code Description: No Fee Documents
Filing Description: Greenberg Traurig's Correspondence to the Court - TI Violation
Status as of 11/3/2025 11:25 AM CST

Case Contacts

| Cameron Roth | | CRoth@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
|---|---|---|---|---|
| Becky Young | | Becky.Young@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 11/3/2025 10:49:31 AM | SENT |
| Gladys Simone Brown | | browngl@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 11/3/2025 10:49:31 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 11/3/2025 10:49:31 AM | SENT |
| Angela Torres | | angela.torres@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Javier Gonzalez | | jgonzalez@jw.com | 11/3/2025 10:49:31 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 11/3/2025 10:49:31 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 11/3/2025 10:49:31 AM | SENT |
| Jessica Valdez | | jvaldez@gibbsbruns.com | 11/3/2025 10:49:31 AM | SENT |
| Shanna Gohlke | | gohlkes@bayltd.com | 11/3/2025 10:49:31 AM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 11/3/2025 10:49:31 AM | SENT |
| Foster Baird | | foster.baird@txcourts.gov | 11/3/2025 10:49:31 AM | SENT |
| Cara MittlemanKelly | | Cara.Kelly@gtlaw.com | 11/3/2025 10:49:31 AM | SENT |
| Ethan Lim | | elim@henkelawfirm.com | 11/3/2025 10:49:31 AM | SENT |



THE BUSINESS COURT OF TEXAS
ELEVENTH DIVISION

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Cause No. 24-BC11A-0025 |
| Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry as successor in interest to Dennis Wayne Berry, | § § § § | |
| Defendants. | § § | |

## ORDER GRANTING TEMPORARY INJUNCTION

On January 29–30, February 14 and 24, 2025, came to be heard Plaintiffs' Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction, and Plaintiffs' Verified Fourth Amended Petition and Application for Temporary Restraining Order and Temporary Injunction (collectively, "Plaintiffs' Application"). At this juncture, having considered Plaintiffs' Application; Plaintiffs' Brief in Support of Temporary Injunction; Defendant Lawrence Berry's Temporary Injunction Brief; Defendants' Temporary Injunction Closing Brief; Plaintiffs' Proposed Order Granting Temporary Injunction; Marty/Bonnie Objections to Plaintiffs' Proposed Order;

1

Marty/Bonnie Supplemental Objections to Plaintiffs' Proposed Order; Plaintiffs' Response to Marty Berry and Bonnie Berry's Objections to Plaintiffs' Proposed Order; the evidence presented; the arguments of counsel; and the current status of the law, the Court finds that the temporary injunction requested in Plaintiffs' Application should be **GRANTED.**

The Court finds that Plaintiffs have demonstrated a probable right to relief on their declaratory judgment claims. Plaintiffs have also established that, absent a temporary injunction, there will be probable, imminent and irreparable injury in the interim. Under Texas law, the loss of management rights in a company constitutes irreparable injury. *Cheniere Energy, Inc. v. Parallax Enters. LLC*, 585 S.W.3d 70, 83 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd). As both the First and Fourteenth Courts of Appeals have articulated, "the loss of management rights over a company are unique, irreplaceable, and 'cannot be measured by any certain pecuniary standard.'" *Id.* (quoting *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 201 (Tex. App.—Houston [1st Dist.] 2012, no pet.)).

At the four-day hearing on this matter, the testimony confirmed that Defendants Marty and Bonnie seek to terminate and assume Plaintiffs' management rights in Axis Midstream Holdings, LLC ("Axis") and the Lone Star Ports Project ("Project") without authority. Thus, if Defendants are not restrained, Plaintiffs will be irreparably harmed by the loss of management rights in Axis and the Project. In sum, if Defendants and their employees, agents, representatives, and any others acting on their behalf or in active concert with them are not temporarily enjoined as described herein, Plaintiffs face probable, imminent, and irreparable injury in the interim.

2

It is, therefore, **ORDERED** that, while this action is pending and until further order of the Court, Defendants, their employees, agents, representatives, and any others acting on their behalf or in active concert with them are **HEREBY ENJOINED** from taking any of the following actions unless expressly permitted by this Court to do so:

A. Holding any meetings or taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;

B. Changing, altering, or transferring in any way the permit (SWG-2018-00789) issued to Axis;[1]

C. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity;

D. Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity; and

E. Taking any action that would impact or affect Powers' or Allied Ports, LLC's ownership interest in the Project that is the subject of this lawsuit or in any of the following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC,

---

[1] The Court is aware that this aspect of the relief sought would be seemingly agreed if it was mutual as to all parties. *See* Marty/Bonnie Suppl. Objs. to Pls.' Proposed Order at 3 ("As such, M/B Berry have no objection to this particular request for injunctive relief – and only request that such injunctive relief be *mutual in all respects* (applying to all litigants [in] this cause)." (footnote omitted) (emphasis in original)); *see also* Def. Lawrence Berry's Temporary Inj. Br. at 1 ("Lawrence does not oppose this injunctive relief . . . ."); and Pls.' Resp. to Marty Berry and Bonnie Berry's Objs. To Pls.' Proposed Order at 8 ("Finally, Marty and Bonnie state that they do not object to the Court entering a temporary injunction which enjoins the changing, altering, or transferring in any way the permit issued to Axis, as long as it is 'mutual in all respects.' . . . Plaintiffs welcome agreement on that issue."). Of course, the parties may opt to execute a Rule 11 agreement on this matter, as reciprocal relief is not properly before the Court.

Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity.

It is further **ORDERED** that trial on the merits with respect to the ultimate relief sought shall begin on September 15, 2025, at 9:00 A.M. CST in the courtroom of the Eleventh Division of the Texas Business Court at 201 Caroline St., Houston, TX 77002, or at such other date, time, and place as the Court may subsequently designate by written order.

This Temporary Injunction shall not be effective unless and until Plaintiff executes and files with the Court a bond, in conformity with the law, in the amount of $10,000, which bond may also be in the form of a deposit of a negotiable obligation of any bank or savings and loan association chartered by the government of the United States of America or any state thereof that is insured by the government of the United States of America or any agency thereof, pursuant to Texas Rule of Civil Procedure 14(c).

Finally, it is **ORDERED** that the previously paid $500 bond already deposited as security for the previous Temporary Restraining Order shall be returned to Plaintiffs by check made payable to Beck Redden LLP and delivered to Alistair B. Dawson at Beck Redden LLP. Accordingly, on execution and filing by Plaintiffs of the bond in the amount of $10,000, and on approving the same according to the law, the Clerk of the Court is hereby directed to issue a Writ of Injunction for service to all parties with notice to appear at said trial.

All other relief sought at the temporary injunction hearing not granted in this Order is hereby expressly denied.

4

SO ORDERED.

SIGNED: **5:23** P.M. CST, April 2, 2025

_____
Hon. Sofia Adrogué
Texas Business Court, Eleventh Division

5

STATE OF TEXAS
BUSINESS COURT OF TEXAS
CERTIFIED TO BE A TRUE AND CORRECT COPY
OF THE ORIGINAL IN MY CUSTODY.
GIVEN UNDER MY HAND AND SEAL OF OFFICE
DATE_____April 4th_____AD, 2025

Beverly Crumley
BUSINESS COURT CLERK

BY_____DEPUTY

| | | |
|---|---|---|
| **Form 424**<br>**(Revised 05/11)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>**Filing Fee: See instructions** | <br>**Certificate of Amendment** | This space reserved for office use. |

# Entity Information

The name of the filing entity is:

Axis Midstream Holdings, LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Professional Corporation

☐ Nonprofit Corporation                     ☐ Professional Limited Liability Company

☐ Cooperative Association                   ☐ Professional Association

☒ Limited Liability Company                 ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: _____802812872_____

The date of formation of the entity is: _____09/12/2017_____

# Amendments

### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

Form 424                                           6

(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

---

**OR**

☐ B. The registered agent is an individual resident of the state whose name is:

---

| *First Name* | *M.I.* | *Last Name* | *Suffix* |

The person executing this instrument affirms that the person designated as the new registered agent has consented to serve as registered agent.

C. The business address of the registered agent and the registered office address is:

TX
---

| *Street Address (No P.O. Box)* | *City* | *State* | *Zip Code* |

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

---

☒ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

    Crag Crawford - President   1414 Valero Way, Corpus Christi, Texas 78409
    Bonnie Berry - Vice President  1414 Valero Way, Corpus Christi, Texas 78409
    M.G. Berry - Vice President  1414 Valero Way, Corpus Christi, Texas 78409
    Mike Hummell - Vice President & General Counsel  1414 Valero Way, Corpus Christi, texas 78409
    Todd Griggs - Vice President, Treasurer & CFO  1414 Valero Way, Corpus Christi, Texas 78409
    Crissy Hinojosa - Secretary  1414 Valero Way, Corpus Christi, Texas 78409

---

☐ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

---

☒ **Delete** each of the provisions identified below from the certificate of formation.

AL Berry - President
DW Berry- Vice President
Robert Powers Vice President & Secretary
James Klein, Vice President, Treasurer & CFO

---

## Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

Form 424               7

## Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: __10/22/25_____

By: _____

_Mike Hummell_
Signature of authorized person

Mike Hummell, Vice President & General Counsel
Printed or typed name of authorized person (see instructions)

| **Form 401** | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: See Instructions | <br>**Statement of Change of<br>Registered Office/Agent** | **Filed in the Office of the<br>Secretary of State of Texas<br>Filing #: 802812872 10/22/2025<br>Document #: 1528636820004<br>Image Generated Electronically<br>for Web Filing** |

**Entity Information**

The name of the entity is :

## Axis Midstream Holdings, LLC

The file number issued to the entity by the secretary of state is: **802812872**

The registered agent and registered office of the entity as currently shown on the records of the secretary of state are:

## GRETCHEN REED

## 5005 RIVERWAY DRIVE, STE 440, HOUSTON, TX, USA 77056

**Change to Registered Agent/Registered Office**

The following changes are made to the registered agent and/or office information of the named entity:

Registered Agent Change

☐ A. The new registered agent is an organization by the name of:

OR

☑ B. The new registered agent is an individual resident of the state whose name is:

## MIKE HUMMELL

Registered Office Change

☑ C. The business address of the registered agent and the registered office address is changed to:

## 1414 Valero Way, CORPUS CHRISTI, TX, USA 78409-3020

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

☑ B. The consent of the registered agent is maintained by the entity.

**Statement of Approval**

The change specified in this statement has been authorized by the entity in the manner required by the BOC or in the manner required by the law governing the filing entity, as applicable.

**Effectiveness of Filing**

☑ A. This document becomes effective when the document is filed by the secretary of state.

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: **October 22, 2025**                    **TODD GRIGGS**

Signature of authorized person(s)

**FILING OFFICE COPY**

| | | |
|---|---|---|
| **Form 424**<br>**(Revised 05/11)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>**Filing Fee: See instructions** | <br>**Certificate of Amendment** | This space reserved for office use. |

# Entity Information

The name of the filing entity is:

Axis Midstream Holdings, LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                ☐ Professional Corporation

☐ Nonprofit Corporation                ☐ Professional Limited Liability Company

☐ Cooperative Association              ☐ Professional Association

☑ Limited Liability Company           ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: 802812872

The date of formation of the entity is: 09/12/2017

# Amendments

## 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

---

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

## 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

_____

**OR**

☑ B. The registered agent is an individual resident of the state whose name is:

Gretchen                                    Reed
_____
*First Name*                    *M.I.*        *Last Name*                    *Suffix*

The person executing this instrument affirms that the person designated as the new registered agent has consented to serve as registered agent.

C. The business address of the registered agent and the registered office address is:

5005 Riverway Drive, Suite 440          Houston          TX    77056
_____
*Street Address (No P.O. Box)*           *City*            *State*   *Zip Code*

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

---

☑ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:
Lone Star Ports Enterprises, LLC as the Sole Member and Manager.
16192 Coastal Hwy, Lewes, DE 19958.

---

☑ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

A.L. Berry- President (change of address from 1414 Valero Way, Corpus Christi, Texas 78409 to 5005 Riverway Drive, Suite 440, Houston, TX 77056

---

☑ **Delete** each of the provisions identified below from the certificate of formation.

D.W. Berry- Vice President; M.G. Berry- Vice President
Jim Klein- Vice President; Crissy Hinojosa- Secretary
Mike Hummell- Vice President and General Counsel
Robert Powers - Vice President

---

## Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

Form 424                                    7

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date    11.19.2024 _____

By: __    Lone Star Ports Enterprises, LLC _____

_____
Signature of authorized person

Albert Theodore Powers
_____
Printed or typed name of authorized person (see instructions)

| Print | Reset |
|-------|-------|

Form 424                                     8



P.O. Box 4858
1414 Valero Way
Corpus Christi, Texas
78469-4858

Bus: (361) 693-2100

October 15, 2025

Mr. Albert Theodore "Ted" Powers
205 West 57th Street
Apartment 4C
New York, New York 10019

Re: Annual Meetings – Axis Midstream Holdings, LLC, Lone Star Ports, LLC, Harbor Island Properties, LLC, Redfish Bay Properties, LLC, Midway Junction Properties, LLC, Lone Star Ports Enterprises, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Holdings, LLC and of its Advisory Board

Ted:

Bonnie and Marty have asked me to address your request for what you have entitled "Annual Meetings" of various companies you and Lawrence created back in 2018 and 2019. Before there can be any discussion about a meeting, please provide Bonnie and Marty with copies of documents related to these companies. Specifically, they need the formation documents that will show who created the company, when it was created, who the owners are and who is responsible for management.

They also need the entity governance documents for each entity. This would include by-laws and operating agreements that provide critical information about how the company is to be run and who runs it. Please include complete corporate books for each entity, as meeting notices, minutes from any prior meetings and any resolutions are also of significance.

To our knowledge, there have never been any annual meetings held over the last 6 years. Given the relationship between the parties and the lawsuit you have pending against Bonnie and Marty, this may not be a good time to have the first one. If you have information to provide to them it does not require a meeting to do it. Please send it now.

On a separate note, if it has not yet become apparent to you through the Houston litigation and testimony, Lawrence Berry has no authority to speak for or bind Bonnie Berry, Marty Berry, Redfish Bay Terminals, Inc., Axis Midstream, LLC, Berry GP, Inc., or any other entity owned or controlled by the Berry family of companies. Lawrence rejected shareholder attempts to include him as a board member several months ago. He has no management authority.

Once Bonnie and Marty get the above requested documents, and you provide the information you are reserving for the meeting, there can be a meaningful discussion about whether or not there is any need for a meeting.

Sincerely,

*Mike Hummell*

Mike Hummell
Vice President/General Counsel
1414 Valero Way
Corpus Christi, TX 78409
Hummellm@bayltd.com
(361) 693-2909

**Plaintiffs' Exhibit**

**24**

24-BC11A-0025

**From:** 4th_floor@bayltd.com
**Sent:** Thursday, April 23, 2020 3:39 PM
**To:** ScheuermanR; atpowers@allied-pacific-group.com; tfulgham@riverway.us
**Subject:** AXIS MIDSTREAM HOLDING LLC
**Attachments:** 20200423153928028.pdf

This E-mail was sent from "RNP002673C65940" (MP C4504).

Scan Date: 04.23.2020 15:39:27 (-0500)
Queries to: 4th_floor@bayltd.com

1

# AMENDED AND RESTATED OPERATING AGREEMENT
## of
# AXIS MIDSTREAM HOLDINGS, LLC

**THIS AMENDED AND RESTATED OPERATING AGREEMENT OF HARBOR ISLAND PROPERTIES, LLC** is made and entered into as of the 21st day of April, 2020, by and among Lone Star Ports Enterprises, LLC, a Delaware limited liability company ("**LSPE**"), and Axis Midstream Holdings, LLC, a Texas limited liability company (the "**Company**").

1. **DEFINITIONS**. The following terms have the meanings ascribed to them below when used elsewhere in this Agreement with the initial letter capitalized.

"**Acceptance Notice**" has the meaning ascribed to that term in Section 9.4(c).

"**Act**" means the Texas Business Organizations Code, Chapter 101, as amended.

"**Additional Acceptance Notice**" has the meaning ascribed to that term in Section 9.4(c).

"**Additional Capital Contributions**" has the meaning ascribed to that term in Section 4.2.

"**Affiliates**" means, with respect to a specified individual or entity (a) any individual who is related to such individual to any degree by blood, marriage, or adoption, (b) any entity that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such individual or entity, whether by ownership of voting interests, management policies, contract, or otherwise, and (c) any officer, director, shareholder, owner, partner, member, trustee, manager, employee, or agent of such individual or entity.

"**Agreement**" means this Operating Agreement of Axis Midstream Holdings, LLC.

"**Capital Account**" has the meaning ascribed to that term in Section 4.4.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" means Axis Midstream Holdings, LLC, a Texas limited liability company.

"**Company Assets**" means any and all assets of the Company including without limitation any (a) real property, securities, contracts, accounts receivable, cash, or any other asset or receivable of the Company, (b) shares, operating interests, or other equity interests in any Affiliate of the Company, (c) other rights and interests, including incentive interests, incentive units, or other benefits in or from any Affiliate of the Company, and (d) other amounts directly or indirectly received, or distributions made in respect of, any Affiliate of the Company, including without limitation earnings, profits, proceeds, dividends, refinancing proceeds, disposition proceeds, incentive units or payments, and other receipts of any type or nature in respect of or relating to any Affiliate of the Company.

"**Company Expenses**" includes but is not limited to Company organizational costs, costs for tax return preparation, financial statement preparation and/or audits, legal fees and costs, filing, licensing, or other governmental fees, other third party audits, loan fees and servicing fees, Company administration costs, capital acquisition fees and costs including without limitation payments to third parties who are contracted to raise capital for the Company, loan brokerage and origination and/or other fees associated with any credit facilities, costs associated with ownership or operation of real property (e.g., property improvement and rehabilitation costs not otherwise capitalized, sales and leasing commissions, property taxes, property management, insurance premiums, utilities, and other expenses associated with ownership or operation of the property), and any other expenses associated with the operation of the Company or the management of Company Assets. Company Expenses may be direct costs, or allocated costs reimbursable to third parties or entities (including Manager or its Affiliates).

"**Co-Sale Notice**" has the meaning ascribed to that term in Section 9.4(d).

"**Co-Sale Right**" has the meaning ascribed to that term in Section 9.4(d).

"**Distributable Cash**" means cash generated from the Company's Assets and other operations of the Company after payment of or provision for Company Expenses and such amounts as Manager deems reasonable in order to provide for any anticipated, contingent, or unforeseen expenditures or liabilities of the Company. Distributable Cash shall be determined without regard to (a) capital contributions made by Members or (b) principal advanced on Company indebtedness.

"**Distributions**" means amounts which are from time to time distributed in cash or property to holders of Units.

"**Fair Market Value**" shall be determined by Manager based upon a combination of recent appraisals, third party valuations, and additional internal valuation methods, including but not limited to capitalization rate and income valuations.

"**Information**" has the meaning ascribed to that term in Section 11.

2

"**Intangible Rights**" means various intangible rights relating to the Project, which are listed on Exhibit 1 attached to this Agreement.

"**Initial Capital Contribution**" has the meaning ascribed to that term in Section 4.1.

"**Issuing Notice**" has the meaning ascribed to that term in Section 9.7(a).

"**LSPE**" means Lone Star Ports Enterprises, LLC, a Delaware limited liability company.

"**Manager**" means LSPE and/or such other Person or Persons who may be appointed by the Member(s) from time to time as the Manager or one of the Managers of the Company.

"**Member**" means any individual or entity holding Units that is a party to this Operating Agreement. At the time this Agreement is signed, the sole Member is LSPE.

"**New Units**" has the meaning ascribed to that term in Section 9.7(a).

"**Offer**" has the meaning ascribed to that term in Section 9.4(a).

"**Offer Notice**" has the meaning ascribed to that term in Section 9.4(b).

"**Operator**" has the meaning ascribed to that term in Section 3.4.

"**Other Member**" has the meaning ascribed to that term in Section 9.4(a).

"**Ownership Interest**" means, for each Member, that percentage which is obtained by dividing the number of Units held by such Member by the total number of all Units held by all Members.

"**Person**" means any individual, partnership, association, corporation, company, trust, governmental authority, or other entity having a separate legal personality.

"**Project**" has the meaning ascribed to that term in Section 3.2.

"**Special Matter**" has the meaning ascribed to that term in Section 7.6.

"**Special Meeting**" has the meaning ascribed to that term in Section 9.7(b).

"**Special Transfer Notice**" has the meaning ascribed to that term in Section 9.4(e).

3

"**Substitute Member**" means a Member who acquires Units from another Member, in compliance with the terms and conditions of Section 9.1.

"**Transfer**" has the meaning ascribed to that term in Section 9.1.

"**Transferring Member**" has the meaning ascribed to that term in Section 9.4(a).

"**Treasury Regulations**" means the United States Treasury Regulations enacted pursuant to the Code.

"**Unit**" or "**Units**" has the meaning ascribed to that term in Section 4.3.

## 2. ORGANIZATIONAL MATTERS.

**2.1 Formation.** The Company was organized under the Act as a Texas limited liability company on September 12, 2017 pursuant to the filing of a Certificate of Formation with the Secretary of State of Texas (Texas State File Number 802812872).

**2.2 Name.** The name of the Company is Axis Midstream Holdings, LLC.

**2.3 Principal Place of Business.** The principal place of business of the Company shall be 5005 Riverway Drive, Suite 440, Houston, Texas 77056, or such other place or places as Manager may from time to time determine.

**2.4 Registered Office and Registered Agent.** The Company's registered office shall be at 5005 Riverway Drive, Suite 440, Houston, Texas 77056, and the name of the initial registered agent is Allen Lawrence Berry at the same address.

**2.5 Names and Addresses of Members.** The name of the sole Member of the Company and its registered office address are as follows:

**Lone Star Ports Enterprises, LLC**
16192 Coastal Highway
Lewes, Delaware 19958

The names of the Members, as amended from time to time and maintained in the Company's records, are hereby incorporated by reference.

**2.6 Effect of Inconsistencies with the Act.** To the extent that the rights or obligations of any Member are different by reason of any provision of this

4

Agreement than they would be in the absence of this Agreement, this Agreement shall, to the extent permitted by the Act, control.

**2.7** **Adoption of Agreement**. Each person acquiring Units in the Company shall be admitted as a Member and shall, by written instrument in form and substance acceptable to Manager, accept, adopt, and be bound by the terms and provisions of this Agreement, and such person shall each execute and deliver such other instruments as Manager reasonably deems necessary or appropriate to effect, and as a condition to, such acquisition of Units.

**2.8** **Fiscal Year**. The Company's taxable year will end on the 31st day of December in each year unless the Members unanimously agree to change that date.

**2.9** **Company Bank Accounts**. The Company's available cash will be deposited or placed in one or more accounts, which generally shall be at federally insured financial institutions. Each such account will consist of investments that are immediately liquid, and that are sufficiently safe while attempting to produce a yield (if any) on the Company's cash.

## 3. PURPOSES AND BUSINESS OF THE COMPANY; PROJECT; COMPANY AND PROJECT STRUCTURE.

**3.1** **Purposes and Business**. The purposes and businesses of the Company are to generate positive financial returns to Members by originating, acquiring, holding, operating, exploiting, and disposing of assets and conducting such other business activities as from time to time shall be determined by the Members and as shall be permissible under relevant laws.

**3.2** **The Project**. The primary initial activities of the Company will be to serve as a holding company for various intangible rights relating to a hydrocarbons delivery system and export terminal to be developed, constructed, owned, and operated by LSPE and its Affiliates (collectively, the "**Project**").

**3.3** **Structure of the Project**. The initial organizational and holding structure for the Project will be that (a) the Member(s) will own all equity and operating interests in the Company, (b) the Company will own the Intangible Rights, and (c) the Intangible Rights will be used in connection with the Project.

## 4. CAPITAL AND CONTRIBUTIONS.

**4.1** **Capital Contributions**. The initial capital of the Company is the contribution by LSPE to the Company of the capital to obtain and develop the Intangible Rights (the "**Initial Capital Contribution**").

**4.2** **Additional Capital Contributions**. The Members shall contribute to the capital of the Company from time to time such additional amounts of cash or other

property as the Company determines is necessary to achieve the Company's purposes and conduct the Company's businesses, including without limitation all Company Expenses that cannot be paid from the Company's revenues ("**Additional Capital Contributions**"). No Member shall be required to make any Additional Capital Contributions.

      **4.3**    **Membership Units**. The interest of each Member in the capital and profits of the Company is represented by Units, which shall represent proportional Ownership Interests in the Company (each, a "Unit", and collectively, the "**Units**"). The initial number of Units in the Company is one (1) Unit, which Unit is held by LSPE and represents One Hundred Percent (100%) of the initial outstanding equity and operating interests in the Company.

      **4.4**    **Capital Accounts**. An individual capital account (a "**Capital Account**") shall be established and maintained for each Member in accordance with the following:

      (a)    There shall be credited to each Member's Account: (i) the amount of Capital Contributions by such Member to the Company in exchange for its Units in the Company pursuant to Section 4.1, (ii) the amount of cash and the Fair Market Value at the time of such contribution of any non-cash property contributed by such Member to the Company as Additional Capital Contributions, and (iii) such Member's share of the income and gain (and all items thereof) of the Company (including income or gain exempt from federal income tax and income and gain described in Treasury Regulation §1.704-1(b)(2)(iv)(g), but excluding income and gain described in Treasury Regulation §1.704-1(b)(4)(i)), as allocated pursuant to Section 5.1.

      (b)    There shall be charged against each Member's Capital Account: (i) the amount of cash and the Fair Market Value at the time of the relevant Distribution of all property distributed to such Member by the Company; (ii) such Member's share of expenditures of the Company described in Code §705(a)(2)(B); and (iii) such Member's share of the losses and deductions of the Company (including losses and deductions described in Treasury Regulations §1.704-1(b)(2)(iv)(g), but excluding such Member's share of expenditures of the Company described in Code §705(a)(2)(B) and losses and deductions described in Treasury Regulations §1.704-1(b)(4)(i)), as allocated pursuant to Section 5.1.

      (c)    It is the intent of the Members that the provisions of this Agreement relating to the establishment and maintenance of Capital Accounts comply with the requirements of Treasury Regulations §1.704-1(b)(2)(iv) or any successor provision, and that such provisions are interpreted and applied in a manner consistent with such Treasury Regulations or successor provision. Members' capital accounts may not necessarily reflect the stated value of the Members' investments and may not have a correlation to calculations of Unit

6

values or any amounts payable to the Members pursuant to this Agreement, but allocations are intended to reflect the Members' interests in the Company and to have substantial economic effect.

## 5. ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS.

**5.1** **Allocation of Profits and Losses**. Each item of Company income, gain, loss, deduction, or credit shall be allocated among the Members in accordance with this Section 5.1. Net profits first shall be allocated to the Members having negative Capital Account balances, in proportion to their adjusted negative Capital Accounts. Any remaining profits or net losses shall be allocated to the Members to create Capital Account balances for the Members that are equal to the amount of cash that would be distributed under Section 5.2. If an allocation of net losses exceeds the positive Capital Account balances of the Members, the excess shall be allocated in accordance with the Members' Ownership Interests.

**5.2** **Distributions of Cash and Property**. All distributions of cash and property from the Company shall be made in the following order of priority:

(a) First, one hundred percent (100%) to the payment of interest and principal payments on any credit facility and/or debt obligations of the Company, to the extent thereof;

(b) Second, one hundred percent (100%) to the payment of Company Expenses; and

(c) Thereafter, to the Members, pro rata in proportion to their Ownership Interests.

The amount of all distributions of cash shall be the face value of such distributed cash. The amount of all distributions of Company Assets other than cash shall be the Fair Market Value of such distributed Company Assets.

## 6. BOOKS OF ACCOUNT, RECORDS, AND REPORTS.

**6.1** **Books and Records**. The Company shall maintain at its principal place of business the Company's books and records, a register showing a current and past list of the full names and last known addresses of its Members, a copy of its Certificate of Formation, a copy of this Agreement and all amendments thereto, copies of the Company's federal, state, and local tax returns and reports, if any, for the three most recent years, and copies of any financial statements of the Company for the three most recent years. The Company shall keep proper and complete records and books of account, entering fully and accurately all transactions and other matters relative to the Company's business as are usually entered into records and books of account maintained by persons engaged in businesses of a like character. The Company shall maintain its books and records in full accordance with generally accepted accounting principles and

on the accrual basis (except in circumstances where it determines that the cash or income tax basis of accounting will be in the best interest of the Company). Each Member shall have access to all such information at all reasonable times.

**6.2    Financial Statements; Reports**. The Company will also employ a certified public accountant to prepare its tax returns and perform an audit of the Company's financial statements annually. The cost of any financial statements, tax returns, and audits will be paid by the Company. As soon as practicable following the close of each taxable year, the Company will provide the Members with information for their use in preparing documents required to be filed under federal and state income tax laws and other applicable laws. The cost for all such reports shall be borne by the Company.

**6.3    Tax Matters.**

**(a)    Tax Elections**. The Company shall, without any further consent of the Members being required, make any and all elections for federal, state, local, and foreign tax purposes, file any tax returns, and execute any agreements or other documents relating to or affecting such tax matters, including agreements or other documents that bind the Members with respect to such tax matters or otherwise affect the rights of the Company and the Members.

**(b)    Tax Classification**. The Company shall take such action as may be required under the Code and the Treasury Regulations to cause it to be taxable as a partnership for federal and state income tax purposes.

**7.    MEMBER; MEETINGS AND DECISIONS.**

**7.1    Information Rights**. Each Member shall be entitled to full information regarding all Company, Project, and Project Company matters at all times.

**7.2    Participation in Governance**. Each Member shall be entitled to participation in all significant Company management and operational matters and to participation on governing or management bodies for the Company and each Project Company commensurate with the relevant ownership interests of the owners of the Company or the relevant Project Company.

**7.3    Members' Meetings**. The Company shall hold meetings of the Members at mutually-agreeable times and places (which meetings may be conducted wholly or partially by telephone or other electronic means in which all participants are able to communicate with one another simultaneously) and the quorum for such meetings shall be the Manager and a majority of Members measured by Operating Interests, not numbers. The Company shall hold at least one physical meeting of the Members in each year. In addition, a meeting of Members shall be held if it is called by either Member in a written request for the meeting, describing the purpose or purposes for which it is to be held. In either case, Manager shall call a meeting by providing written notice to the

Members stating the purpose of the meeting, and the date, time, and place of the meeting. Such meeting shall be held at a time and place designated by Manager not less than ten (10) days or more than thirty (30) days after Manager's written notice to the Members. All meetings of Members shall be held at the principal office of the Company or any other place specified in the Notice of Meeting.

**7.4** **Proxies.** A Member may be represented at a meeting in person or by written proxy. A proxy shall be in writing executed by the Member and filed with Manager before the commencement of the meeting.

**7.5** **Voting.** On each matter requiring action by the Members, each Member may vote the Member's Ownership Interest.

**7.6** **Special Matters.** Decisions regarding actions to be taken by the Company on the following matters (each, a "**Special Matter**") shall be made by unanimous agreement of the Members:

(a)    approval of the Company's annual capital and operating budgets;

(b)    any contractual arrangement between a Member and/or one or more of its Affiliates and the Company or any Project Company, including without limitation the EPCM Contract;

(c)    any agreement pursuant to which the Company or any of its Affiliates could be obligated to pay an amount greater than One Million Dollars (US$1,000,000), including without limitation by way of any borrowing, guarantee, or pledge of assets by or on behalf of the Company or any of its Affiliates, except as provided in this Agreement or otherwise in the ordinary course of business;

(d)    any sale or other disposition of assets of the Company or any of its Affiliates having a value in excess of One Million Dollars ($1,000,000), other than in the ordinary course of business;

(e)    incurrence by the Company of capital or operating expenses in excess of budgeted amounts;

(f)    establishment and changes in the Company's audit policy and appointment of and changes in the Company's auditors;

(g)    appointment of legal counsel and the institution or settlement of legal proceedings by the Company;

(h)    related party and non-ordinary course transactions;

(i) material change in the nature of the business of the Company;

(j) issuing further Units or other equity, debt, or operating interests in the Company, the Project, or any Project Company; and

(k) the termination, supersession, or amendment of this Agreement.

## 8. MANAGER.

**8.1 Rights and Powers**. The Company shall be managed by the Manager. The initial sole Manager of the Company is Lone Star Ports Enterprises, LLC. Manager has all of the rights and powers of a Manager as provided in the Act, this Agreement, and as otherwise provided by law.

**8.2 Liability to the Company; Indemnification**. To the greatest extent permitted by law, neither Manager nor any of its Affiliates shall be liable, responsible, or accountable in damages or otherwise to the Company or any Member for any action taken or failure to act on behalf of the Company within the scope of the authority conferred on Manager by this Agreement or by law unless such act or omission was performed or omitted fraudulently or in bad faith. To the greatest extent permitted by law, the Company shall indemnify and hold harmless Manager and each of its Affiliates against and from any personal loss, expense, damage, or injury suffered or sustained by Manager or such Affiliate by reason of any acts, omission, or alleged acts or omissions arising out of its activities on behalf of the Company or in furtherance of the interests of the Company, including but not limited to any judgment, award, settlement, attorney fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim and including any payments made by Manager to any of its Affiliates if the acts, omissions, or alleged acts or omissions upon which the actual or threatened action, proceeding, or claim is based were for a purpose reasonably believed to be in the best interests of the Company, and were not performed or omitted fraudulently or in bad faith by Manager or its Affiliates and were not in violation of Manager's fiduciary obligations to the Company. Any indemnification shall only be from Company Assets.

**8.3 Prohibited Acts**. Anything in this Agreement to the contrary notwithstanding, Manager shall not cause or permit the Company to: (a) reimburse Manager for expenses incurred or for salaries of its officers except as otherwise expressly provided in this Agreement or otherwise authorized by the Members or their Affiliates, (b) pay for any services performed by Manager or its Affiliates, except as authorized by the Members or their Affiliates, or (c) receive any rebate, kickback, or other inducement in connection with Company activities, or participate in reciprocal business arrangements which circumvent this provision.

**8.4 Removal or Withdrawal of Manager.** The Members may, by unanimous written consent or affirmative vote, and with at least ninety (90) days' notice, remove Manager. The Members may then, by a majority vote or written consent, elect a new Manager provided; however, that such removal of Manager shall not become effective until the election of the new Manager. Manager may voluntarily resign as Manager at any time with at least ninety (90) days' written notice to the Members. In the event of Manager's resignation, a Manager may be substituted who is acceptable to Members holding a majority of the Ownership Interests. Manager's resignation shall not become effective until the election of a new Manager by the Members, or ninety (90) days from the date of Manager's resignation notice to the Members, whichever comes first. Any removal or resignation of Manager shall in no way impair or otherwise affect any rights of Manager attributable to the period prior to the effective date of removal, including without limitation Manager's Ownership Interest.

**8.5 Power of Attorney.** Each Member who executes a signature page to this Agreement thereby irrevocably constitutes and appoints Manager, with full power of substitution, as its true and lawful attorney-in-fact, in its name, place, and stead to execute, acknowledge, swear to, verify, deliver, file, and publish, if necessary: (a) this Agreement; (b) all amendments, alterations, or changes to this Agreement, including amendments admitting a substituted or additional Member, if otherwise authorized under this Agreement; (c) all instruments which effect a change in the Company or a change in this Agreement; (d) all certificates or other instruments necessary to qualify or maintain the Company as a limited liability company in which the Members have limited liability in the jurisdictions(s) where the Company may conduct business; and (e) all instruments necessary to effect a dissolution, termination, and liquidation of the Company and cancellation of this Agreement when such dissolution, termination, liquidation, or cancellation is otherwise provided in this Agreement. This power of attorney is deemed coupled with an interest and shall survive the death or disability of a Member or the assignment or transfer of all or any part of the interest of such Member in the Company until the transferee or assignee shall have become a Substitute Member and shall have executed such instruments as Manager deems necessary to bind such transferee or assignee under the terms of this Agreement as it may hereafter be amended. Manager may exercise this power of attorney for each Member by listing all of the Members and executing any instrument with a single signature of Manager acting as attorney-in-fact for all of them.

## 9. TRANSFERS OF UNITS.

**9.1 Transfers and Transferors.** No Member or any other Person shall sell, assign, transfer, dispose of, donate, mortgage, pledge, hypothecate, charge or otherwise encumber or deal with (each, a "**Transfer**") any of his/her/its Units except in strict compliance with this Section 9.1. Each Member hereby agrees that (a) it will not Transfer all or any fraction of his/her/its Units, except as permitted by this Agreement, (b) in no event, shall all or any part of its Units be transferred to a minor or a person who is incapacitated, except in trust or by will or intestate succession, and (c) it will pay all expenses, including attorneys' fees, incurred by the Company in connection with a

11

Transfer of its Units. The Company shall not recognize for any purpose any purported Transfer of all or any part of any Units, unless (i) there shall have been filed with the Company a dated notice of such Transfer, in a form satisfactory to Manager, executed and acknowledged by both the transferor or such transferor's legal representative and the transferee, and (ii) such notice (A) contains the acceptance by the transferee of all the terms and provisions of this Agreement and such transferee's agreement to be bound hereby, and (B) represents that such Transfer was made in accordance with the terms and conditions of this Agreement and all applicable laws, rules, and regulations. Any Member which shall Transfer all of its Units shall cease to be a Member upon, but only upon, compliance with the provisions of this Section 9.1 and the admission by the Company of the transferee as a Member (a "**Substitute Member**") in such transferor Member's stead. Notwithstanding anything to the contrary contained in this Agreement, both the Company and Manager shall be entitled to treat a Member transferring all or any part of its Units as the absolute owner of such Units in all respects, and shall incur no liability for distributions made in good faith to such Member, until such time as a Substitute Member is admitted by the Company in such Member's stead in respect thereof.

**9.2    Substitute Members**. No Member shall have the right to cause a transferee of all or any part of such Member's Units to become a Substitute Member, except in strict compliance with the terms and conditions of Section 9.1. Unless and until a transferee of Units becomes a Substitute Member, such transferee shall have no rights with respect to such Units other than those rights with respect to allocations and distributions. Any such transferee of Unit(s) (whether pursuant to a voluntary or involuntary Transfer) shall be admitted to the Company as a Substitute Member only by satisfying the requirements of Section 9.1. Each transferee of all or part of a Member's Membership Units, as a condition to its admission as a Substitute Member, shall execute and acknowledge such instruments, in form and substance satisfactory to Manager, as Manager reasonably deems necessary or desirable to effectuate such admission and to confirm the agreement of such person to be bound by all the terms and provisions of this Agreement with respect to the Membership Units acquired. All reasonable expenses, including attorneys' fees, incurred by the Company in this connection shall be borne by such transferee.

**9.3    Bankruptcy or Incapacity of a Member**. In the event of the bankruptcy or incapacity of a Member, the Company shall not be dissolved, and the Member's trustee in bankruptcy or other legal representative shall have no rights with respect to such Units other than those rights with respect to allocations and distributions applicable to the Units of such bankrupt or incapacitated Member as provided herein. Any Transfer to or from any trustee in bankruptcy, guardian, conservator, or legal representative shall be subject to the provisions of this Agreement.

**9.4    Rights of First Refusal.**

**(a)    Transfer by Members**. No Member or other Person who legally or beneficially directly or indirectly owns Units or the shares or other

12

equity interests in a Member shall, directly or indirectly, Transfer any interest in or portion of any of the Units, the Company, any Member, any Person that directly or indirectly owns any shares or equity interests in a Member, or any of their respective Affiliates (each, a "**Transferring Member**"), unless it first shall have made an offer to sell to the other Members, in proportion to their Ownership Interests at the time of the proposed Transfer (the "**Other Members**"), the interest in or portion of the Units or other interests it proposes to Transfer in the manner prescribed in Section 9.4(b) (an "**Offer**"), and the Offer shall not have been accepted as prescribed in Section 9.4(c).

(b) **Making of Offer**. If a Transferring Member or other Person proposes to directly or indirectly Transfer any interest in or portion of any of the Units, the Company, a Member, any Person who directly or indirectly owns any shares or equity interests in a Member, or any of their respective Affiliates, it first shall make an offer to the Other Members, upon the terms and conditions of the proposed Transfer. The Offer shall be set forth in a Notice to the Other Members (an "**Offer Notice**") and shall include the name and address of the prospective Transferee and the terms and conditions of the proposed Transfer.

(c) **Acceptance of Offer**. After receiving the Offer Notice, the Other Members shall have thirty (30) days within which to elect to purchase all, but not less than all, of the interest in or portion of any of the Units or other interests proposed to be Transferred, in proportion to their Ownership Interests as of the date of the Offer Notice, Notice of such acceptance (each, an "**Acceptance Notice**") to be communicated to the Transferring Member within such thirty (30)-day period, and they shall have the further right to purchase any Units that are so proposed to be Transferred for which Acceptance Notices are not received within such thirty (30)-day period, in proportion to the Ownership Interests as of the date of the Offer Notice by Members that have provided Acceptance Notices, Notice of such further acceptance (an "**Additional Acceptance Notice**") to be communicated to the Transferring Member within ten (10) days after the expiration of such initial thirty (30)-day period.

(d) **Co-Sale Right**. In lieu of accepting any Offer, the Other Members shall have thirty (30) days within which to elect to sell their Units to the prospective Transferee identified in the Offer, upon the same terms and conditions as contained in the Offer (the "**Co-Sale Right**"). If the Other Members elect to exercise this right, Notice of such election (a "**Co-Sale Notice**") shall be communicated to the Transferring Member within such thirty (30)-day period.

(e) **Special Transfer Provision**. In the event that (i) the Transferring Member or Transferring Members wish to make a bona fide Transfer of more than fifty percent (50%) of all outstanding Units to a bona fide third party Transferee, (ii) the Transferring Member makes an Offer to sell such Units to the Other Members in accordance with Sections 9.4(a) and 9.4(b), (iii) any Other Member does not accept such Offer in accordance with Section 9.4(c), and

13

(iv) any Other Member does not exercise the Co-Sale Right in accordance with Section 9.4(d), the Transferring Members shall have the right, but not the obligation, to compel the Other Members to Transfer their Units to the prospective Transferee identified in the Offer, and each Other Member shall have the obligation to so Transfer its Units, on the same terms and conditions as the Transfer made by the Transferring Members, if the Transferring Member so compels the Other Member, and the proceeds received by all Members for the Units shall be pro rata in accordance with their percentage ownership of the Units so Transferred. In the event the Transferring Members wish to exercise the right to compel the Other Members to Transfer its Units pursuant to this Section 9.4(e), Notice of such election (a "**Special Transfer Notice**") shall be communicated to the Other Members.

      **(f)**    **Consummation of Transfers**. Any Transfer by one Member or another Person of any interest in or portion of Units, the Company, a Member, any Person that directly or indirectly owns any Units or other equity interest in a Member, or any of their respective Affiliates, to another Member or other Person pursuant to this Section 9.4 shall be consummated within sixty (60) days after the date of the Transferee Member's acceptance of the Transferor Member's Offer or the date on which such Member is required to sell or purchase such Units.

      **(g)**    **Release from Restriction**. If (i) an Offer is not accepted pursuant to Section 9.4(c), (ii) the Other Members do not elect to exercise the Co-Sale Right granted pursuant to Section 9.4(d), or (iii) a purchase is not consummated within the sixty (60)-day time limit provided for in Section 9.4(f), the Transferring Member may make a bona fide Transfer to the prospective Transferee named in the Offer, in strict accordance with the terms and conditions stated in the Offer and only if, prior to such Transfer, such prospective Transferee shall have agreed to be bound by the terms of this Agreement as though he or it were a Member and this Agreement shall have been amended to reflect the Transfer to such prospective Transferee. If the Transferring Member shall fail to make such Transfer within sixty (60) days after the expiration of the time provided for the acceptance of its offer by the last Member to which it has made an offer, however, such Units again shall become subject to all of the restrictions of this Section 9.4.

    **9.5**    **Transfers to Affiliates**. The terms of Section 9.4 shall not apply to proposed Transfers by Members to their Affiliates; provided, however, that (a) any such Affiliate Transferee shall be bound by all terms and conditions of this Agreement, or (b) the Transferring Member shall remain liable for all of its obligations under this Agreement.

    **9.6**    **Legend on Certificates**. Each certificate representing Units or any other direct or indirect interest in the Company now or hereafter held by the

14

Members or their Affiliates shall be stamped with a legend in substantially the following form:

> "The transfer of and rights in the Units represented by this certificate are restricted under the terms of an Amended and Restated Operating Agreement of Axis Midstream Holdings, LLC, as amended from time to time, a copy of which is on file at the office of the Company issuing this certificate."

**9.7 Preemptive Rights**. The following shall apply to the allotment and issuance by the Company of any Units:

(a)    If the Company proposes to issue additional Units ("**New Units**"), the New Units shall be offered to the Members at a price and upon terms determined by the Manager. The Company shall give written notice (the "**Issuing Notice**") to each of the Members, setting forth the price at which, and terms on which the New Units are being offered.

(b)    The Issuing Notice shall state the time at which a special meeting of the Members (a "**Special Meeting**") shall be held for the purposes of this Section 9.7 at the principal office of the Company on a day which shall be not earlier than the 15th day following the date the Issuing Notice is given, provided that if the 15th day is a Saturday, Sunday, or statutory holiday, the date for the Special Meeting shall be the next following business day.

(c)    Each Member wishing to purchase part or all of the New Units may attend the Special Meeting either personally or by his/her/its representative duly appointed for such purpose. A Member proposing to be represented at the Meeting shall deposit with the Manager at or prior to the Special Meeting an instrument in writing, designating the representative and, if desired, an alternate representative or, alternate representatives, authorized to act on behalf of such Member at the Special Meeting.

(d)    The Manager shall preside at the Special Meeting and may prescribe such procedures for the conduct of the Special Meeting not inconsistent with the provisions of this Section 9.7 as he/she/it may consider appropriate for the purposes of carrying out the intent of this Section 9.7.

(e)    If the Members represented at the Special Meeting accept the offer stated in the Issuing Notice, the Members shall subscribe for the New Units in accordance with the Issuing Notice and shall execute a written subscription in accordance therewith which shall be accepted forthwith by the Company. The Members shall be entitled to subscribe for and purchase the New Units in such proportions as they may agree upon or, in default of such agreement, in proportion to their Ownership Interests.

15

(f)    Any New Units which are not subscribed for by the Members in accordance with this Section 9.7 may be offered by the Company to a third Person at the price and on the terms in the Issuing Notice, provided that no subscription shall be accepted by the Company for the sale of any such Units to a third Person except with the written consent of the holders of at least sixty percent (60%) of the Units outstanding at such time.

## 10.    TERM AND DISSOLUTION OF THE COMPANY.

**10.1    Term**. The Company is now existing and will continue indefinitely, except as provided in Section 10.2.

**10.2    Dissolution**. The Company will continue indefinitely until a date on which the Company has liquidated all of its Company Assets, or earlier upon the occurrence of any of the following events: (a) the disposition of all Company Assets and disbursement of all cash to the Members in accordance with Section 5.2; (b) the agreement by Members holding eighty percent (80%) of the Ownership Interests; or (c) the dissolution, bankruptcy, or resignation of Manager when an approved replacement is not obtained within a period of ninety (90) days after such dissolution, bankruptcy, or resignation.

**10.3    Liquidation**. If the Company dissolves, Manager (or if Manager has become bankrupt or terminated, then a liquidator or a liquidation committee selected by the holders of a majority of the Units) shall commence to wind up the affairs of the Company and to liquidate its investments. The holders of the Units shall continue to share profits and losses during the period of liquidation in the same proportion as before the dissolution. Manager (or such liquidator or liquidating committee) shall have full right and unlimited discretion to determine the time, manner, and terms of any sale or sales of Company Assets, having due regard to the activity and condition of the relevant market and general financial economic conditions. Upon dissolution of the Company, the Company will be liquidated and the proceeds of liquidation will be applied in the priority set forth in Section 5.2.

**10.4    Liquidation Statement**. Within a reasonable time following the completion of the liquidation of the Company Assets, Manager (or liquidator or liquidating committee) shall supply to each Member a statement by the Company's accountants setting forth the assets and liabilities of the Company as of the date of complete liquidation and each Member's portion of the liquidating Distributions pursuant to Section 5.2.

**10.5    No Recourse to Assets or Members**. Each Member shall look solely to Company Assets for all Distributions with respect to the Company and its Capital Contribution, subsequent contributions, or share of profits or losses, and shall have no recourse (upon dissolution or otherwise) against any Member or Manager or their Affiliates. No Member shall have any right to demand or receive property other than cash upon dissolution and termination of the Company.

16

**10.6** **Termination**. Upon the completion of the liquidation of the Company and the distribution of all Company Assets, the Company shall terminate and Manager shall have the authority to execute and record the Certificate of Cancellation of the Company and any other documents required to effectuate the dissolution and termination of the Company.

**11.** **CONFIDENTIALITY**. Each of the Parties acknowledges that the Members will make available to one another certain documentation, information, and other matters in connection with the Members, the Company, their respective Affiliates, and their respective businesses (collectively, the "**Information**"). In consideration of receiving the Information, each of the Members undertakes and agrees, whether or not any such Information is strictly confidential or proprietary:

(a)     not to make any use of the Information for any purpose other than in accordance with this Agreement;

(b)     to hold all of the Information in the strictest confidence and not to disclose or divulge any part of the Information to any third Person without the prior written consent of the Member providing such Information, on such terms and conditions as such Member considers appropriate, unless such disclosure is absolutely required to be disclosed by a relevant governmental authority or stock exchange and the Person providing such Information is provided with a reasonable opportunity to object to the disclosure of such Information to such governmental authority prior to its disclosure;

(c)     not to make or solicit any announcement or disclosure regarding this Agreement, the other Members, the Company, their respective Affiliates, or their respective businesses, without express prior written consent;

(d)     to restrict access to the Information to those of its responsible employees and professional advisers who absolutely require such access and to impose upon all such employees and professional advisors obligations of confidentiality equivalent to those contained in this Agreement; and

(e)     not to copy, reproduce, or part with possession of any of the Information except as is strictly necessary and as is consistent with its obligations contained in this Agreement.

**12.** **MISCELLANEOUS PROVISIONS.**

**12.1** **Governing Law, Jurisdiction, and Venue**. This Agreement and all issues and questions concerning its application, construction, validity, interpretation, and enforcement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Delaware or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Delaware. The

Company and each of the Members hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the state or federal courts in New Castle County, Delaware, so long as one of such courts shall have subject-matter jurisdiction over such suit, action, or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware. The Company and each of the Members hereby irrevocably consents to the exclusive jurisdiction of such courts and of the appropriate appellate courts therefrom in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by relevant law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been brought in an inconvenient forum.

**12.2** **Notices**. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of (a) actual receipt, (b) the time of personal delivery to the person to be notified, (c) five (5) days after having been sent by registered or certified United States Post Office air mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight air courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the Company and/or the Members, as the case may be, at their addresses as set forth in Section 2.4 or 2.5 or to such addresses as subsequently modified by written notice given in accordance with this Section 12.2. Each Party to this Agreement agrees to promptly notify the other Parties of any change in its address, and any failure to do so shall not affect the foregoing.

**12.3** **Delays or Omissions**. No delay or omission to exercise any right, power, or remedy accruing to the Company or any Member under this Agreement, upon any breach or default of the Company or any other Member under this Agreement, shall impair any such right, power, or remedy of such non-breaching or non-defaulting Company or Member nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent, or approval of any kind or character on the part of the Company or any Member of any breach or default under this Agreement, or any waiver on the part of the Company or any Member of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to the Company or any Member, shall be cumulative and not alternative.

**12.4** **Amendment, Waiver, and Termination**. This Agreement is subject to amendment only with the written consent of all Members; provided, however, that this Agreement may be amended from time to time by Manager to (a) cure any

ambiguity or correct or supplement any provisions hereof which may be inconsistent with any other provision hereof, (b) correct any printing, stenographic, or clerical errors or omissions; (c) provide for the admission, withdrawal, or substitution of Members in accordance with this Agreement; (d) amend the maintained list of Members, any necessary information regarding any Member, (e) add and delete Members or Substitute Members; or (f) delete or add any provisions of this Agreement required to be so deleted or added by applicable law; provided, however, that no amendment shall be adopted pursuant to this Section 12.4 if such amendment would alter or result in the alteration of, the limited liability of the Members or the status of the Company as a partnership for federal income tax purposes. The power of attorney granted pursuant to Section 8.5 may be used by Manager to execute on behalf of a Member any document evidencing or effecting an amendment adopted in accordance with this Section 12.4. Any amendment, modification, termination, or waiver effected by written agreement of the Company and all Members, including pursuant to the foregoing two sentences, shall be binding upon the Company, all Members, and all of their respective successors and permitted assigns whether or not such successor, assignee, or other individual or entity entered into or approved such amendment, modification, termination, or waiver. No waivers of or exceptions to any term, condition, or provision of this Agreement, in any one or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such term, condition, or provision or any other term, condition, or provision.

   **12.5 Binding Effect**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the Company, all Members, and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any individual or entity other than the parties to this Agreement or their respective successors and permitted assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Any successor or permitted assignee of any of the Members, including without limitation any prospective transferee who purchases any direct or indirect interest in the Project and/or any inter vivos or testamentary donee or transferee of any such interest, shall deliver to Manager, as a condition to any transfer or assignment, a counterpart signature page hereto pursuant to which such successor or permitted assignee shall confirm his or its agreement to be subject to and bound by all of the provisions set forth in this Agreement that were applicable to the predecessor or assignor of such successor or permitted assignee.

   **12.6 Severability**. The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision.

   **12.7 Titles and Subtitles; Sections and Exhibits**. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement. A reference in this Agreement to a Section or Exhibit is, unless otherwise stated, a reference to a Section of or Exhibit to this Agreement.

**12.8** <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the United States Federal ESIGN Act of 2000, i.e., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

**12.9** <u>Injunctive Relief</u>. In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, each party to this Agreement shall be entitled to specific performance of the agreements and obligations of the other parties hereunder and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

**12.10** <u>Advice of Counsel</u>. Each signatory to this Agreement hereby acknowledges that it has sought and obtained the advice of legal counsel before entering into this Agreement and has fully read and understands the meaning and import of all terms in this Agreement. No rule of construction shall apply to the disadvantage of Manager or any other Member because Manager or such other Member or its legal counsel was responsible for the preparation of this Agreement or any part of it.

**12.11** <u>Time of Essence</u>. The time and exactitude of the performance of each of the terms, obligations, covenants, and conditions of this Agreement are hereby declared and acknowledged by each signatory to this Agreement to be of the essence.

**12.12** <u>Entire Agreement</u>. This Agreement constitutes and expresses the entire agreement and understanding among the parties to this Agreement regarding all matters referred to herein; all previous discussions, promises, representations, and understandings relative thereto, if any, among the Parties, being been merged into this Agreement.

IN **WITNESS WHEREOF**, the signatories to this Agreement, intending to be bound, have executed this Agreement as of the date first written above.

For and on behalf of
**LONE STAR PORTS ENTERPRISES, LLC,**
a Delaware limited liability company:

By _____
Name: _____

For and on behalf of
**AXIS MIDSTREAM HOLDINGS, LLC,**
a Texas limited liability company

By _____
Name: _____

AXIS MIDSTREAM HOLDINGS, LLC OPERATING AGREEMENT 042120.DOC

# EXHIBIT 1

# INTANGIBLE RIGHTS



Alistair Dawson
+1 713.951.6225
adawson@beckredden.com

April 16, 2025

***Via E-File***
Hon. Sofia Adrogué
c/o Kirina McNamara
Court Manager
Business Court Division 11A
301 Fannin Street, Fifth Floor
Houston, Texas 77002

      Re:    24-BC11A-0025; *Albert Theodore Powers; Allied Ports LLC v Berry, et. al.*

Dear Judge Adrogué:

I write to provide you an update on some filings that have been made in the Nueces County litigation among the Berry Defendants in the action cited above that might be of interest to this Court. As you know, Defendants Marty Berry and Bonnie Berry filed various motions asking that this case – including the claims related to Axis Midstream Holdings, LLC ("Axis") – be abated and/or transferred to Judge Galvan in Nueces County. Those motions were twice denied by this Court, confirming this Court's exclusive jurisdiction over claims related to the Lone Star Ports Project, Axis, and other entities involved in the Project. Marty Berry and Axis filed a petition for writ of mandamus challenging this Court's rulings. On March 25, 2025 the 15th Court of Appeals affirmed this Court's rulings, further confirming this Court's jurisdiction.

On April 2, 2025, this Court granted Plaintiffs' Application for Temporary Injunction in this case, among other things enjoining Lawrence Berry, Marty Berry, Bonnie Berry, and "their employees, agents, representatives, and any others acting on their behalf or in active concert with them" from:

**C. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity;**

In spite of this Court's clear prior jurisdictional and venue Orders and Temporary Injunction Order, counsel for Defendants Marty and Bonnie Berry has made various filings in Nueces County that defy or otherwise attempt to circumvent this Court's Orders. These additional filings attempt to inject into the case in Nueces County claims and issues over which this Court has already determined it has exclusive jurisdiction.



**Beck | Redden**LLP
The Trial and Appellate Law Firm

First, as we previously notified this Court, on January 21, 2025 (just days before this Court was set to conduct a hearing on Plaintiffs' Application for Temporary Injunction), counsel for Marty and Bonnie filed an Application for Temporary Restraining Order and Temporary Injunction with Judge Galvan in Nueces County, asking Judge Galvan to enjoin Lawrence Berry from saying that anyone other than Berry GP has ownership of Axis. This was obviously an attempt by Mr. Allison to restrict the testimony that this Court would or could hear during the Injunction hearing. Nevertheless, Judge Galvan appropriately denied that Application, and Lawrence was free to testify truthfully at the hearing in this Court.

Next, on January 28, 2025, Berry GP, Inc., an entity purportedly controlled by Marty and Bonnie and represented by their shared counsel, filed a Supplemental and Third-Party Petition attempting to add Lone Star Ports Enterprises, LLC ("LSPE")—one of the entities involved in the Lone Star Ports Project which is the subject of this lawsuit—as a defendant in Nueces County, seeking declaratory relief related to the ownership of Axis. A copy of this pleading is enclosed with this letter. This requested declaration seeks relief that has been litigated in this Court and is subject to this Court's prior jurisdictional and venue Orders and Temporary Injunction Order.

On February 5, 2025, counsel for Marty and Bonnie then filed a document entitled "Intervenors' Original Petition in Intervention" in which Redfish Bay Terminals Inc. and Canada Project Holdings Inc. (two entities purportedly controlled by Marty and Bonnie and represented by their shared counsel) asserted claims against Redfish Bay Properties, LLC ("RBP"), Harbor Island Properties, LLC ("HIP"), and LSPE seeking declarations that (1) transfers of Axis by Lawrence Berry are void, invalid, or of no legal force or effect, (2) that RBP has no ownership interest in the 276.9 acres of real property located near Aransas Pass, Texas, and (3) that HIP has no interest in the 64.468 acre lease on Harbor Island, Texas. A copy of this pleading is enclosed with this letter. Each of the three requested declarations seeks relief that has been litigated in this Court and is subject to this Court's prior jurisdictional and venue Orders and Temporary Injunction Order.

On March 17, 2025, counsel for Marty and Bonnie then filed a document entitled "Counter-Plaintiff Berry GP's First Amended and Supplemental Petition and Axis's Intervention" which again seeks declaratory relief regarding the ownership of Axis and the validity of transfers of its ownership. A copy of this pleading is enclosed with this letter. This requested declaration similarly seeks relief that has been litigated in this Court and is subject to this Court's prior jurisdictional and venue Orders and Temporary Injunction Order.

Both counsel for Lawrence Berry and counsel for the newly added Third-Party Defendants RBP, HIP, and LSPE filed motions to strike, dismiss, and/or abate these newly filed claims and interventions. On April 14, 2025, Judge Galvan in Nueces County heard argument on these motions. We will let this Court know when Judge Galvan issues a ruling on these motions.

**B | R**



Beck | Redden LLP

The Trial and Appellate Law Firm

We bring these matters to the Court's attention because (1) we believe that these filings in Nueces County are an improper attempt to disregard and circumvent this Court's rulings and (2) to the extent that Defendants Marty and Bonnie Berry (through their counsel) seek relief consistent with the pleadings that they have filed in Nueces County, we believe that would be in violation of this Court's prior jurisdictional and venue Orders and Temporary Injunction Order, and we will seek appropriate relief from this Court.

Respectfully submitted,

Alistair B. Dawson

cc:     Foster Baird                                    *Via E-File*
        Staff Attorney
        Business Court Division 11A
        301 Fannin Street, Fifth Floor
        Houston, Texas 77002


        All Counsel of Record                           *Via E-File*


B | R

CAUSE NO. 2024DCV-0045-C

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § § | |
| Defendants. | § | 94TH JUDICIAL DISTRICT |

**COUNTER-PLAINTIFF BERRY GP's SUPPLEMENTAL,
and THIRD PARTY PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Berry GP Inc. ("Berry GP"), Defendant and Counter-Plaintiff herein, and makes and files this Counter-Plaintiff Berry GP's Supplemental and Third-Party Petition complaining of Lone Star Ports Enterprises LLC ("Lone Star"), and in support of same would show:

I.

**PARTIES**

1. Berry GP Inc. ("Berry GP") is a Texas corporation with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry GP is one of the "Berry Entities" as may be referenced herein.

1

Copy from re:SearchTX

2.     Berry Operating Company LLC ("Berry Operating") is a Texas limited liability company with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry Operating is one of the "Berry Entities" as may be referenced herein.

3.     Berry Contracting LP (d/b/a Bay Ltd. ("Bay Ltd.")) is a Texas limited partnership with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Bay Ltd. is one of the "Berry Entities" as may be referenced herein.

4.     Marty Berry ("M.Berry") is a natural person who is presently an Officer, Director, and shareholder of Berry GP, Berry Operating, and Bay Ltd. Marty Berry resides in Nueces County, Texas.

5.     A. Lawrence Berry ("L.Berry") is a natural person who resides in Harris County, Texas. A. Lawrence Berry has already appeared in these proceedings and thus notice of these further proceedings and this filing will be serv ed upon legal counsel for ALB Trust: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002. Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6.     Allen Lawrence Berry, as Trustee of the Allen Lawrence Berry (2007) Trust ("ALB Trust") is a trust wherein Allen Lawrence Berry serves as trustee of the ALB Trust and is – along with others – a beneficiary of the Trust. ALB Trust has already appeared in these proceedings and thus notice of these proceedings and this filing will be served upon legal counsel for ALB Trust: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002. Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6.     Lone Star Ports Enterprises LLC ("LSPE") is a Delaware limited liability company with its principal office at 16192 Coastal Highway, Lewes, Delaware 19958. Defendant Lone Star Ports

2

Copy from re:SearchTX

Enterprises LLC is being added as a third-party defendant in this matter since Lone Star Ports Enterprises LLC has claimed an ownership interest in Axis Midstream Holdings LLC. Defendant LSPE may be given notice of these proceedings and this third-party petition by service upon Defendant LSPE's registered agent for service. Service shall in registered mail upon this registered agent, return receipt requested, and in such manner as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

6. Berry GP, Berry Operating, Bay Ltd., Marty Berry, A. Lawrence Berry, ALB Trust, and Lone Star Ports Enterprises LLC may be sometimes referred to as the "Parties," or any one of them referred to as a "Party."

7. L.Berry is the original Plaintiff in this legal action by having filed Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Verified Petition"). The legal action initiated by Plaintiffs' Verified Petition was filed in Harris County, Texas, but promptly transferred to Nueces County, Texas. A Counter-Plaintiffs' Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' Verified Petition in compliance with Texas Rule of Civil Procedure ("TRCP") 97. L.Berry, adding Lawrence Berry in his capacity as trustee of the Allen Lawrence Berry Trust ("Trust"), then filed Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction. The Counter-Plaintiffs' First Amended Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction in compliance with Texas Rule of Civil Procedure ("TRCP") 97. At this time, Counter-Plaintiff Berry GP files this supplemental and third-party petition to add Defendant LSPE given Berry GP is owner of Axis Midstream Holdings LLC – but Defendant LSPE apparently claims otherwise.

3

Copy from re:SearchTX

## II.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all Parties. Specifically, Berry GP, Berry Operating, and Bay Ltd. are legal entities formed in Texas that maintain their principal offices in Texas. M.Berry and L.Berry reside in Texas. All Parties have sufficient contacts with the State of Texas and, therefore, are subject to the jurisdiction of this Court.

9.      Venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.002(a)(1) as Nueces County is the location where all or a substantial part of the events or omissions giving rise to the claims occurred; and section 15.011 inasmuch as Counter-Plaintiffs seek to recover an interest in and/or quiet title to real property. See Exhibit C (with attachment). Moreover, venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.063(3). See Exhibit B.

## III.

## DISCOVERY

10.      Discovery should be conducted in accordance with Level 3, as permitted by TRCP 109.4.

## IV.

## ADDITIONAL, SUPPLEMENTAL FACTS

11. Axis Midstream Holdings LLC ("Axis") was formed by Allen Lawrence Berry ("Lawrence") on September 12, 2017. In September 2017, control and ownership of Axis was transferred by Lawrence to the Allen Lawrence Berry (2007) Trust ("ALB Trust"). Thereafter, control and ownership of Axis was transferred by ALB Trust to Gansevoort Investments LLC. On or about November 30, 2017, all control and all ownership of Axis was transferred to Berry GP. None of these transactions (from Lawrence to Trust to Gansevoort to Berry GP) are in dispute, and all of

4

Copy from re:SearchTX

these transactions ultimately caused Berry GP to be the sole Member of Axis, and the sole Manager of Axis beginning November 30, 2017. Simply stated, Axis Midstream Holdings LLC – as is true of almost all Berry Companies – became one of the several Berry Companies owned by Berry GP, controlled by Berry GP, and invested in by Berry GP (millions of dollars invested, some directly and some by other Berry Companies). A more detailed review confirms Berry GP's ownership and control of Axis Midstream Holdings LLC:

- November 30, 2017: All of Axis' membership interest and control of Axis transferred to Berry GP. (restated, and not in dispute).

- December 1, 2017: Axis' bank account established at IBC Bank (same bank used by Berry GP), by signatures of Marty Berry, Lawrence Berry, and Ed Martin (then-CEO of Berry GP). This bank account continued to exist for all years pertinent to this dispute

- December 6, 2017: Change in Registered Office/Agent filed with Texas Secretary of State, naming Charles A. Vanaman (Berry Entity employee) as new registered agent for Axis; and identifying 1414 Valero Way, Corpus Christi, Texas as new business address for Axis (same as Berry GP's business address).

- February 28, 2018: Berry GP, through Berry Entities, began making payments in support of project for which Axis sought (and has since acquired) United States Army Corps of Engineers ("USACE") permit allowing for project development (supported by millions of dollars in investment from Berry GP and related entities).

- 2018 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office is 1414 Corn Product Road (now Valero Way), Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of

5

Copy from re:SearchTX

business is 1414 Corn Product Road, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.00"); (5) Axis' registered agent is Charles Vanaman (Berry Entity employee); and (6) all signed by Diane Decou (Berry Entity employee).

- February 4, 2020: Change in Registered Office/Agent filed with Texas Secretary of State, naming Mike Hummell (Berry GP General Counsel) as new registered agent for Axis; and no change in the business address of Axis (1414 Valero Way, Corpus Christi, Texas).

- Year End October 31, 2021 (Report Year 2022)

  o Texas Franchise Tax Report filing for Berry GP and subsidiaries show "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  o Same Texas Franchise Tax Report document shows Axis Midstream Holdings LLC's business address as 1414 Valero Way, Corpus Christi, Texas (also Berry GP's business address), and list three (3) Managers:

6

Copy from re:SearchTX

Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the Texas Franchise Tax Report states (Year 2022): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- 2021 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by Diane Decou (Berry Entity employee).

- Year End October 31, 2022 (Report Year 2023)

  - o Texas Franchise Tax Report filing for Berry GP and subsidiaries shows "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such, Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  - o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  - o Same Texas Franchise Tax Report document shows Axis' business address is 1414 Valero Way, Corpus Christi, Texas (same Berry GP's business

7

Copy from re:SearchTX

address), and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the Texas Franchise Tax Report states (Report Year 2023): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- November 29, 2022, Tonya Fulghum emailed Mike Hummell (General Counsel for Axis and Berry GP) to "correct" Texas Secretary of State paperwork for Axis Midstream Holdings LLC (email exchanges making clear that Tonya believes Axis is a Berry GP owned company).

- December 13, 2022: "Certificate of Amendment" naming Lawrence as President; Dennis, Marty, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents; Jim Klein as CFO; Mike Hummell as General Counsel; and Crissy Hinojosa as Secretary, of Axis Midstream Holdings LLC.

- 2022 Texas Franchise Tax Public Information Report (signed January 24, 2023) evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, Jim Klein is CFO, and Crissy Hinojosa is Secretary (all Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership –

8

Copy from re:SearchTX

100.0"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by Emily Smith (Berry Entity employee).

- 2023 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2023):  (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty,  Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity  employee).

- January 2024:  IBC Bank account records show Axis Midstream Holdings LLC's address as 1414 Valero Way, Corpus Christi, Texas (same as Berry GP's address), and reconciliation of

9

Copy from re:SearchTX

IBC account record accomplished by Berry Entity employees (further confirming Axis is a Berry GP owned company).

- April 3, 2024: Texas Secretary of State document confirming Axis' officers: Lawrence as President; Dennis, Marty, Robert Powers, Mike Hummell, and James Klein as Vice-Presidents; James Klein as CFO; and Mike Hummell as General Counsel.

- November 4, 2024: Texas Secretary of State document confirming Mike Hummell (General Counsel for Berry GP and Axis) as registered agent for Axis.

Berry GP would show the evidentiary record is overwhelming. Since transfer of ownership and control of Axis Midstream Holdings LLC to Berry GP (November 30, 2017), the *status quo* has been that Berry GP is owner of Axis Midstream Holdings LLC and controlled by Berry GP by and though Axis' Managers selected by Berry GP. Axis' bank accounts (2017 – 2024) confirm that ownership and control rests with Berry GP. Axis' legal filings with the Texas Secretary of State in 2017, 2018, 2020, 2021, 2022, 2023, and 2024 repeatedly and consistently confirm that ownership and control of Axis rests with Berry GP (inclusive of express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). Texas Franchise Tax Reports show that Berry GP is paying taxes owed for itself and its affiliated companies, including Axis Midstream Holdings LLC (these reports also with express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). And Berry GP would show that Berry GP's actions speak louder than words, and that Berry GP's (and related Berry Entities') paying millions of dollars in support of Axis' permit (and the Lone Star Ports project, generally) evidence an emphatic understanding that Berry GP

10

Copy from re:SearchTX

owns Axis Midstream Holdings LLC. Berry GP would show by these allegations and evidence in support that Berry GP is 100% owner of Axis Midstream Holdings LLC.

12. Berry GP would show that Berry GP's seven (7) years of quiet ownership and control of Axis Midstream Holdings LLC has been interrupted by Defendant LSPE. Defendant LSPE now claims that Berry GP no longer owns or controls Axis Midstream Holdings LLC. Defendant LSPE now claims that Axis is owned by Lone Star Ports Enterprises LLC, by reliance upon two (2) documents:

(1) "Transfer of Interest and Change of Manager Agreement" from Berry GP to Redfish Bay Terminals Inc. ("RBT") – **a document whose execution would require both Berry GP Board of Directors' approval by majority vote and RBT Board of Directors' approval by majority vote (which neither Board of Directors approved, and no one contends otherwise);** and

(2) "Transfer of Interests and Change of Manager Agreement" from RBT to Lone Star Ports Holdings LLC (intermediary to Lone Star Ports Enterprises LLC) – **a document whose execution would, at a minimum, require RBT Board of Directors' approval by majority vote (which never occurred, and no one contends otherwise).**

Berry GP's petition already on file makes clear that both the above-reference purported transfers of ownership interest and control are invalid.[1] *It makes no sense whatsoever that Berry GP, or RBT, would invest millions of dollars in Axis only to give it away to Defendant LSPE.* As of November 2024, Berry GP learned of the two (2) documents referenced above. As of December

---

[1] Berry GP's Petition, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seek declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Lawrence (e.g., purportedly involving Axis Midstream Holdings LLC, wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.) without majority Board of Directors' approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

11

Copy from re:SearchTX

2024, Berry GP learned of a new "Certificate of Amendment" document apparently filed November 19, 2024, with the Texas Secretary of State – purportedly on behalf of Axis Midstream Holdings LLC – to completely reverse what has been Axis Midstream Holdings LLC's *status quo* of ownership and control for the past seven (7) years. Specifically, the filing by or on behalf of Defendant LSPE of the new "Certificate of Amendment" endeavor to: (1) remove Mike Hummell as registered agent of Axis, and replace him (Mike) with Gretchen Reed (Lawrence's employee); (2) change Axis' long-standing business address from 1414 Valero Way, Corpus Christi, Texas (Axis' and Berry GP's business address) to 5005 Riverway Drive, Houston, Texas (Lawrence's business address); (3) remove Marty, Dennis, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents of Axis (casting-aside their service in support of Axis since 2017, for most of them), and remove Mike Hummell as General Counsel of Axis, and remove James Klein as CFO and remove Crissy Hinojosa as Secretary of Axis; and (5) name Lone Star Ports Enterprises LLC "as the Sole Member and Manager" of Axis. Defendant LSPE's claim of ownership and control of Axis Midstream Holdings LLC is a false claim, and this petition now adds Defendant LSPE so that the transfer documents identified above may be declared void – and so that Berry GP's ownership of Axis Midstream Holdings LLC is judicially confirmed.

## VIII.
## DECLARATORY ACTION

13.     Counter-Plaintiff Berry GP, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seeks declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Counter-Defendant L.Berry (e.g., purportedly involving Orca Assets GP LLC, and/or Axis Midstream Holdings LLC (as wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.), and/or others)) without majority Board of Directors approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

12

Copy from re:SearchTX

14.    This Counter-Plaintiff Berry GP Supplemental and Third-Party Petition is a supplemental pleading, not an amended pleading, and Berry GP thus seeks all relief requested herein in addition to all relief pray for in its current petition on file.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiffs pray for all relief as requested herein and all relief as requested in other pleadings/petition on file, for costs of court in addition thereto, and for such other and further relief – both at law and in equity – to which Counter-Plaintiff Berry GP may show themselves justly entitled as against Counter-Defendants (L.Berry and the ALB Trust) and Defendant LSPE.

Respectfully submitted,

**LAW OFFICE OF DOUGLAS ALLISON**

By: */s/ Douglas A. Allison*
   Douglas A. Allison
   State Bar No. 01083500
   doug@dallisonlaw.com
   403 N. Tancahua Street
   Corpus Christi, Texas 78401
   Telephone: (361) 888-6002
   Facsimile: (361) 888-6651

   ATTORNEY FOR MARTY BERRY,
   BERRY GP, INC., BERRY
   OPERATING COMPANY, LLC and
   BERRY CONTRACTING LOP

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of January 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

   */s/ Douglas A. Allison*
   Douglas A. Allison

13

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 97228722
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Counter-Plaintiff Berry GP's Supplemental And Third Party Petition
Status as of 2/18/2025 11:47 AM CST

Associated Case Party: Lawrence Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Katrina Chamblee-Boyd | | katrinaboyd@butchboydlawfirm.com | 2/11/2025 11:10:47 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |
| Butch Boyd | | butchboyd@butchboydlawfirm.com | 2/11/2025 11:10:47 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 2/11/2025 11:10:47 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shanna Gohlke | | gohlkes@bayltd.com | 2/11/2025 11:10:47 AM | SENT |

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | | doug@dallisonlaw.com | 2/11/2025 11:10:47 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 2/11/2025 11:10:47 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 2/11/2025 11:10:47 AM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 97228722
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Counter-Plaintiff Berry GP's Supplemental And Third Party Petition
Status as of 2/18/2025 11:47 AM CST

Associated Case Party: Michael Hummell

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Van  Huseman | | vhuseman@husemanlawfirm.com | 2/11/2025 11:10:47 AM | SENT |
| John Swallow | | jswallow@husemanlawfirm.com | 2/11/2025 11:10:47 AM | SENT |

Copy from re:SearchTX

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § | |
| Defendants. | § | 94TH JUDICIAL DISTRICT |

## INTERVENORS' ORIGINAL PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Redfish Bay Terminals Inc. ("RFB") and Canada Project Holdings Inc. ("CPH"), Intervenors herein, and make and file this Intervenors' Original Petition in Intervention complaining of Lone Star Ports Enterprises, LLC ("LSPE"), Redfish Bay Properties, LLC ("RBP"), and Harbor Island Properties, LLC ("HIP"), and in support of same would show:

I.

## PARTIES

1.      Redfish Bay Terminals Inc. ("RFB") is a Texas corporation with its principal office at 1414 Corn Products Road (aka 1414 Valero Way), Corpus Christi, Texas 78409.  RFB is 100% owned by Berry GP Inc. ("Berry GP"), an entity already a party to these proceedings.  As such, RFB is

1

one of the "Berry Entities" as may be referenced herein. RFB owns certain real property interests near Aransas Pass, Texas, and these real property interests are the subject of this intervention.

2.     Canada Projects Holdings Inc. ("CPH") is a Texas corporation with its principal office at 1414 Valero Way, Corpus Christi, Texas 78409. CPH holds a lease on a tract of land located on Harbor Island, Nueces County, Texas, and this leasehold interest is the subject of this intervention.

3.     Berry GP Inc. ("Berry GP") is a Texas corporation with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry GP is one of the "Berry Entities" as may be referenced herein. Berry GP is already a party to these legal proceedings and will be given notice of the filing of this Intervenors' Original Petition in Intervention by service through Nueces County's electronic service system.

4.     Berry Operating Company LLC ("Berry Operating") is a Texas limited liability company with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry Operating is one of the "Berry Entities" as may be referenced herein. Berry Operating is already a party to these legal proceedings and will be given notice of the filing of this Intervenors' Original Petition in Intervention by service through Nueces County's electronic service system.

5.     Berry Contracting LP (d/b/a Bay Ltd. ("Bay Ltd.")) is a Texas limited partnership with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Bay Ltd. is one of the "Berry Entities" as may be referenced herein. Bay Ltd. is already a party to these legal proceedings and will be given notice of the filing of this Intervenors' Original Petition in Intervention by service through Nueces County's electronic service system.

6.     Marty Berry ("M.Berry" or "Marty") is a natural person who is presently a Director and Officer of Berry GP, Berry Operating, Bay Ltd., and RFB. Marty Berry resides in Nueces County, Texas. Marty Berry has already answered and appeared in these legal proceedings. As such,

notice of the filing of this Intervenors' Original Petition in Intervention will be given by service upon Marty's legal counsel of record through the Nueces County electronic service system.

7.     Allen Lawrence Berry ("L.Berry" or "Lawrence") is a natural person who resides in Harris County, Texas.   Allen Lawrence Berry has already answered and appeared in these legal proceedings.  As such, notice of the filing of this Intervenors' Original Petition in Intervention will be given by service upon Lawrence's legal counsel of record through the Nueces County electronic service system: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.

8.     Allen Lawrence Berry (2007) Trust ("ALB Trust" or "Trust") is a duly formed trust with Allen Lawrence Berry as its trustee.  The ALB Trust has already answered and appeared in these legal proceedings.  As such, notice of the filing of this Intervenors' Original Petition in Intervention will be given by service upon the ALB Trust's legal counsel of record through the Nueces County electronic service system:  Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.

9.     Lone Star Ports Enterprises LLC ("LSPE") is a Delaware limited liability company with its principal office at 16192 Coastal Highway, Lewes, Delaware 19958.  Defendant Lone Star Ports Enterprises LLC has claimed an ownership interest in Axis Midstream Holdings LLC and thus is named as a Defendant in this lawsuit.  Defendant LSPE may be given notice of these proceedings and the filing of this Intervenors' Original Petition in Intervention through its registered agent for service: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958, by personal service. As such, Lone Star Ports Enterprises LLC ("LSPE") may be served with notice of these proceedings by issuance of citation and service of process — with a copy of this Intervenors' Original Petition in Intervention attached thereto — upon its registered agent for service at the

3

address indicated and, in such manner, as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

10.     Redfish Bay Properties LLC ("RBP") is a Delaware limited liability company with its principal place of business at 5005 Riverway Drive, Suite 440, Houston, Texas 77056. Defendant Redfish Bay Properties LLC wrongfully claims an interest in real property owned by RFB near Aransas Pass, Texas, and thus is named as a Defendant in this lawsuit. Defendant RBP may be given notice of these proceedings and the filing of this Intervenors' Original Petition in Intervention through its registered agent for service: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958, by personal service. As such, Redfish Bay Properties LLC ("RBP") may be served with notice of these proceedings by issuance of citation and service of process — with a copy of this Intervenors' Original Petition in Intervention attached thereto — upon its registered agent for service at the address indicated and, in such manner, as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

11.     Harbor Island Properties LLC ("HIP") is a Delaware limited liability company with its principal place of business at 5005 Riverway Drive, Suite 440, Houston, Texas 77056. Defendant Harbor Island Properties LLC wrongfully claims right to CPH's leasehold interest in a tract of land on Harbor Island, Nueces County, Texas, and thus is named as a Defendant in this lawsuit. Defendant HIP may be given notice of these proceedings and the filing of this Intervenors' Original Petition in Intervention through its registered agent for service: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958, by personal service. As such, Harbor Island Properties LLC ("HIP") may be served with notice of these proceedings by issuance of citation and service of process — with a copy of this Intervenors' Original Petition in Intervention attached thereto —

4

upon its registered agent for service at the address indicated and, in such manner, as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

12. Intervenors have only recently learned that other legal entities (LSPE, RBP, and HIP) claim ownership and/or control of assets owned and controlled by Berry GP and/or Intervenors. As such, Intervenors file this Intervenors' Original Petition in Intervention seeking a declaration pursuant to Texas Civil Practice & Remedies Code ("TCPRC"), Chapter 37, of Intervenors' rights, status, and other legal relations to RFB's real property interests[1] and CPH's leasehold interest.[2]

## II.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over all parties. All parties have sufficient contacts with the State of Texas and, therefore, are subject to the jurisdiction of this Court.

14. Venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.002(a)(1) as Nueces County is the location where all or a substantial part of the events or omissions giving rise to the claims occurred; and section 15.011 as Intervenors seek to recover an interest in and/or quiet title to real property. Moreover, venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.063(3).

## III.

## DISCOVERY

15. Discovery should be conducted in accordance with Level 3, as permitted by TRCP 190.4.

## IV.

---

[1] To the extent any legal action taken or relief requested herein may be characterized as a trespass to try title lawsuit, then Intervenors hereby assert all such claims and request all such relief – inclusive of those claims that may be brought pursuant to Texas Property Code Chapter 22.
[2] Per Texas Civil Practice & Remedies Code, section 37.006, "all persons who have or claim any interest that would be affected by the declaration must be made parties." Thus, RBP and HIP are being added as parties to this lawsuit by this Intervenors' Original Petition in Intervention. The inclusion of all such parties is also required by Texas Rule of Civil Procedure 39.

## ADDITIONAL FACTS

16. For many years, RFB has enjoyed quiet ownership and control of real property located near Aransas Pass, Texas (more than 200 acres) on and near the intercoastal waterway, the "RFB Land"). RFB recently learned that RBP now claims ownership and/or control of the RFB Land. Worse yet, RBP's claim of ownership/control is part of a larger scheme by Lawrence and others to solicit hundreds of millions of dollars to develop a project – *using RFB's Land which RBP does not own or control.* This must stop, and RFB's ownership/control of the RFB Land is properly confirmed by declaration pursuant to TCPRC Chapter 37. Alternatively, this action may proceed as a trespass to try title claim by RFB.

17. For several years, CPH has enjoyed quiet access and control of its leasehold interest in real property located on Harbor Island, Nueces County, Texas (a lease for approximately 62 acres on Harbor Island, Texas (the "CPH Lease Tract")). CPH recently learned that HIP now claims right to and/or control of the CPH Lease Tract. Worse yet, HIP's claim of right and control is part of a larger scheme by Lawrence and others to solicit hundreds of millions of dollars to develop a project – *using the CPH Lease Tract which HIP does not hold or control.* This must stop, and CPH's right to and control of the leasehold estate in the CPH Lease Tract is properly confirmed by declaration pursuant to TCPRC Chapter 37. Alternatively, this action may proceed as a trespass to try title claim by CPH.

## V.
## DECLARATORY ACTION

18. Intervenor RFB, pursuant to Texas Civil Practice & Remedies Code ("TCPRC"), Chapter 37, seeks declaration that the RFB Land for which RFB is record title owner be confirmed as RFB owned real property; and that further declaration confirm RBP has no right, title, or interest whatsoever in the RFB Land. Intervenor RFB, also pursuant to TCPRC, seeks declaration that

6

any transfer/conveyance/contract/Manager appointment executed/accepted by Lawrence, in whole or in part, related to Axis Midstream Holdings LLC without Berry GP and RFB majority Board of Directors' approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

19.     Intervenor CPH, pursuant to TCPRC Chapter 37, seeks declaration that CPH's leasehold interest in the CPH Lease Tract be confirmed as a leasehold interested held by CPH; and that further declaration confirm HIP has no right, title, or interest (including any leasehold interest) whatsoever in the CPH Lease Tract.

WHEREFORE, PREMISES CONSIDERED, Redfish Bay Terminals Inc. and Canada Projects Holdings Inc. pray for all relief as requested herein, for costs of court in addition thereto, attorneys' fees, and for such other and further relief – both at law and in equity – to which these Intervenors may show themselves justly entitled as against Lawrence, the ALB Trust, RBP, HIP, and LSPE.

Respectfully submitted,

**LAW OFFICE OF DOUGLAS ALLISON**

By: */s/ Douglas A. Allison*
     Douglas A. Allison
     State Bar No. 01083500
     doug@dallisonlaw.com
     403 N. Tancahua Street
     Corpus Christi, Texas 78401
     Telephone: (361) 888-6002
     Facsimile: (361) 888-6651

     ATTORNEY FOR REDFISH BAY
     TERMINALS INC., AND CANADA
     PROJECTS HOLDINGS INC.

7

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of February 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via    e-service.

_/s/ Douglas A. Allison_

Douglas A. Allison

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § § | |
| Defendants. | § | 94TH JUDICIAL DISTRICT |

## COUNTER-PLAINTIFF BERRY GP's FIRST AMENDED SUPPLEMENTAL and THIRD PARTY PETITION, and AXIS's INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Berry GP Inc. ("Berry GP," a Defendant and Counter-Plaintiff herein) and Axis Midstream Holdings LLC ("Axis"), and makes and files this Counter-Plaintiff Berry GP's First Amended Supplemental and Third-Party Petition and Axis' Intervention, complaining of Lone Star Ports Enterprises LLC ("Lone Star"), and in support of same would show:

I.

## PARTIES

1.     Berry GP Inc. ("Berry GP") is a Texas corporation with its principal office at 1414 Valero Way, Corpus Christi, Texas 78409.  Berry GP is one of the "Berry Entities" as may be referenced herein.

1

2.     Berry Operating Company LLC ("Berry Operating") is a Texas limited liability company with its principal office at 1414 Valero Way, Corpus Christi, Texas 78409.  Berry Operating is one of the "Berry Entities" as may be referenced herein.

3.     Berry Contracting LP (d/b/a Bay Ltd. ("Bay Ltd.")) is a Texas limited partnership with its principal office at 1414 Valero Way, Corpus Christi, Texas 78409.  Bay Ltd. is one of the "Berry Entities" as may be referenced herein.

4.     Marty Berry ("Marty") is a natural person who is presently an Officer and Director of Berry GP, Berry Operating, and Bay Ltd.  Marty Berry resides in Nueces County, Texas.

5.     Axis Midstream Holdings LLC ("Axis") is a Texas limited liability company with its principal office at 1414 Valero Way, Corpus Christi, Texas78409.  Axis is wholly owned by Berry GP, or in the alternative, Redfish Bay Terminals Inc. ("RFB," a company wholly owned by Berry GP).  Axis is intervening as a 'voluntary plaintiff' to assure compliance with Texas Rule of Civil Procedure ("TRCP") 39 and Texas Civil Practice & Remedies Code ("TCPRC") Chapter 37 (section 37.006)(a).

5.     A. Lawrence Berry ("Lawrence") is a natural person who resides in Harris County, Texas.  A. Lawrence Berry has already appeared in these proceedings, and thus notice of these further proceedings and this filing will be served upon legal counsel for Lawrence Berry:  Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.  Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6.     Allen Lawrence Berry ("Trustee"), as Trustee of the Allen Lawrence Berry (2007) Trust ("ALB Trust"), has already appeared in these proceedings, and thus notice of these further proceedings and this filing will be served upon legal counsel for Trustee and ALB Trust:  Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.

Trustee is also a beneficiary of the ALB Trust. Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6. Lone Star Ports Enterprises LLC ("LSPE") is a Delaware limited liability company with its principal office at 16192 Coastal Highway, Lewes, Delaware 19958. Defendant Lone Star Ports Enterprises LLC is being added as a third-party defendant in this matter since Lone Star Ports Enterprises LLC has claimed an ownership interest in Axis Midstream Holdings LLC. Defendant LSPE may be given notice of these proceedings, and this third-party petition and intervention, by service upon Defendant LSPE's registered agent for service (or other manner as complies with Texas Rules of Civil Procedure), or by service upon LSPE's legal counsel of record (upon appearance of LSPE in these proceedings).

6. Berry GP, Berry Operating, Bay Ltd., Marty, Lawrence, ALB Trust, Axis, and Lone Star Ports Enterprises LLC may be sometimes referred to as the "Parties," or any one of them referred to as a "Party."

7. Lawrence is the original Plaintiff in this legal action by having filed Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Verified Petition"). The legal action initiated by Plaintiffs' Verified Petition was filed in Harris County, Texas, but promptly transferred to Nueces County, Texas. A Counter-Plaintiffs' Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' Verified Petition in compliance with TRCP 97. Lawrence, adding Allen Lawrence Berry in his capacity as trustee of the Allen Lawrence Berry (2007) Trust ("ALB Trust"), then filed Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction. The Counter-Plaintiffs' First Amended Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction in compliance with

TRCP 97. At this time, Counter-Plaintiff Berry GP files this first amended supplemental and third-party petition, and Axis this intervention, to assure all interested parties are properly before this Court for adjudication of ownership/control of Axis Midstream Holdings LLC.

## II.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all Parties. Specifically, Berry GP, Berry Operating, Bay Ltd., and Axis are legal entities formed in Texas that maintain their principal offices in Texas. Marty and Lawrence reside in Texas. The ALB Trust was formed in Texas, its trustee resides in Texas, and ALB Trust voluntarily appeared in these proceedings. All Parties have sufficient contacts with the State of Texas and, therefore, are subject to the jurisdiction of this Court.

9. Venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.002(a)(1) as Nueces County is the location where all or a substantial part of the events or omissions giving rise to the claims occurred; and section 15.011 inasmuch as Counter-Plaintiffs seek to recover an interest in and/or quiet title to real property. Moreover, venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.063(3).

## III.

## DISCOVERY

10. Discovery should be conducted in accordance with Level 3, as permitted by TRCP 190.4.

## IV.

## ADDITIONAL, SUPPLEMENTAL FACTS

11. Axis Midstream Holdings LLC ("Axis") was formed by A. Lawrence Berry ("Lawrence") on September 12, 2017. In September 2017, control and ownership of Axis was transferred by Lawrence to the Allen Lawrence Berry (2007) Trust ("ALB Trust"). Thereafter, control and

4

ownership of Axis was transferred by ALB Trust to Gansevoort Investments LLC ("Gansevoort"). On or about November 30, 2017, all control and all ownership of Axis was transferred to Berry GP. None of these transactions (from Lawrence to ALB Trust to Gansevoort to Berry GP) are in dispute, and all of these transactions ultimately caused Berry GP to be the sole Member of Axis, and the sole Manager of Axis beginning November 30, 2017. Simply stated, Axis Midstream Holdings LLC – as is true of almost all Berry Companies – became one of the several Berry Companies owned by Berry GP, controlled by Berry GP, and invested in by Berry GP (millions of dollars invested, some directly and some by other Berry Companies). A more detailed review confirms Berry GP's ownership and control of Axis Midstream Holdings LLC:

- November 30, 2017: All of Axis' membership interest and control of Axis transferred to Berry GP. (restated, and not in dispute).

- December 1, 2017: Axis' bank account established at IBC Bank (same bank used by Berry GP), by signatures of Marty Berry, Lawrence Berry, and Ed Martin (then-CEO of Berry GP). This bank account continued to exist for all years pertinent to this dispute

- December 6, 2017: Change in Registered Office/Agent filed with Texas Secretary of State, naming Charles A. Vanaman (Berry Entity employee) as new registered agent for Axis; and identifying 1414 Valero Way, Corpus Christi, Texas as new business address for Axis (same as Berry GP's business address).

- February 28, 2018: Berry GP, through Berry Entities, began making payments in support of project for which Axis sought (and has since acquired) United States Army Corps of Engineers ("USACE") permit allowing for project development

5

(supported by millions of dollars in investment from Berry GP and related entities).

- 2018 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office is 1414 Corn Product Road (now Valero Way), Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business is 1414 Corn Product Road, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.00"); (5) Axis' registered agent is Charles Vanaman (Berry Entity employee); and (6) all signed by Diane Decou (Berry Entity employee).

- February 4, 2020: Change in Registered Office/Agent filed with Texas Secretary of State, naming Mike Hummell (Berry GP General Counsel) as new registered agent for Axis; and no change in the business address of Axis (1414 Valero Way, Corpus Christi, Texas).

- Year End October 31, 2021 (Report Year 2022)

  o Texas Franchise Tax Report filing for Berry GP and subsidiaries show "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such

6

Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

- o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

- o Same Texas Franchise Tax Report document shows Axis Midstream Holdings LLC's business address as 1414 Valero Way, Corpus Christi, Texas (also Berry GP's business address), and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the Texas Franchise Tax Report states (Year 2022): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- 2021 Texas Franchise Tax Public Information Report evidencing:  (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's

and Axis' General Counsel); and (6) all signed by Diane Decou (Berry Entity employee).

- Year End October 31, 2022 (Report Year 2023)

  o Texas Franchise Tax Report filing for Berry GP and subsidiaries shows "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such, Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  o Same Texas Franchise Tax Report document shows Axis' business address is 1414 Valero Way, Corpus Christi, Texas (same Berry GP's business address), and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

  o Finally, the footnote on the Texas Franchise Tax Report states (Report Year 2023): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- November 29, 2022, Tonya Fulghum emailed Mike Hummell (General Counsel for Axis and Berry GP ) to "correct" Texas Secretary of State paperwork for Axis Midstream

Holdings LLC (email exchanges making clear that Tonya believes Axis is a Berry GP owned company).

- December 13, 2022: "Certificate of Amendment" naming Lawrence as President; Dennis, Marty, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents; Jim Klein as CFO; Mike Hummell as General Counsel; and Crissy Hinojosa as Secretary, of Axis Midstream Holdings LLC.

- 2022 Texas Franchise Tax Public Information Report (signed January 24, 2023) evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, Jim Klein is CFO, and Crissy Hinojosa is Secretary (all Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.0"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by Emily Smith (Berry Entity employee).

- 2023 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2023): (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three

(3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity  employee).

- January 2024:  IBC Bank account records show Axis Midstream Holdings LLC's address as 1414 Valero Way, Corpus Christi, Texas (same as Berry GP's address), and reconciliation of IBC account record accomplished by Berry Entity employees (further confirming Axis is a Berry GP owned company).

- April 3, 2024:  Texas Secretary of State document confirming Axis' officers:  Lawrence as President; Dennis, Marty, Robert Powers, Mike Hummell, and James Klein as Vice-Presidents; James Klein as CFO; and Mike Hummell as General Counsel.

- November 4, 2024:  Texas Secretary of State document confirming Mike Hummell (General Counsel for Berry GP and Axis) as registered agent for Axis.

- 2024 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2024):  (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty,  Dennis, Jim Klein, and Mike Hummell; and Robert Powers as Secretary (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of

10

Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity employee) as "Officer."

Berry GP would show the evidentiary record is overwhelming. Since transfer of ownership and control of Axis Midstream Holdings LLC to Berry GP (November 30, 2017), the *status quo* has been that Berry GP is 100% owner of Axis Midstream Holdings LLC, and Berry GP has sole control of Axis. Axis' bank accounts (2017 – 2024) confirm that ownership and control rests with Berry GP. Axis' legal filings with the Texas Secretary of State in 2017, 2018, 2020, 2021, 2022, 2023, and 2024 repeatedly and consistently confirm that ownership and control of Axis rests with Berry GP (inclusive of express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). Texas Franchise Tax Reports show that Berry GP is paying taxes owed for itself and its affiliated companies, including Axis Midstream Holdings LLC (these reports also with express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). And Berry GP would show that Berry GP's actions speak louder than words, and that Berry GP's (and related Berry Entities') paying millions of dollars in support of Axis' permit (and the Lone Star Ports project, generally) evidence an emphatic understanding that Berry GP owns Axis Midstream Holdings LLC. Berry GP would show by proof of these allegations and other evidence that Berry GP is 100% owner and has sole control of Axis Midstream Holdings LLC.

12. Berry GP would show that Berry GP's seven (7) years of quiet ownership and control of Axis Midstream Holdings LLC has been interrupted by Defendant LSPE. Defendant LSPE now claims that Berry GP no longer owns or controls Axis Midstream Holdings LLC. Defendant

11

LSPE now claims that Axis is owned by Lone Star Ports Enterprises LLC, by reliance upon two (2) documents:

(1) "Transfer of Interest and Change of Manager Agreement" from Berry GP to Redfish Bay Terminals Inc. ("RFB") – **a document whose execution would require both Berry GP Board of Directors' approval by majority vote and RFB Board of Directors' approval by majority vote (which neither Board of Directors approved, and no one contends otherwise);** and

(2) "Transfer of Interests and Change of Manager Agreement" from RFB to Lone Star Ports Holdings LLC (intermediary to Lone Star Ports Enterprises LLC) – **a document whose execution would, at a minimum, require RFB Board of Directors' approval by majority vote (which never occurred, and no one contends otherwise).**

Berry GP's counter-petition filed early 2024 and amended January 2025 already makes clear Lawrence has been self-dealing through a number of companies (Orca, Axis, and others), and that both the above-reference purported transfers of ownership interest and control are invalid.[1] *It makes no sense whatsoever that Berry GP, or RFB, would invest millions of dollars in Axis only to give it away to Defendant LSPE.* As of November, 2024, Berry GP and Axis learned of the two (2) documents referenced above. As of December, 2024, Berry GP and Axis learned of a new "Certificate of Amendment" document apparently filed November 19, 2024, with the Texas Secretary of State – purportedly on behalf of Axis – to completely reverse what has been Axis' *status quo* of ownership and control for the past seven (7) years. Specifically, the filing by or on

---

[1] Berry GP's counter-petition, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seeks declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Lawrence (e.g., purportedly involving Orca-related entities, Axis Midstream Holdings LLC, and others are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

behalf of Defendant LSPE of the new "Certificate of Amendment" endeavors to: (1) remove Mike Hummell as registered agent of Axis, and replace him (Mike) with Gretchen Reed (Lawrence's employee); (2) change Axis' long-standing business address from 1414 Valero Way, Corpus Christi, Texas (Axis' and Berry GP's business address) to 5005 Riverway Drive, Houston, Texas (Lawrence's business address); (3) remove Marty, Dennis, Jim Klein, Mike Hummell, and Robert Powers as officers of Axis (casting-aside their service in support of Axis since 2017, for most of them), remove Mike Hummell as General Counsel of Axis, remove James Klein as CFO of Axis, and remove Crissy Hinojosa as Secretary of Axis; and (5) name Lone Star Ports Enterprises LLC "as the Sole Member and Manager" of Axis. Berry GP and Axis would show that Defendant LSPE's claim of ownership and control of Axis is a false claim, and this petition is filed seeking declaration/confirmation of who is the legal owner and in control of Axis Midstream Holdings LLC.[2]

## VIII.
## DECLARATORY ACTION

13.     Berry GP and Axis, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seek declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Lawrence (e.g., purportedly involving Orca Assets GP LLC, and/or Axis Midstream Holdings LLC (as wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.), and other self-dealing by Lawrence) without majority Board of Directors approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

---

[2] This pleading adds Axis Midstream Holdings LLC as a party to these proceedings (and otherwise allows for few revisions/changes). Axis Midstream Holdings LLC is added as a party to comply with TRCP 39 and TCPRC 37.006. The inclusion of Axis Midstream Holdings LLC is required by Texas law.

14.     This Counter-Plaintiff Berry GP First Amended Supplemental and Third-Party Petition, and Axis' intervention, is a supplemental pleading, not an amended pleading, and Berry GP thus seeks all relief requested herein in addition to all relief pray for in its current petition on file.

WHEREFORE, PREMISES CONSIDERED, Berry GP and Axis pray for all relief as requested herein and all relief as requested in other pleadings/petition on file (for Berry GP and Axis), for costs of court in addition thereto, and for such other and further relief – both at law and in equity – to which Berry GP and Axis may show themselves justly entitled as against Counter-Defendants (Lawrence and the ALB Trust) and Defendant LSPE.

Respectfully submitted,

**LAW OFFICE OF DOUGLAS ALLISON**

By: */s/ Douglas A. Allison*
Douglas A. Allison
State Bar No. 01083500
doug@dallisonlaw.com
403 N. Tancahua Street
Corpus Christi, Texas 78401
Telephone: (361) 888-6002
Facsimile: (361) 888-6651

ATTORNEY FOR MARTY BERRY,
BERRY GP INC., BERRY
OPERATING COMPANY LLC,
BERRY CONTRACTING LOP, and
AXIS MIDSTREAM HOLDINGS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

*/s/ Douglas A. Allison*
Douglas A. Allison

14

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC. | § § § § § § § § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| BERRY GP, INC.; LDMA LIMITEDPARTNERSHIP; and BECON, INC.; | § § § § | NUECES COUNTY, TEXAS |
| *Nominal Plaintiff,* | § § § | |
| **v.** | § § | |
| MARTY BERRY, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LP | § § § § § | |
| *Defendants.* | § § | 94TH JUDICIAL DISTRICT |

---

## BERRY GP's MOTION FOR PARTIAL SUMMARY JUDGMENT
## RFB's MOTION FOR PARTIAL SUMMARY JUDGMENT

---

NOW COME Berry GP Inc. ("Berry GP") and Redfish Bay Terminals Inc. ("RFB"), make and file Berry GP's Motion for Partial Summary Judgment ("GP Motion") and RFB's Motion for Partial Summary Judgment ("RFB's Motion"), collectively the "Motion," and in support of same would show:

1

# I.
# EXECUTIVE SUMMARY

The purpose of this motion is to demonstrate – *as a matter of law* – that Axis Midstream Holdings LLC ("Axis") is wholly owned (100%) by Berry GP; or alternatively, that Axis is wholly owned (100%) by RFB (a company wholly owned by Berry GP).  Although Berry GP's investment of more than $17 million dollars in Axis would presumably be predictive of Berry GP's ownership of Axis,[1] Lawrence went rogue.  Specifically, Lawrence signed multiple documents attempting transfer of Axis from and through a series of shell companies to convert the asset (Axis), but without legal authority to do so.  These purported transfers are void as a matter of law, and thus Axis continues to be directly owned by Berry GP (alternatively, by Berry GP through RFB), per Texas law.  Further, all the evidence shows that RFB's real property interests in dispute continue to be owned by RFB (not Redfish Bay Properties LLC ("RBP")).

# II.
# AXIS IS OWNED BY BERRY GP

On or about September 12, 2017, Axis Midstream Holdings LLC ("Axis") was formed by Lawrence with the Allen Lawrence Berry (2007) Trust ("Trust") as its (Axis') sole member.[2]  On September 18, 2017, Lawrence (acting as sole member of Gansevoort Investments LLC) sold/ transferred to Axis by certain assets (real property easements, pipeline facilities, permits, and other assets), and Lawrence (acting as Trustee of the Trust, sole member of Axis) accepted such assets.[3]  On September 20, 2017, the Trust (Lawrence acting as Trustee) then transferred "100% interest in

---

[1] See Exhibit 1 (provided in camera, since it is sensitive financial data (showing dollars paid by Berry GP and related companies to vendors to develop Axis' permit application approved by the United States Army Corps of Engineers ("USACE")).

[2] Exhibit 2 (Axis Certificate of Formation).

[3] Exhibit 3 (Consent of Sole Member of Axis Midstream Holdings, LLC in Lieu of Special Meeting, ALB007553-ALB007558)

2

Axis Midstream Holdings LLC . . . to Allen Lawrence Berry . . . ."[4]  On this same day (September 20, 2017), Lawrence transferred "100% interest in Axis to Gansevoort Investments LLC . . . ."[5]  On November 30, 2017, Gansevoort Investments LLC through Lawrence transferred Axis ("100%") to Berry GP Inc.[6]  None of these transfers of Axis are in dispute, as all parties acknowledge that Berry GP became owner of Axis Midstream Holdings LLC as of November 30, 2017.  Since November 30, 2017, Berry GP has been 100% owner of Axis (its permit application (and approved permits), its real property interests, and all its assets).

Berry GP (et al) disputes Lawrence's alleged (rogue) transfers of Axis from Berry GP to RFB, and certainly further disputes that RFB ever made any transfer of Axis to Lone Star Port Holdings LLC ("LSPH", then to Lone Star Ports Enterprises LLC ("LSPE")) in 2020 – such transfers fully discovered in late 2024.[7]

## III.
## BERRY GP INVESTED IN AXIS (its asset)

Berry GP invested in its asset (Axis).  Berry GP's commitment to full financial support of Axis was and remains steady.  After acquiring Axis in late 2017, the capital demands of the proposed Axis project were immediately significant:

1. In 2018, $2,535,752.94 invested by Berry GP (and Berry-related companies) into Axis;

2. In 2019 - $5.399,547.97 invested by Berry GP (and Berry-related companies) into Axis;

3. In 2020, $6,113,278.86 invested by Berry GP (and Berry-related companies) into Axis;

4. In 2021, $2,431,138.54 invested by Berry GP (and Berry-related companies) into Axis;

5. In 2022, $1,154,240.81 invested by Berry GP (and Berry-related companies) into Axis;

---

[4] Exhibit 4 (Transfer of Interest, ALB007561).
[5] Exhibit 5 (Transfer of Interest, ALB007562).
[6] Exhibit 6 (ALB007563).
[7] Exhibit 7 and Exhibit 8 (Lawrence's supposed transfers lacking required board approvals).

6. In 2023, $362,819.84 invested by Berry GP (and Berry-related companies) into Axis; and

7. In 2024, $33,892.03 invested by Berry GP (and Berry-related companies) into Axis.[8]

By 2023, the demand for capital to support the Axis project was waning as all data and support for Axis' United States Army Corps of Engineers ("USACE") permit application had been substantially satisfied. At a point, it becomes a waiting game with the USACE. All considered, actions speak louder than words as the money-trail confirms Berry GP's certain belief that Berry GP was 100% owner of Axis (since transfer of Axis to Berry GP on November 30, 2017).

### IV.
### PAPER TRAIL CONFIRMS BERRY GP's OWNERSHIP OF AXIS

Documents confirm Berry GP's ownership of Axis since 2017. A review of public filings and tax information demonstrate Berry GP's certainty that Axis became an asset of Berry GP in 2017 and continues as an asset of Berry GP. No company (including Berry GP) would invest upwards of $17 Million Dollars in an asset belonging/controlled by another (as claimed by Lone Star Ports Holdings LLC ("LSPH") in this matter). Please consider the following.

- November 30, 2017: All of Axis' membership interest and control of Axis transferred to Berry GP (not in dispute);[9]

- December 1, 2017: Axis' bank account established at IBC Bank (same bank used by GP), by signatures of Marty, Lawrence, and Ed Martin (then-CEO of GP).[10]

---

[8] See Exhibit 1 (provided in camera, since it is sensitive financial data (showing dollars paid by Berry GP and related companies to vendors to develop Axis' permit application approved by the United States Army Corps of Engineers ("USACE")).
[9] See footnotes, above.
[10] Exhibit 9 (signed documents to open original Axis bank account).

4

This bank account continued to exist for all years pertinent to this dispute (see IBC bank record for same Axis account).[11]

- December 6, 2017: Registered Office/Agent filed with Texas Secretary of State, naming Charles A. Vanaman (Berry Entity employee) as registered agent for Axis; and identifying 1414 Valero Way, Corpus Christi, Texas as business address for Axis (Axis' business address same as GP's business address).[12]

- February 28, 2018: GP, through Berry Entities, began making payments in support of Axis/Lone Star projects (financial ledger showing million invested omitted as sensitive document);

- 2018 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office is 1414 Corn Product Road ("Corn Products" now called "Valero Way"), Corpus Christi, Texas (again, Axis' principal office address is same as GP's principal office address); (2) Axis' principal place of business is 1414 Corn Product Road, Corpus Christi, Texas (also GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis (third brother, recently passed and his interest represented by Bonnie Berry); (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.00"); (5) Axis' registered agent is Charles Vanaman (Berry Entity employee); and (6) all signed by Diane Decou (GP's CFO).[13]

- February 4, 2020: Change in Registered Office/Agent filed with Texas Secretary of State, naming Mike Hummell (GP General Counsel) as new registered agent for

[11] Exhibit 10 (Axis bank account reconciliation performed by Berry GP entity employees).
[12] See Exhibit 11
[13] See Exhibit 12

Axis (as was the case with all Berry companies given retirement of Charles A. Vanaman); and no change in the business address of Axis (1414 Valero Way, Corpus Christi, Texas).[14]

- Year End October 31, 2021 (Report Year 2022):

  o Texas Franchise Tax Report filing for GP and subsidiaries show "Axis Midstream Holdings LLC" as an "affiliate" of GP – as such GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  o Same Texas Franchise Tax Report document shows GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  o Same Texas Franchise Tax Report document shows Axis Midstream Holdings LLC's business address as 1414 Valero Way, Corpus Christi, Texas, and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

  o Finally, the footnote on the last page of the Texas Franchise Tax Report states (Year 2022): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."[15]

- 2021 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned

---

[14] See Exhibit 13
[15] See Exhibit 14

6

(parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by Diane Decou (GP's CFO).[16]

- Year End October 31, 2022 (Report Year 2023):

  o Texas Franchise Tax Report filing for GP and subsidiaries shows "Axis Midstream Holdings LLC" as an "affiliate" of GP – as such, GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  o Same Texas Franchise Tax Report document shows GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  o Same Texas Franchise Tax Report document shows Axis' business address is 1414 Valero Way, Corpus Christi, Texas (still GP's business address), and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

  o Finally, the footnote on the last page of Texas Franchise Tax Report states (Report Year 2023): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."[17]

- November 29, 2022, Tonya Fulghum emailed Mike Hummell (General Counsel for Axis and GP) to "correct" documentation for Axis Midstream Holdings LLC to

---

[16] See Exhibit 15
[17] See Exhibit 16

reflect GP's ownership (email exchanges making clear that Tonya believes Axis is a GP owned company).[18]

- 2022 Texas Franchise Tax Public Information Report (signed January 24, 2023) evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, Jim Klein is CFO, and Crissy Hinojosa is Secretary (all Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.0"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by Emily Smith (Berry Entity employee).[19]

- 2023 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2023): (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered

---

[18] See Exhibit 17
[19] See Exhibit 18

8

agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (GP CFO).[20]

- January 2024: IBC Bank account records[21] shows Axis Midstream Holdings LLC's address as 1414 Valero Way, Corpus Christi, Texas (still same as GP's address), and reconciliation of IBC account record accomplished by Berry Entity employees (further confirming Axis is a GP owned company).

- April 3, 2024: Texas Secretary of State document confirming Axis' officers: Lawrence as President; Dennis, Marty, Robert Powers, Mike Hummell, and James Klein as Vice-Presidents; James Klein as CFO; and Mike Hummell as General Counsel.[22]

- November 4, 2024: Texas Secretary of State document confirming Mike Hummell (General Counsel for GP and Axis) as registered agent for Axis.[23]

- 2024 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2024): (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Robert Powers, James Klein, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent)

---

[20] See Exhibit 19
[21] See Exhibit 20: IBC Bank record for January 2024 selected as exhibit, although each month's statement reveals the same information.
[22] See Exhibit 21
[23] See Exhibit 22

9

corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (GP CFO).[24]

- October 7, 2025:  Email from Tonya Fulghum (Lawrence's employee) confirming Mike Hummell (Berry GP) has responsibility to keep current "Axis Midstream" Texas Railroad Commission P-5 filings (such that Berry GP is financially responsible for Axis pipelines).[25]

Berry GP spent millions of dollars in support of Axis because Berry GP, for all times relevant to present, owns Axis (a matter not in dispute until this litigation).

**V.**
**PAPER TRAIL CONFIRMS RFB's OWNERSHIP OF ITS REAL PROPERTY**

Although RBP claims ownership of land titled to RFB, the deeds on file with San Patricio County absolutely refute RBP's claim.  In Texas, a corporation cannot obligate or accomplish the sale or transfer of real property by a wink, nod, or handshake – but rather a written document is required (as discussed herein).  As such, all the formal deeds on file reveal the truth that RFB owns all real property in dispute in this matter.[26]

**VI.**
**TEXAS LAW**

As noted above, the parties do not dispute the document transferring Axis from Gansevoort Investments LLC to Berry GP (2017).  However, there are two (2) separate documents purportedly signed in April 2020, that Berry GP/RFB (et al) would show are void / invalid as a matter of law.

---

[24] See Exhibit 28
[25] See Exhibit 27
[26] See Exhibit 29

Specifically, Lawrence's signature on the "Transfer of Interest and Change of Manager Agreement" ("Alleged Transfer No. 1") is – per Texas law – void at a matter of law, absent majority approval by Berry GP board of directors (and there was no such approval by Berry GP's board of directors, whatsoever). Also, Lawrence's signature on "Transfer of Interest and Change of Manager Agreement" ("Alleged Transfer No. 2") is – per Texas law – void as a matter of law, absent majority approval by RFB board of directors (and there was no such approval by RFB's board of directors, whatsoever).

Texas Business Organizations Code ("TBOC") 21.401 makes clear how a corporation such as Berry GP (and a corporation such as RFB) may act.

> "MANAGEMENT BY BOARD OF DIRECTORS.
> (a) Except as provided by Section 21.101 or
> Subchapter O, the board of directors of a
> corporation shall: (1) exercise or authorize the
> exercise of the powers of the corporation; and
> (2) direct the management of the business and
> affairs of the corporation."

TBOC 21.415 makes clear how a corporation such as Berry GP (and a corporation such as RFB) may act.

> "ACTION BY DIRECTORS. (a) The act of a majority of
> the directors present at a meeting at which a quorum is
> present at the time of the act is the act of the board of
> directors of a corporation, . . . ."

> " . . . a written consent stating the action taken and signed
> by all members of the board of directors is also an act of
> the board of directors."

TBOC 21.462 makes clear how a corporation such as Berry GP (and a corporation such as RFB) may act to convey real property interests.

> "CONVEYANCE BY CORPORATION. A corporation may

11

convey real property of the corporation when authorized
by appropriate resolution of the board of directors."

Lawrence's signatures on the documents referred to as Alleged Transfer No. 1 and Alleged Transfer No. 2, respectively, do not bind Berry GP and/or RFB, respectively, since Lawrence lacks and has always lacked authority to unilaterally act on behalf of these (Berry GP's and RFB's) board of directors. Texas law (TBOC 21.401) confirms that it is the board of directors of the corporation who must take action (vote) to "(1) exercise or authorize the exercise of the powers of the corporation; and (2) direct the management of the business and affairs of the corporation"[27] – and Lawrence's signature is not action by either Berry GP's or RFB's boards of directors; thus Alleged Transfer No. 1 and Alleged Transfer No. 2 are not binding – and are invalid and void as a matter of law. Texas law (TBOC 21.415) confirms it is the "act of a majority of the directors present at a meeting at which a quorum is present at the time of the act is the act of the board of directors of a corporation, . . . ." -- and there was no act by a majority of either (Berry GP or RFB) corporations' board of directors to approve Alleged Transfer No. 1 or Alleged Transfer No. 2; thus Alleged Transfer No. 1 and Alleged Transfer No. 2 are not binding – and are invalid and void as a matter of law. Finally, Texas law (TBOC 21.462) requires a resolution from the board of directors (Berry GP and/or RFB) to "convey real property of the corporation" – and this certainly did not occur; thus the Alleged Transfer No. 1 and Alleged Transfer No. 2 are not binding – and are invalid and void as a matter of law. Alleged Transfer No. 1 and Alleged Transfer No. 2 (both separate transactions involving two (2) separate corporations) require formal board of directors' approvals *which did not occur,* and thus Lawrence; (1) may not "exercise or authorize the exercise of the powers of the corporation . . . ;"[28] (2) must not pretend he alone (Lawrence alone) is the "act of a

---

[27] TBOC 21.401.
[28] TBOC 21.401.

12

majority of the directors present at a meeting at which a quorum is present . . . ;" and (3) must not ignore blackletter Texas law that requires a corporate resolution to sell real property interest (and no such resolution occurred at the time relevant (and none to date)). The Texas Legilature's statutory scheme, as set forth in the TBOC, clearly articulates the rule of law.

Texas judicial authority confirms the meaning and proper application of the Texas Business Organizatons Code. In *Solum Engineering Inc. v. Preis & Roy P.L.C.*,[29] Texas' Fourteenth Court of Appeals considered whether a letter signed by majority shareholder to discharge the company's ("Solum") attorney was valid. The appellate court phrased the issue as follows: "whether Strachan [majority shareholder] had authority to fire P&R [attorney] when he [Strachan] became the majority shareholder of Solum . . . ."[30] The court wrote:

> ""Under Texas law, a corporation is an entity separate
> from its shareholders. . . . [M]ere control and ownership
> of all the stock of a corporation is not a sufficient basis
> for ignoring the distinction between the shareholder and
> the corporate entity." *Grain Dealers Mut. Ins. Co. v.*
> *McKee,* 943 S.W.2d 455, 458 (Tex. 1997) (citations
> omitted). Thus, even an individual's status as sole
> shareholder does not extinguish the existence of a
> corporation as a distinct legal entity, separate and apart
> from its shareholders(s). *See id.*"[31]

> " . . . [O]nly Solum [company] had the authority to terminate
> the contract with P&R [attorney]. . . . Simply put, there is
> nothing in the letter [of termination which stated Strachan was
> "majority shareholder/owner"] indicating Strachan had the
> authority to terminate the contractual relationship between
> Solum and P&R. . . . Strachan did not provide any evidence
> that the board of directors of Solum had terminated P&R's

---

[29] No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011).
[30] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3.
[31] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4.

representation of [attorney]. *See* Tex. Bus. Org. Code Ann. section 21.410 (West 2009) ("[T]he *board of directors* of a corporation shall: (1) exercise or authorize the exercise of the powers of the corporation; and (2) direct the management of the business and affairs of the corporation." (emphasis added))). . . . [A] shareholder cannot terminate a corporation's contractual obligations. *See* Tex. Bus. Orgs. Code Ann. section 21.401." (emphasis in court's opinion).[32]

This appellate opinion is directly on point, and it clearly articulates Texas law and the meaning of TBOC 21.401. Applied to the present matter: even if Lawrence were a majority shareholder of Berry GP (which Lawrence is not, as Berry GP was then-owned 100% by LDMA Limited Partnership ("LDMA")), Lawrence cannot exercise authority on behalf of Berry GP without majority vote of Berry GP's board of directors.[33] And, even if Lawrence were a majority shareholder of RFB (which Lawrence is not – RFB is 100% owned by Berry GP), Lawrence cannot exercise authority on behalf of RFB without majority vote of Berry GP's board of directors.[34]

The Supreme Court of Texas also and otherwise recognized the meaning of TBOC 21.401. *In the Matter of the Estate of Poe*, the highest court confirms:

"Under Texas law, the business and affairs of a corporation are managed through a board of directors. TEX. BUS. ORGS. CODE SECTION 21.401(a)."[35]

---

[32] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4.

[33] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4; see also Exhibit XX (Berry GP by-laws requiring BOD majority vote to exercise authority).

[34] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4; see also Exhibit XX (RFB by-laws requiring BOD majority vote to exercise authority).

[35] *In the Matter of the Estate of Poe,* 648 S.W.3d 277, 287 (Texas Supreme Court, 2022); see also *Dunster Live LLC v. Lonestar Logos Management Company*, No. 03-22-00014-CV (Court of Appeals – Austin, 2024), at *8; *Nolana Open MRI Center Inc. v. Guillermo Pechero M.D.* (et al), No. 13-13-0052-CV (Court of Appeals – Corpus Christi, Edinburg, 2015), at *9 (footnote 2); *Martin (et al) v. Hutchinson (et al),* No. 06-24-00018 – CV, No. 06-24-00018-CV (Texarkana, 2025), at p. 8. Compare *Ritchie v. Rupe,* 443 S.W.3d 856, 893-894 (Texas 2014) ("Typically, a board of directors elected by a majority of the voting interest of the shareholders oversees the corporation, which operates through officers that report to the board. TEX. BUS. ORGS. CODE sections 3.103(b), 21.401(a). Generally, these minority shareholders [e.g., Lawrence] have no right to participate in the management of the corporation . . . ").

A shareholder (and certainly not a minority shareholder such as Lawrence) cannot "exercise or authorize the exercise of the powers of the corporation,"[36] as this is a power expressly belonging to the company's board of directors.[37] TBOC 21.415 affirms that a corporation acts by majority vote of and through its board of directors, citing TBOC sections 21.413 and 21.415: "majority of directors set by articles of incorporation or bylaws constitute quorum for transaction of business and act of majority of directors at meeting with quorum present shall be act of board of directors."[38]

The Texas Legislature has spoken. The Texas courts have heard, considered, and applied the laws of the State of Texas. Legal authority informs us that a corporation acts by and through its board of directors (or in some instances, shareholder vote), and that a single minority shareholder/ one-of-three director cannot act for Berry GP's board of directors and cannot act for RFB's board of directors. As such, Texas law informs us that Alleged Transfer No. 1 and Alleged Transfer No. 2 are documents not binding on Berry GP and not binding on RFB.

## VI.
## <u>CORPORATIONS' BY-LAWS AND TEXAS LAW</u>

Prudence dictates a review of Berry GP's bylaws, and RFB's bylaws – and both must be viewed in the context of Texas law.

> "Ordinarily, a corporation must be managed by a board

---

[36] TBOC 21.401(a).

[37] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4; see also Exhibit XX (RFB by-laws requiring BOD majority vote to exercise authority).

[37] *In the Matter of the Estate of Poe,* 648 S.W.3d 277, 287 (Texas Supreme Court, 2022); see also *Dunster Live LLC v. Lonestar Logos Management Company*, No. 03-22-00014-CV (Court of Appeals – Austin, 2024), at *8; *Nolana Open MRI Center Inc. v. Guillermo Pechero M.D.* (et al), No. 13-13-0052-CV (Court of Appeals – Corpus Christi, Edinburg, 2015), at *9 (footnote 2); *Martin (et al) v. Hutchinson (et al),* No. 06-24-00018 – CV, No. 06-24-00018-CV (Texarkana, 2025), at p. 8. Compare *Ritchie v. Rupe,* 443 S.W.3d 856, 893-894 (Texas 2014) ("Typically, a board of directors elected by a majority of the voting interest of the shareholders oversees the corporation, which operates through officers that report to the board. TEX. BUS. ORGS. CODE sections 3.103(b), 21.401(a). Generally, these minority shareholders [e.g., Lawrence] have no right to participate in the management of the corporation . . . ").

[38] *Paccar Financial Corp. v. Potter*, 239 S.W.3d 879, 884 (Court of Appeals – Dallas, 2007). Compare Curtis v. Pipeline Corporation, 370 S.W.2d 764, xxx (Court of Appeals – Eastland, 1963) (citing Delaware law, "[t]he general rule is that directors of a corporation must sit as a board in order to constitute valid corporate action. . . . In general a board of directors may exercise its power only as a body at a meeting duly assembled and conducted.").

15

of directors. TEX. BUS. ORGS. CODE § 21.401(a). The Business Organizations Code allows certain exceptions, including when the shareholders' agreement or the governing documents of a "close corporation" provide for the elimination of the board of directors in favor or one or more corporate managers. *Id.* §§ 21.101(a)(2), 21.713(2). Under these circumstances, corporations may be managed directly by shareholders. *See id.* §§ 21.101(a)(2), 21.714(b)(1), (2).[39]

Neither Berry GP's nor RFB's governing documents 'eliminate control by the respective board of directors. To the contrary, Berry GP's by-laws and RFB's by-laws require a majority vote of the board of directors to transact business.

*(Berry GP By-laws)*

Berry GP's by-laws were signed by Marvin L. Berry more than a half-century ago.[40] The original language of the Berry GP by-laws (still in today's by-laws) requires that the "property and business of the company will be managed and controlled by the board of directors . . . ."[41] Obviously, any proposed transfer of Axis (a Berry GP wholly owned affiliate into which Berry GP had $17+ Million Dollars invested) by Berry GP to another legal entity is "property and business of the company,"[42] and – as such – "managed and controlled by [the] board of directors."[43] This typical structure that 'management and control' be vested in Berry GP's board of directors is set forth in Berry GP's by-laws under the heading of "DIRECTORS" (quoted above), and then re-stated in Berry GP's by-laws under the heading "POWERS OF DIRECTORS" which sets forth that:

"[t]he board of directors shall have the management of the business of the company . . . [and] may exercise all such powers and do all such acts and things as may be exercised

---

[39] *Ritchie v. Rupe,* 443 S.W.3d 856, 910 at footnote 12 (Texas 2014).
[40] Exhibit 23 (Berry GP by-laws), at p. 12.
[41] Exhibit 23 (Berry GP by-laws), at p. 1.
[42] Exhibit 23 (Berry GP by-laws), at p. 1.
[43] Exhibit 23 (Berry GP by-laws), at p. 1.

16

> or done by the corporation . . . .[44]  A majority of the whole
> board of directors shall be necessary to constitute a quorum
> for the transaction of business at all meetings."[45]

The Berry GP by-laws – taken alone and certainly when read in concert with TBOC (especially TBOC 21.401) – demonstrate that Berry GP only acts by and through majority vote of its Berry GP board of directors (same as is contemplated by TBOC 21.401 for a corporation to "exercise or authorize the exercise of powers of the corporation"[46]).

*(RFB By-laws)*

RFB's by-laws were signed by Dennis Berry more three (3) decades ago.[47]  The original language of the RFB by-laws (still in today's by-laws) requires shareholders to act on behalf of the corporation (RFB):

> "2.07 - **Action by Shareholders:**  When a quorum is present at
> any meeting, the vote of the holders of a majority of the shares
> having voting power, present in person or represented by proxy,
> shall decide any question brought before such meeting . . . ."[48]

The RFB by-laws also allow the corporation (RFB) to act through its shareholders "without a meeting if a consent in writing, setting forth the action to be taken, shall be signed by all of the shareholders entitled to vote . . . ."[49]  As is common with many corporations, RFB's shareholders elect its board of directors[50] -- and the "business and affairs of the corporation shall be managed by its [RFB's] Board of Directors,"[51] unless the type of act is of the kind required of RFB's shareholders.[52]

---

[44] Exhibit 23 (Berry GP by-laws), at p. 1.
[45] Exhibit 23 (Berry GP by-laws), at p. 4.
[46] TBOC 21.401(a).
[47] Exhibit 24 (RFB by-laws), at p. 12.
[48] Exhibit 24 (RFB by-laws), at p. 2.
[49] Exhibit 24 (RFB by-laws), at p. 3 (section "2.09 – Action by Unanimous Written Consent").
[50] Exhibit 24 (RFB by-laws), at p. 1.
[51] Exhibit 24 (RFB by-laws), at p. 3.
[52] Exhibit 24 (RFB by-laws), at p. 3.

"At all meetings of the Board of Directors a majority of the directors shall constitute a quorum for the transaction of business, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors."[53]

This language from RFB's by-laws is emphatic; that is, "the act of a majority of the directors *present at any meeting*" is the "act of the Board of Directors." (emphasis added). Further, the RFB by-laws also allow the corporation (RFB) to take action through its directors "without a meeting, if a consent in writing setting forth the action to be taken is signed by all the members of the Board of Directors . . . ."[54] Of course, RFB's board of directors may act to authorize any of its officers to contract or execute and deliver instruments, but "[u]nless so authorized, no officer, agent, or employee [of RFB] shall have any power or authority to bind the corporation by any contract engagement, to pledge its credit, or to render it liable pecuniarily for any purpose or in any amount."[55] These many provisions of RFB's by-laws resoundingly and repeatedly insist that RFB only acts by and through majority vote of its RFB board of directors (same as contemplated by TBOC 21.401 for a corporation to "exercise or authorize the exercise of powers of the corporation"[56]).

Further review of RFB's by-laws confirms that Axis, if ever owned by RFB, was never, never transferred to LSPH or LSPE (as alleged by LSPE). Consider RFB's by-laws, at section 5.14:

"5.14 – **Execution of Instruments**. All documents, instruments, or writings of any nature shall be signed, executed, verified, acknowledged, and delivered by such officer or officers, or such agent or agents of the corporation, and in such manner as the

---

[53] Exhibit 24 (RFB by-laws), at p. 4.
[54] Exhibit 24 (RFB by-laws), at p. 5 (section "3.13 – Action by Unanimous Written Consent").
[55] Exhibit 24 (RFB by-laws), at pp. 6-7.
[56] TBOC 21.401(a).

18

Board of Directors from time to time may determine."

This provision, again, confirms that any execution of instruments for RFB require authority from RFB's board of directors.

Further review of RFB's by-laws reveals just how rogue were Lawrence's efforts. Consider RFB by-laws, at section 5.09:

> "5.09 – Duties of General Counsel. The General Counsel shall supervise the Legal Department of the corporation, shall be responsible for and direct the legal affairs of the corporation including drafting and preparation of documents and instruments, . . . and shall generally perform the duties of corporate attorney under the direction of the President and the Board of Directors."

This provision, again, confirms that any execution of instruments for RFB require participation of RFB's General Counsel and President, in addition to authority from RFB's board of directors.

The laws of the State of Texas are the rules for how Texas corporations shall "exercise or authorize the exercise of powers of the corporation."[57] To the extent the laws of the State of Texas allow, the governing documents (in the case of Berry GP and RFB, these companies' by-laws) establish how each may 'exercise or authorize the exercise of powers of the corporation.' As such, the laws of the State of Texas along-side Berry GP's bylaws (and to the extent indicated, along-side RFB's bylaws) are properly contemplated.

## VII.
## ARGUMENT

With a comprehensive discussion of Texas law having been accomplished, the application of facts to Texas law assures only one (1) possible outcome. Berry GP owns Axis Midstream Holdings LLC ("Axis"). And an understanding of RFB's by-laws reveals that RFB is the perfect

---

[57] TBOC 21.401(a).

backstop that safeguards Berry GP's ownership of Axis. Further, RFB owns all of its real property held in the name of RFB.

There was no meeting of Berry GP's board of directors that in any way, shape, or form authorized Lawrence (or anyone for that matter) to transfer Berry GP's multi-million-dollar asset (Axis) to anyone (including RFB). There was no unanimous or even majority resolution/written consent from Berry GP (its board of directors) to exercise or authorize the exercise of any Berry GP transfer of Axis to other entity or person.

Lawrence has provided sworn testimony to make the point:

Q. . . . [Y]ou recognize corporate formalities; right?

A. Yes, sir. (Lawrence) . . .

Q. You are familiar with the process of a corporation like Berry GP signing
 resolutions?

A. Yes, sir.

Q. And you know that that's how a company acts. Like Berry GP is through its
 Board of Directors by one way is by resolution; right?

A. Yes, sir.

Q. And the other way is by unanimous written consent; right?

A. Yes, sir.

Q. You're familiar with the Berry GP bylaws, for example, that require a majority
 vote of the directors to act; correct?

A. Yes, sir, I believe so. . . .

Q. . . . Redfish Bay Terminal Inc. also requires a majority of board approval in

 order for you to sign for them; correct?

A. I don't have the bylaws in front of me, but I would --

Q. Pardon?

A. I don't have the bylaws in front of me or the organization documents,
 but I would assume, yes.

20

Q. Okay. That's your belief, fair enough?

A. Yes, sir.

Q. And that's been the practice over the years; right? With both Redfish Bay Terminal and Berry GP; right?

A. Yes, sir.

Q. And you're not claiming that there was any board meeting that gave you a resolution, or unanimous consent, or any majority vote with regard to the transfer of Axis; correct?

A. When?

Q. At any time.

A. It's mine, originally. . . . [referring to pre-2017 when Lawrence held Axis]

Q. You've testified that they [Marty and Dennis] did not actively oppose, or come out and say something to you; right?

A. They were fully aware of all of this.

Q. Okay. I understand that's your testimony. I think we agree though there was never a board meeting with regard to the transfer of Axis; right?

A. The predicate of conduct in our company would say, yes, this is the way we've always done it, so.

Q. There was never a board meeting; right?

A. Not specifically, that I recall.

Q. Okay. Now -- and same thing is true for Redfish Bay Terminal; right? There was no board meeting at Redfish Bay Terminal with regard to any interest of Axis?

A. I don't recall any of the board meetings for Redfish Bay, honestly, except for the last one.

Q. Okay. You don't recall any?

A. There you go.

Q. Okay. So we know there weren't any that you recall; right? So that's what you just said?

A. Yes, sir.

Q. Okay. For Redfish Bay Terminal Inc.?

A. Yes, sir. [58]

Despite Lawrence's crawfishing, the truth is quite clear. Berry GP published no agenda item to consider and approve selling or otherwise transferring its multi-million-dollar asset (Axis); held no meeting to consider and approve selling or otherwise transferring Axis; no director cast a vote in favor of selling or transferring Axis; no director cast a vote in support of a resolution to sell or transfer Axis; no director cast a vote to appoint Lawrence as agent to sell or transfer Axis; and no director signed a document that is a consent or unanimous consent to sell or transfer Axis. No such Berry GP shareholder meeting ever occurred, and no such Berry GP board of directors meeting ever occurred. None of these things occurred, and so it (the transfer of Axis to another) did not occur. Lawrence's argument that his brothers "were fully aware of all of this" (factually untrue and legally insignificant) is not an act by majority vote of Berry GP's board of directors. Therefore, the Alleged Transfer No. 1 document is no transfer at all (it completely lacks all authority), and thus Axis is still owned by Berry GP.

Moreover, and if someone were to construe the facts in support of Lawrence's unauthorized, attempted transfer of Axis from Berry GP to RFB, then RFB's by-laws slam shut the door on any possible transfer of Axis from RFB to LSPH. Candidly, the language in RFB's by-laws relating to how RFB acts through its board of directors is harsh. At all times relevant, there were four (4) directors of RFB: Marty, Dennis, Lawrence, and Mrs. Berry. For RFB, all evidence confirms there has never been a RFB agenda item to sell or transfer Axis to any entity (or transfer RFB real property to RBP); never been a RFB meeting to consider selling or transferring Axis to any entity (or meeting to transfer RFB real property to RBP); and no RFB director has ever voted to sell or transfer Axis, and no RFB director has ever voted to sell or transfer RFB real property to

---

[58] See Exhibit 25 (transcript of Lawrence Berry testimony on January 29, 2025), at pp. 264-269.

22

RBP – or voted to pass a resolution supporting sell or transfer of Axis (or the real property in dispute); or voted to appoint Lawrence as agent to sell or transfer Axis (or the real property in dispute); and no RFB director has ever signed a written consent or unanimous written consent document to allow for the sell or transfer of Axis, or the sale or transfer of the RFB real property in dispute. No such RFB shareholder meeting ever occurred, and no such RFB board of directors meeting ever occurred. It simply never happened.

With these facts known to be true, Axis is owned by Berry GP (alternatively, RFB). TBOC 21.401, titled "Management by Board of Directors," informs us that Berry GP and RFB corporations "shall exercise or authorize the exercise of the powers of the corporation" (not a shareholder (which Lawrence is not), and not a rogue director (which Lawrence was)). TBOC makes clear how a corporation such as Berry GP and RFB act: "The ***act of a majority*** of the directors ***present at a meeting*** at which a ***quorum is present at the time*** of the act is the act of the board of directors of a corporation, . . . ."[59] No "Management by Board of Directors" (TBOC 21.401) ever authorized the transfer of Axis to any other entity (or transfer of RFB real property to RBP); and there was no "act of a majority" who were "present at a [Berry GP or RFB] meeting" to ever authorize the transfer of Axis to any other entity (or transfer of RFB real property to RBP). Moreover, TBOC 21.462 absolutely requires that a corporation such as Berry GP (and a corporation such as RFB) may act to convey real property interests "when authorized by appropriate resolution of the board of directors" – and there is no resolution (period).

And the consequence of Lawrence proceeding without authorization is unequivocal. The words and phrases in the *Solum* opinion fit the facts of this Berry dispute like a glove. The

---

[59] TBOC 21.415 (emphasis added).

following quote drops the facts of this Berry management dispute into the appellate court opinion

previously quoted, as follows:

> ""Under Texas law, [Berry GP and RFB are] entit[ies] separate from its shareholders [director]. . . . [Lawrence's] mere control and ownership of ⊞ stock of [Becon and director status] is not a sufficient basis for ignoring the distinction between the shareholder [or director] and the corporate entity [Berry GP and/or RFB]." *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex. 1997) (citations omitted). Thus, even an individual's [Lawrence's] status as ⊞ shareholder [and director] does not extinguish the existence [Berry GP and RFB] as distinct legal entit[ies], separate and apart from its [Lawrence]. *See id.*"[60]

> " . . . [O]nly [Berry GP or RFB] had the authority to [transfer Axis]. . . . Simply put, there is nothing in the [Alleged Transfer No. 1 or Alleged Transfer No. 2 documents] indicating [Lawrence] had the authority to [transfer Axis to a third-party entity]. . . . *See* Tex. Bus. Org. Code Ann. section 21.401 (West 2009) ("[T]he *board of directors* of a corporation shall: (1) exercise or authorize the exercise of the powers of the corporation; and (2) direct the management of the business and affairs of the corporation." (emphasis added)).

> " . . . [A] shareholder [director] cannot [transfer a corporate asset]. *See* Tex. Bus. Orgs. Code Ann. section 21.401."[61] . . .

> "[Lawrence] failed to establish that he had authority to [transfer Axis to a third-party company], . . . we affirm the trial court's judgment.

This Court's Order Granting Summary Judgement will be affirmed on appeal (if LSPE so decides

to appeal). This Court's Order in favor of RFB's continued real property interests will also be

---

[60] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4.

[61] *Solum Engineering Inc. v. Preis & Roy P.L.C,* No. 14-10-01054-CV (Court of Appeals – Houston [14th District] 2011), at *3-4.

affirmed on appeal (if RBP so decides to appeal). To be blunt, all Texas judicial authority makes clear that a shareholder is not the corporation, a director is not the corporation, and a corporation acts – and only acts – by and through its board of directors (or in some instances, by and through its shareholders), at a formally noticed meeting. Absent appropriate action by Berry GP's board of directors, Berry GP still owns Axis. If not Berry GP, then clearly no action was taken by RFB's board of directors or shareholders, and so RFB would be the owner of Axis. And as no action was taken by RFB board of directors to sell or transfer any of the real property allegedly transferred to RBP, no such transfer of interest occurred (and RFB still owns its land). In all scenarios, LSPH has never been the owner of Axis, and so LSPE is not the owner of Axis; and RBP is not owner of RFB's real property.

## VI.
## <u>LAWRENCE GONE ROGUE</u>

Until late 2024 (for a period of seven (7) years during which time upward of $17 Million were invested by Berry GP in its wholly owned company/asset (Axis)), Berry GP had quiet enjoyment of Axis.[62] In August 2024, Lawrence broke the news that LSPE claimed to own Axis,[63] and RBP claimed to own RFB's real property. Lawrence's assertion about Axis was only somewhat disturbing for the period of time that Berry GP (et al) believed LSP to be a wholly owned (100%) Berry GP affiliate. Berry GP (et al) has since learned that LSPE claims to own Axis, and that LSPE is not a Berry-related company. This news is no less than a thermal nuclear explosion in the face of Berry GP's investment of $17+ Million Dollars. How could this happen?

The answer is simple: Berry GP (et al) has recently learned of Lawrence's insatiable proclivity to sign his name to documents – irrespective of whether Lawrence has or does not have

---

[62] See footnotes nos. 8-25.
[63] See Exhibit 30 (August 6, 2024 Transcript)

legal authority to do so. To know this, one need look no farther than the series of documents Lawrence signed to attempt transfer of Axis from Berry GP to LSPE.[64] Document after document after document after document confirm that Lawrence is willing to attempt transfers of millions of dollars of assets to-from-to-from-to-from-to-from (and so on), and through shell companies to mask his malfeasance.[65] With no document even suggesting Lawrence had authority to act (no power of attorney, no agency agreement, no company agenda item, no company resolution, no company written consent, etc.), the series of documents signed by Lawrence tell the story:

- Lawrence signed to attempt transfer of Axis from Berry GP to RFB[66] – clearly without authorization from a majority vote of Berry GP's board of directors ("BOD");[67] and

- Lawrence signed to attempt transfer of Axis from RFB to Lone Star Ports Holdings LLC ("LSPH")[68] – clearly without authorization from a majority vote of RFB's BOD.[69]

The two (2) above-referenced attempted transactions are the focus of this Motion and are void as a matter of law. Additional documents confirm Lawrence's addiction to put his ink-on-paper pretending to be king.

- Lawrence signed to attempt receipt of Axis into LSPH – this document shows Lawrence signing to purportedly convey Axis and Lawrence signing to purportedly accept receipt of Axis;[70]

---

[64] Exhibit 7 and Exhibit 8. Compare Exhibit 32.
[65] Exhibit 7, Exhibit 8, and Exhibit 32.
[66] Exhibit 7 (sometimes referred to as "Lawrence Document 1")
[67] Exhibit 30 Affidavit of Mike Hummell
[68] Exhibit 8 (sometimes referred to as "Lawrence Document 2").
[69] Exhibit 30 Affidavit of Mike Hummell
[70] Exhibit 8.

- Lawrence signed to attempt transfer of Axis from LSPH to Lone Star Ports Enterprises ("LSPE") – this is Lawrence signing to purportedly convey Axis and Lawrence signing to purportedly accept receipt of Axis;[71]

- Lawrence signed to attempt transfer of Axis from LSPV to Lone Star Ports Enterprises LLC ("LSPE") – this is Lawrence signing to purportedly convey Axis and Lawrence signing to purportedly accept receipt of Axis;[72]

- to further the attempted coup (wrongful taking of control of Axis), Lawrence also signed LSPH's Operating Agreement ("OA").  Specifically, Lawrence signed LSPH's OA for RFB without legal authority (no BOD approval); signed LSPH's OA for Arcturas Investments LLC purportedly for Dennis (without Dennis' knowledge or permission); signed LSPH's OA for Sirius Investments LLC purportedly for Marty (without Marty's knowledge or permission); and no one really knows what else Lawrence has signed.

This collection of documents is emblematic of Lawrence's complete lack of regard for corporate legal formalities (not to mention family).  Considering these several documents only, Lawrence reveals himself by signing whenever Lawrence sees a 'dotted line;' that is, Lawrence is gone rogue.

**VII.**
**CONCLUSION**

Berry GP, and its related companies, has invested more than $17 million into Axis.  Why?  Because Berry GP owns Axis.  No one can produce an agenda for Berry GP and RFB proposing sale or transfer of Axis (because it did not happen).  No one can produce Meeting Minutes from a

---

[71] Exhibit 33
[72] Exhibit 34

Berry GP or RFB formally noticed meeting showing approval of a sale or transfer of Axis (because it did not happen). No one can produce a signed Resolution or Written Consent supporting the sale or transfer of Axis (because it did not happen). Therefore, no sale or transfer of Axis occurred (because it did not happen); and thus Axis is owned by Berry GP (back-stopped by RFB).

WHEREFORE, PREMISES CONSIDERED, Berry GP Inc. and Redfish Bay Terminal Inc. pray that this motion be in all things granted and sustained, and that this Honorable Court rule and declare that Axis Midstream Holdings LLC ("Axis") is wholly owned by Berry GP Inc., or alternatively Redfish Bay Terminal LLC, and for such other and further relief to which these movants may show themselves justly entitled.

Respectfully submitted,

LAW OFFICE OF DOUGLAS A. ALLISON

By: */s/ Douglas Allison*
  Douglas Allison
  State Bar No. 01083500
  doug@dallisonlaw.com
  403 N. Tancahua Street
  Corpus Christi, Texas 78401
  Telephone: (361) 888-6002

  ATTORNEY FOR BERRY GP, INC.,
  and REDFISH BAY TERMINALS INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27ᵗʰ day of October 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

Van Huseman
vhuseman@husemanlawfirm.com
John Swallow
jswallow@husemanlawfirm.com
Jacob Hubert
jhubert@husemanlawfirm.com
HUSEMAN LAW FIRM, PLLC
500 N. Water Street, Suite 1100
Corpus Christi, TX 78401
Tel: (361) 883-3563

*Counsel for Michael Hummell*

Sarah Patel Pacheco
efile-spacheco@jw.com
Austin K. Yancy
ayancy@jw.com
Jackson Walker, LLP
1401 McKinney St., Suite 1900
Houston, Texas 77010
T: (713) 752-4200

Matthew J. Swantner
mswantner@jw.com
Jackson Walker LLP
1900 Broadway, Suite 1200
San Antonio, Texas 78215
T: (210) 978-7700

*Counsel for Defendant and Executor Counter-Plaintiff
Bonnie Berry*

Santos Vargas
svargas@dslawpc.com
Sarah Santos
ssantos@dslawpc.com
Joshua J. Caldwell
jcaldwell@dslawpc.com
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas 78204
Telephone: (210) 853-5882

Robert J. Garza
robertjgonzalez@gmail.com
Gonzalez & Gonzalez
5722 Wooldridge Road
Corpus Christi, Texas 78414
T: (361) 993-3333

*Counsel for Plaintiff Lawrence Berry, Individually and as Trustee*
*Allen Lawrence Berry Trust*

Mary Kate Raffetto
mkraffetto@beckredden.com
M. Jake McClellan
jmcclellan@beckredden.com
Madeline E. Gay
E-mail: mgay@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
T: (713) 951-3700

Jorge C. Rangel
jorge.c.rangel@rangellaw.com
THE RANGEL LAW FIRM, P.C.
555 N. Carancahua, Ste. 1500
Corpus Christi, Texas 78401

*Counsel for Third-Party Defendants*
*Lone Star Ports Enterprises, LLC*
*Redfish Bay Properties, LLC, and*
*Harbor Island Properties, LLC*

James W. Christian
jchristian@christianattarlaw.com
Casidy R. Newcomer
cnewcomer@christianattarlaw.com
CHRISTIAN ATTAR
1177 West Loop South, Suite 1700
Houston, Texas 77027
T: (713) 659-7617

*Counsel for Defendants Corporate Strategies LLC*
*Dba Corporate Strategies Merchant Bankers*
*And Timothy Connolly, Individually*

Gabi S. Canales
gabilaw14@gmail.com
Gabi Canales Law Office
5262 South Staples Street, Suite 100
Corpus Christi, TX 78411
T: (361) 887-4700

Butch Boyd
butchboyd@butchboydlawfirm.com
BUTCH BOYD LAW FIRM
2905 Sackett Street
Houston, Texas 77098
T: (713) 589-8477

 */s/ Douglas Allison*
Douglas Allison

**CAUSE NO. 2024DCV-0045-C**

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC. | § § § § § § § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § § | |
| BERRY GP, INC.; LDMA LIMITEDPARTNERSHIP; and BECON, INC.; | § § § § | NUECES COUNTY, TEXAS |
| *Nominal Plaintiff,* | § § § | |
| v. | § § § | |
| MARTY BERRY, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LP | § § § § § § | |
| *Defendants.* | § | 94TH JUDICIAL DISTRICT |

---

## ADVISORY TO COURT

---

Now Come Marty Berry, Berry GP Inc. ("Berry GP"), Berry Operating Company LLC, Berry Contracting LP, Redfish Bay Terminals Inc. ("RFB"), Axis Midstream Holdings LLC ("Axis"), and Canada Project Holdings Inc. ("CPH"), and file this Advisory to Court:

1. Lawrence Berry, Lone Star Ports Enterprises LLC, Redfish Bay Properties LLC, and Harbor Island Properties LLC ("Opposers"), all parties herein, opposed this Court's

1

jurisdiction to act and decide ownership of certain Berry GP, Redfish Bay Terminals Inc., and Canada Project Holdings Inc. owned assets.

2. The Honorable Judge Robert Galvan denied the Opposers' plea.

3. Opposers filed a petition for writ of mandamus to the Thirteenth Court of Appeals.

4. The Thirteenth Court of Appeals has denied Opposers' mandamus; thereby giving complete approval to this court's exercise of jurisdiction to decide: (1) Berry GP's / RFB's ownership of Axis; (2) RFB's ownership of its real property interests; and (3) CPH's ownership in a leasehold estate on Harbor Island. See Exhibit A.

5. These ownership issues may be decided as a matter of law, and thus appropriate motions for summary judgment/declarations are forthcoming.

Respectfully submitted,

LAW OFFICE OF DOUGLAS A. ALLISON

By: */s/ Douglas Allison*
Douglas Allison
State Bar No. 01083500
doug@dallisonlaw.com
403 N. Tancahua Street
Corpus Christi, Texas 78401
Telephone: (361) 888-6002

LAW OFFICE OF AUDREY
MULLERT VICKNAIR

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
State Bar No. 14650500
avicknair@vicknairlaw.com
555 N. Carancahua St., Ste. 1400
Corpus Christi, Texas 78401
Telephone: (361) 884-5400

2

ATTORNEYS FOR BERRY GP, INC.,
and REDFISH BAY TERMINALS INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

Van Huseman
vhuseman@husemanlawfirm.com
John Swallow
jswallow@husemanlawfirm.com
Jacob Hubert
jhubert@husemanlawfirm.com
HUSEMAN LAW FIRM, PLLC
500 N. Water Street, Suite 1100
Corpus Christi, TX 78401
Tel: (361) 883-3563

*Counsel for Michael Hummell*

Sarah Patel Pacheco
efile-spacheco@jw.com
Austin K. Yancy
ayancy@jw.com
Jackson Walker, LLP
1401 McKinney St., Suite 1900
Houston, Texas 77010
T: (713) 752-4200

Matthew J. Swantner
mswantner@jw.com
Jackson Walker LLP
1900 Broadway, Suite 1200
San Antonio, Texas 78215
T: (210) 978-7700

*Counsel for Defendant and Executor Counter-Plaintiff*
*Bonnie Berry*

Santos Vargas
svargas@dslawpc.com
Sarah Santos
ssantos@dslawpc.com
Joshua J. Caldwell
jcaldwell@dslawpc.com
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas 78204
Telephone: (210) 853-5882

Robert J. Garza
robertjgonzalez@gmail.com
Gonzalez & Gonzalez
5722 Wooldridge Road
Corpus Christi, Texas 78414
T: (361) 993-3333

*Counsel for Plaintiff Lawrence Berry, Individually and as Trustee*
*Allen Lawrence Berry Trust*

Mary Kate Raffetto
mkraffetto@beckredden.com
M. Jake McClellan
jmcclellan@beckredden.com
Madeline E. Gay
E-mail: mgay@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
T: (713) 951-3700

Jorge C. Rangel
jorge.c.rangel@rangellaw.com
THE RANGEL LAW FIRM, P.C.
555 N. Carancahua, Ste. 1500
Corpus Christi, Texas 78401

*Counsel for Third-Party Defendants*
*Lone Star Ports Enterprises, LLC*
*Redfish Bay Properties, LLC, and*
*Harbor Island Properties, LLC*

James W. Christian
jchristian@christianattarlaw.com
Casidy R. Newcomer
cnewcomer@christianattarlaw.com
CHRISTIAN ATTAR
1177 West Loop South, Suite 1700
Houston, Texas 77027
T: (713) 659-7617

*Counsel for Defendants Corporate Strategies LLC*
*Dba Corporate Strategies Merchant Bankers*
*And Timothy Connolly, Individually*

Gabi S. Canales
gabilaw14@gmail.com
Gabi Canales Law Office
5262 South Staples Street, Suite 100
Corpus Christi, TX 78411
T: (361) 887-4700

Butch Boyd
butchboyd@butchboydlawfirm.com
BUTCH BOYD LAW FIRM
2905 Sackett Street
Houston, Texas 77098
T: (713) 589-8477

 */s/ Douglas Allison*
Douglas Allison



**NUMBER 13-25-00298-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

**IN RE LAWRENCE BERRY, INDIVIDUALLY
AND AS TRUSTEE OF THE ALLEN LAWRENCE BERRY TRUST,
DIRECTLY AND DERIVATIVELY ON BEHALF OF BECON, INC., LDMA
LIMITED PARTNERSHIP, AND BERRY GP, INC.**

**ON PETITION FOR WRIT OF MANDAMUS**

**MEMORANDUM OPINION**

**Before Chief Justice Tijerina and Justices West and Cron
Memorandum Opinion by Justice West[1]**

By petition for writ of mandamus, relators Lawrence Berry, individually and as

trustee of the Allen Lawrence Berry Trust, directly and derivatively on behalf of Becon,

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

Inc., LDMA Limited Partnership, and Berry GP, Inc. assert that the trial court[2] abused its discretion by failing to grant a plea in abatement based on dominant jurisdiction.

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). Ordinarily, the relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

The Court, having examined and fully considered the petition for writ of mandamus, the responses filed by the real parties in interest, the reply, and the applicable law, is of the opinion that relators have not met their burden to obtain relief. Accordingly, we lift the stay previously imposed in this case, and we deny the petition for writ of mandamus.

JON WEST
Justice

Delivered and filed on the
22nd day of October, 2025.

---

[2] This original proceeding arises from trial court cause number 2024DCV-0045-C in the 94th District Court of Nueces County, Texas, and the respondent is the Honorable Bobby Galvan. *See id.* R. 52.2. However, the real parties in interest, Redfish Bay Terminals, Inc., Canada Project Holdings Inc., Axis Midstream Holdings, LLC, and Berry GP, Inc., have filed an advisory with the Court stating that Judge Galvan has recused himself from further proceedings, and the case has been reassigned to the Honorable Mark Woerner. When a trial judge recuses after an original proceeding has been filed, as here, "appellate courts should either deny the petition for mandamus . . . or abate the proceedings pending consideration of the challenged order by the new trial judge." *In re Blevins*, 480 S.W.3d 542, 544 (Tex. 2013) (orig. proceeding) (per curiam). "Because mandamus is a discretionary writ, the appellate court involved should exercise discretion to determine which of the two approaches affords the better and more efficient manner of resolving the dispute." *Id.* In our discretion, and having fully reviewed the pleadings and record, we conclude that abatement is unnecessary. *See id.*

2



# NUMBER 13-25-00276-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE LONE STAR PORTS ENTERPRISES, LLC,
## REDFISH BAY PROPERTIES, LLC, AND
## HARBOR ISLAND PROPERTIES, LLC

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron
Memorandum Opinion by Justice West[1]**

By petition for writ of mandamus, relators Lone Star Ports Enterprises, LLC,

Redfish Bay Properties, LLC, and Harbor Island Properties, LLC assert that the trial court[2]

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number 2024DCV-0045-C in the 94th District Court of Nueces County, Texas, and the respondent is the Honorable Bobby Galvan. *See id.* R. 52.2. However, the real parties in interest, Redfish Bay Terminals, Inc., Canada Project Holdings Inc., Axis

abused its discretion by failing (1) to strike petitions in intervention, and (2) to grant a plea in abatement based on dominant jurisdiction.

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). Ordinarily, the relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

The Court, having examined and fully considered the petition for writ of mandamus, the responses filed by the real parties in interest, the reply, and the applicable law, is of the opinion that relators have not met their burden to obtain relief. Accordingly, we lift the stay previously imposed in this case, and we deny the petition for writ of mandamus.

JON WEST
Justice

Delivered and filed on the
22nd day of October, 2025.

---

Midstream Holdings, LLC, and Berry GP, Inc., have filed an advisory with the Court stating that Judge Galvan has recused himself from further proceedings, and the case has been reassigned to the Honorable Mark Woerner. When a trial judge recuses after an original proceeding has been filed, as here, "appellate courts should either deny the petition for mandamus . . . or abate the proceedings pending consideration of the challenged order by the new trial judge." *In re Blevins*, 480 S.W.3d 542, 544 (Tex. 2013) (orig. proceeding) (per curiam). "Because mandamus is a discretionary writ, the appellate court involved should exercise discretion to determine which of the two approaches affords the better and more efficient manner of resolving the dispute." *Id.* In our discretion, and having fully reviewed the pleadings and record, we conclude that abatement is unnecessary. *See id.*

# Tab D

## November 25, 2025 Plaintiffs' Application for Show Cause Order, Motion Sanctions, and Brief in Support

E-filed in the Office of the Clerk
for the Business Court of Texas
11/25/2025 7:39 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

THE BUSINESS COURT OF TEXAS
ELEVENTH DIVISION

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § § | CAUSE NO. 24-BC11A-0025 |
| | § § | |
| ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY | § § § § § | |
| | § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' APPLICATION FOR SHOW CAUSE ORDER, MOTION FOR SANCTIONS, AND BRIEF IN SUPPORT

Plaintiffs Albert Theodore Powers ("Powers") and Allied Ports LLC ("Allied Ports" and, together with Powers, "Plaintiffs") file this Application for Show Cause Order, Motion for Sanctions, and Brief in Support to hold Defendants Marvin Glenn Berry ("Marty Berry") and Bonnie Berry, Individually ("Bonnie Berry" and, together with Marty Berry and for purposes of this Motion only, "Defendants") in contempt for violating this Court's April 2, 2025 Order Granting Temporary Injunction (the "TI Order"), and respectfully show the Court as follows:

### I.    INTRODUCTION AND RELEVANT FACTS

1.    This lawsuit was filed in response to certain wrongful actions taken by Defendants to seek to terminate and assume Plaintiffs' ownership and management rights in Axis Midstream Holdings, LLC, a Texas limited liability company ("Axis"), and the Lone Star Ports Project ("Project"), without authority.[1]

---

[1] *See generally* Plaintiffs' Seventh Amended Petition filed October 31, 2025 (the "Petition").

1

ACTIVE 716638471v10

**A.     November 2024: Axis Secretary of State Filings**

2.      On or about November 22, 2024, Plaintiff Powers caused a Certificate of Amendment for Axis to be filed with the Texas Secretary of State ("November 2024 Axis Secretary of State Filing").[2]

3.      As set forth in the November 2024 Axis Secretary of State Filing, Axis' registered agent was Gretchen Reed, and her business address and registered office address was 5005 Riverway Drive, Suite 440, Houston, Texas 77056.  Plaintiffs' Dec., Ex. A-1.

4.      Also as set forth in the November 2024 Axis Secretary of State Filing, Axis's certificate of formation was amended as follows: (i) Axis's Sole Member and Manager was Lone Star Ports Enterprises, LLC, with an address of 16192 Coastal Highway, Lewes, Delaware 19958; (ii) Axis's President was A.L. Berry, with an address of 5005 Riverway Drive, Suite 440, Houston, Texas 77056; and (iii) the following individuals were removed as officers of Axis: D.W. Berry, Vice President; Defendant Marty Berry, Vice President; Jim Klein, Vice President; Crissy Hinojosa, Secretary; Mike Hummell, Vice President and General Counsel; and Robert Powers, Vice President.  Plaintiffs' Dec., Ex. A-1.  This harmonized Axis's Secretary of State Filings with its Operating Agreement, which identified the "Manager" as Lone Star Ports Enterprises, LLC.

5.      As set forth therein, the November 2024 Axis Secretary of State Filing became effective when the document was filed with the Texas Secretary of State, or November 22, 2024. Plaintiffs' Dec., Ex. A-1.

**B.     December 2024: Defendants, Without Authority, Purported to Change Axis' Management Structure and Officers**

---

[2] A true and correct copy of the November 22, 2024 Certificate of Amendment is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-1.

2

6. In their respective November 6, 2025 filings with this Court, counsel for Defendants submitted copies of what purport to be minutes of two meetings of Axis that purportedly were held on December 12, 2024. Specifically, these meeting minutes are titled "Axis Midstream Holdings, LLC Minutes of Special Called Directors Meeting by and through the Board of Directors for Sole Member Berry GP Inc." dated December 12, 2024, held at 4:20 p.m. and "Axis Midstream Holdings, LLC Minutes of Special Called Directors Meeting by and through the Board of Directors for Sole Member Berry GP Inc." also dated December 12, 2024, held at 4:50 p.m.[3]

7. According to Texas Secretary of State filings, as of at least May 14, 2025, Defendants Marty Berry and Bonnie Berry, in addition to Crissy Hinojosa and Mike Hummell, are directors sitting on the Board of Directors for Berry GP, Inc.[4]

8. As set forth in the referenced exhibits to Defendants' November 6, 2025 filings noted above (i) as Directors of Berry GP Inc., which they described as "the Sole Member of Axis," Defendants Marty Berry and Bonnie Berry purported to call a special meeting of Axis at 4:20 p.m. on December 12, 2024; (ii) Defendants Marty Berry and Bonnie Berry attended that purported special meeting; (iii) at that purported special meeting, Defendant Marty Berry made a motion to remove Lawrence Berry as Manager of Axis and appoint Defendants Marty Berry and Bonnie Berry as Managers of Axis; (iv) Defendant Marty Berry signed and certified as correct these changes; (v) as Directors of Berry GP Inc., again described as "the Sole Member of Axis," Defendants Marty Berry and Bonnie Berry next called a purported special meeting of Axis at 4:50

---

[3] *See* November 6, 2025 Letter filed by Jackson Walker LLP as counsel for Defendant Bonnie Berry, Exs. B and C thereto; November 6, 2025 letter filed by Henke & Williams as counsel for Defendant Marty Berry, Exs. B and C thereto (together, "Defendants' November 6 Filings").

[4] A copy of the Restated Certificate of Formation with New Amendments of Berry GP, Inc. filed on May 14, 2025 is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-2.

ACTIVE 716638471v10

p.m. on December 12, 2024; (vi) Defendants Marty Berry and Bonnie Berry attended that purported special meeting; (vii) Bonnie Berry made a motion to remove Lawrence Berry as an Officer (President) of Axis; (viii) Defendant Marty Berry made a motion to appoint Bonnie Berry as an Officer (Vice President) of Axis; (ix) Defendant Bonnie Berry made a motion to appoint Craig Crawford as an Officer (President) of Axis; (x) the officers of Axis were listed to include, among others, Defendants Marty Berry and Bonnie Berry each as Vice President; and (xi) Defendant Marty Berry signed and certified as correct these changes.[5]

9.  At the time of the two purported special meetings of Axis called by Defendants Marty Berry and Bonnie Berry on December 12, 2024, Berry GP Inc. was not "the Sole Member of Axis." Instead, at that time, Lone Star Ports Enterprises, LLC was the Sole Member of Axis, as evidenced by the November 2024 Axis Secretary of State Filing and Axis's Operating Agreement. Plaintiffs and Lone Star Ports Enterprises, LLC were not provided notice of the two purported special meetings of Axis on December 12, 2024.

## C. April 2025: TI Order Issued

10.  On April 2, 2025, this Court entered the TI Order for the express purpose of preserving the status quo.

11.  The TI Order ordered that "Defendants, their employees, agents, representatives, and any others acting on their behalf or in active concert with them" were enjoined from "taking any of the following actions unless expressly permitted by this Court to do so":

A. Holding any meetings or taking any action for or on behalf of Axis unless called

---

[5] *See* Defendants' November 6 Filings, Exs. B and C thereto. Notably, these minutes are dated **just days** after the expiration of an extended Temporary Restraining Order that would have enjoined Defendants from this very conduct. *See* October 31, 2024 Temporary Restraining Order and November 26, 2024 Unopposed Order Extending Temporary Restraining Order filed in this matter. As the Court may recall, Defendants refused to agree to a further extension of the Temporary Restraining Order, even though their counsel's unavailability was a contributing factor to a delay in scheduling the temporary injunction hearing, and notwithstanding the Court's admonitions to the Parties to attempt to agree in light of such delay.

by or approved by the Manager Lone Star Ports Enterprises, LLC;

* * *

C. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity;

D. Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity; and

E. Taking any action that would impact or affect Powers' or Allied Ports, LLC's ownership interest in the Project that is the subject of this lawsuit or in any of the following entities: Lone Star Ports Holdings, LLC, Lone Star Ports Ventures, LLC, Lone Star Ports Enterprises, LLC, Midway Junction Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, Lone Star Ports, LLC and/or Axis, except as provided in the governing operating agreement for the respective entity.[6]

**D.** **Despite Request for Same, Defendants Fail to Produce the December 2024 Axis Minutes Attached to Defendants' November 6 Filings**

12.     To ensure they would be apprised of the very conduct memorialized in and attached to Defendants' November 6, 2025 Filings, Plaintiffs served Defendants Marty Berry and Bonnie Berry with discovery requests, to which Defendants Marvin Glenn Berry and Bonnie Berry responded on or about May 16, 2025, May 28, 2025, and August 28, 2025.[7]

---

[6] April 2, 2025 Order Granting Temporary Injunction.

[7] True and correct copies of (i) Defendants Marvin Glenn Berry and Bonnie Berry's Responses and/or Objections to Plaintiffs' First Request for Production served on or about May 16, 2025; (ii) Defendants Marvin Glenn Berry and Bonnie Berry's First Supplemental Responses to Plaintiffs' First Request for Production served on or about May 28, 2025, and (iii) Bonnie Berry's First Amended Responses to Plaintiffs' First Request for Production served on or about August 28, 2025 are attached Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-3.

13.     Included in those discovery requests for documents were requests for all "minutes, transcriptions, documents, and communications related to any meeting held by Marty and Bonnie for any of the following entities: . . . Axis Midstream Holdings, LLC." Ex. A-3, Request for Production No. 13 thereto.

14.     At no time did Defendants Marty Berry or Bonnie Berry produce the two December 12, 2024 purported Axis meeting minutes in response to Plaintiffs' requests for production.

**E.     October 2025: Defendants, Without Authority and in Violation of the TI Order, Change Axis' Officers and File Certificates of Amendment**

15.     In their respective November 6, 2025 filings with this Court, counsel for Defendants Marty and Bonnie Berry also submitted copies of what purport to be minutes for an "Axis Midstream Holdings LLC Special Meeting of Managers" that purported was held on October 14, 2025.[8]

16.     According to these purported minutes, Defendants Marty Berry and Bonnie Berry held a special meeting of managers for Axis. Defendant Marty Berry presided as Chairman and Defendant Bonnie Berry served as Secretary of the purported meeting and "Marty Berry said the purpose of the meeting was to discuss a change in Officers of Axis Midstream Holdings, LLC." Pursuant thereto, Defendants Marty Berry and Bonnie Berry (i) named Todd Griggs as Vice President, Treasurer and CFO; (ii) accepted the resignation of James Klein as Vice President, Treasurer, and CFO; and (iii) "to clarify these changes," listed the officers for Axis as follows: Craig Crawford, President; Defendant Bonnie Berry, Vice-President; Defendant Marty Berry, Vice President; Crissy Hinojosa, Secretary; Mike Hummell, Vice President & General Counsel; and Todd Griggs, Vice President, Treasurer, CFO.[9]

---

[8] *See* Defendants' November 6 Filings, Exs. A thereto.

[9] *Id*.

ACTIVE 716638471v10

17.     Both Defendants Marty Berry and Bonnie Berry signed the purported "Axis Midstream Holdings, LLC Special Meeting of Managers" minutes.[10]

18.     Days later, on October 22, 2025, Mike Hummell executed a Certificate of Amendment with the Texas Secretary of State in furtherance of actions purportedly taken in the December 12, 2024 and October 14, 2025 meetings described above.[11] In the Certificate of Amendment, Axis's certificate of formation was changed to: (i) name the following individuals as officers of Axis: Craig Crawford (President); Defendant Bonnie Berry (Vice President); Defendant Marty Berry (Vice President); Mike Hummell (Vice President & General Counsel); Todd Griggs (Vice President, Treasurer & CFO); Crissy Hinojosa (Secretary); and (ii) remove the following individuals as officers of Axis: Lawrence Berry (President); Dennis Berry (Vice President); Robert Powers (Vice President & Secretary); and James Klein (Vice President, Treasurer & CFO).

19.     The October 22, 2025 Certificate of Amendment indicated that "the amendments" therein "have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity."[12]   It also became effective upon its filing with the Secretary of State, or October 22, 2025.[13]

20.     At the time this Certificate of Amendment was filed (i) Lone Star Ports Enterprises, LLC was the Sole Member and Manager of Axis; (ii) Berry GP Inc. was not a Member of Axis; (iii) neither Marty Berry or Bonnie Berry was a duly-appointed Manager of Axis; (iv) Lawrence Berry was the duly-appointed President of Axis, and (e) none of Craig Crawrod, Bonnie Berry,

---

[10] *Id.*

[11] A true and correct copy of an October 22, 2025 Certificate of Amendment is attached to Plaintiffs' Declaration filed contemporaneously herewith as <u>Exhibit A-4</u>.

[12] *Id.*

[13] *Id.*

ACTIVE 716638471v10

Marty Berry, Dennis Berry, Mike Hummell, Todd Griggs, Crissy Hinojosa, Robert Powers, or James Klein was a duly-appointed officer of Axis.

21.     On or about October 22, 2025, Todd Griggs executed a Statement of Change of Registered Office/Agent for Axis.[14]

22.     In the Statement of Change, Axis's registered agent was changed from Gretchen Reed to Mike Hummell and Axis's registered office address was changed from 5005 Riverway Drive, Suite 440, Houston, Texas 77056 to 1414 Valero Way, Corpus Christi, Texas 78409-3020.[15]

23.     The Statement of Change indicates that it was "authorized by the entity in the manner required by the BOC (Business Organizations Code) or in the manner required by the law governing the filing entity, as applicable."[16]  It was also effective upon filing.[17]

24.     At the time this Statement of Change was filed (i) Gretchen Reed was the duly appointed Registered Agent of Axis, (ii) Mike Hummell was not the duly appointed Registered Agent of Axis, and (iii) Todd Griggs was not a Member, Manager, or Officer of Axis and had no authority to execute the Statement of Change on its behalf.

25.     The above-described actions—which altered the status quo *ante* and were intentionally concealed from Plaintiffs in violation of Defendant's discovery obligations—constitute knowing and intentional violations of the TI Order by Defendants.

**F.     Defendants' Filings in the Nueces County Case in Defiance of the TI Order**

---

[14] A true and correct copy of an October 22, 2025 Statement of Change of Registered Office/Agent is attached to Plaintiffs' Declaration as Exhibit A-5.

[15] *Id.*

[16] *Id*.

[17] *Id*.

ACTIVE 716638471v10

26. Defendants Marty Berry and Bonnie Berry are also parties in *Lawrence Berry, individually and derivatively on behalf of Berry GP, Inc. v. Marty Berry, et al.*, Cause No. 2024DCV-0045-C pending in the 94th Judicial District Court of Nueces County, Texas (the "Nueces County Case"). Defendants Marty Berry and Bonnie Berry's counsel have repeatedly argued to this Court that the Nueces County Case should adjudicate Plaintiffs' claims. However, this Court has made clear that dominant jurisdiction and venue of this dispute, including the issues of ownership, management and control of Axis, the other Lone Star Ports Project entities, and their tangible and intangible rights, are properly before this Court.[18] Moreover, this Court's determination of these issues has been affirmed by the Fifteenth Court of Appeals.[19] Nevertheless, Defendants have brazenly ignored by ignoring this Court's adjudication of these issues and repeatedly violated the TI Order.

27. First, and between the time the TRO had expired and prior to the TI Order, on February 5, 2025, Defendants caused Redfish Bay Terminals Inc. ("RBT") and Canada Projects Holdings Inc. ("CPH") (together, "Intervenors") to file an Original Petition in Intervention in the Nueces County Case, claiming that they sought to "confirm" that Intervenors own (a) Axis, (b) numerous parcels of real property totaling over 200 acres of land in San Patricio County (the "Redfish Bay Property"), and (c) a leasehold interest in approximately 62 acres of land on Harbor Island in Nueces County (the "Harbor Island Property"), each of which constitutes a critical tangible and/or intangible right of the Lone Star Ports Project. Next, on March 17, 2025, Defendants caused a petition to be filed in the Nueces County Case in which they (i) sought to

---

[18] *See* this Court's January 17, 2025 Order denying Marvin Glenn Berry's Plea in Abatement and Motion to Abate, Movants' Motion to Remand, Dismiss and/or Transfer Venue, and Axis Midstream Holdings, LLC's Motion to Transfer Venue; *see also* this Court's January 28, 2025 Order denying Motion to Reconsider Court's Ruling on Plea in Abatement.

[19] *See* March 25, 2025 Memorandum Opinion in the Fifteenth Court of Appeals, No. 15-25-00016-CV, In re Marty Berry and Axis Midstream Holdings, LLC, Relators.

9

have Axis intervene in the Nueces County Case, and (ii) alleged that Axis is "wholly owned by Berry GP."[20]

28. On October 27, 2025, and after the TI Order was issued, Defendants Marty Berry and Bonnie Berry caused a Motion for Partial Summary Judgment to be filed in the Nueces County Case asking that court to "declare that Axis Midstream Holdings LLC ("Axis") is wholly owned by Berry GP Inc., or alternatively Redfish Bay Terminal Inc."[21] In support of that relief, movants asserted that (a) Lawrence Berry had no authority to sign certain documents, an issue before this Court; and (b) only Marty and Bonnie, Berry GP Inc., and/or RBT have the power to change the ownership and control of various Lone Star Ports entities, rights, assets, and properties, which are also issues before this Court.

29. Next, on October 29, 2025, "Marty Berry, Berry GP, Inc., Berry Operating Company LLC, Berry Contracting LP, Redfish Bay Terminals Inc., Axis Midstream Holdings LLC, and Canada Project Holdings Inc." filed an Advisory to the Court in the Nueces County Case.[22] In that Advisory, movants (which include Marty individually, and Defendants together through Berry GP Inc.) represented that the Nueces County district court has authority to determine "as a matter of law" the ownership of Axis Midstream Holdings, LLC. *Id*. at 2.

30. Next, on November 18, 2025, during a "status conference" in the Nueces County Case (which Defendant Bonnie Berry attended in-person), counsel for Marty Berry (Doug Allison)

---

[20] Copies of the February 5, 2025 Original Petition in Intervention and March 17, 2025 First Amended Supplemental and Third-Party Petition, and Axis's Intervention, both filed in the Nueces County Case, are attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-6 and A-7, respectively.

[21] A copy of the October 27, 2025 Motion for Partial Summary Judgment filed in the Nueces County Case is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-8.

[22] A copy of the October 29, 2025 Advisory to Court filed in the Nueces County Case is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-9.

and Bonnie Berry, Individually (Sarah Pacheco), argued that the Nueces County district court should determine issues of ownership and control of Axis, the Redfish Bay Property, the Harbor Island Property, and other important tangible and intangible rights of the Lone Star Ports Project.[23] At this "status conference", when counsel for Plaintiffs argued that this Court has dominant jurisdiction and that any hearing on the Motion for Partial Summary Judgment should not proceed, counsel for Marty Berry and Bonnie Berry insisted that the hearing should proceed, arguing as follows:

---

[23] A copy of the November 18, 2025 transcript from the status conference in the Nueces County Case is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-10.

MS. PACHECO: I want to go to your other question for a minute. The mandamus is not my issue. You said why are they here? And I recognize everything I say -- because I represent Bonnie Berry Individually and Executor -- they're going to run to the other court and claim that she violates the temporary injunction when I say this, but --

THE COURT: They're going to say what?

MS. PACHECO: They're going to go tell the Houston Court that anything I say in this courtroom potentially violates the temporary injunction they had against Bonnie Berry as a widow. She's only in that case individually, and that highlights that case, because that case is against Bonnie Berry Individually, Marty Berry Individually, and Lawrence Berry Individually. There is no entities in that case. I want you to understand this suggestion of what is going to be decided. It's going to be two judges, and I'm not going to tell either judge what they're going to decide. But the landscape of the Houston case is a gentleman by the name of Ted Powers and his company claiming interest in entities, but he doesn't join any of the entities. They're in this court, and that's what we told -- and I candidly told the Judge in the business court, there is no entities involved to decide ownership. I've told

ACTIVE 716638471v10

her, I'm telling this Court, where the entities are with ownership rights and ownership issues is in this Court, and they claim that every time she does something individually, she somehow violated that temporary injunction.

But the reality is -- to and your question, why are they here? Because this issue of whether he had authority or they had title has to be decided somewhere where the entities are a party. They chose not to join any of these entities. They actually represent Mr. Powers and Allied in the Houston court proceeding in different capacities. Now they -- they've made appearances for these entities in this proceeding, and I just want to make sure the landscape is known to the Court that there is no entities, no enterprises, no Redfish Bay Terminals, no properties, no Harbor Island. None of those entities that relate to who owns these assets are in the Houston case. I made that landscape clear there. They have -- and I -- I've candidly told the judge, they have chosen the landscape of, for some reason, suing a widow and trying to, in my opinion, bully her into doing something, but where the ownership is has to be decided through the entities. And so that's all I'm going to say because I'm sure if I say anything else, I'm sure they will go tell that judge

that may client has violated the injunction, but all I'm trying to make clear to this Court is the landscape that exist in the different proceedings as this has been argued.

MS. MCCLELLAN: And Ms. Pacheco's --

Ex. A-10, pp. 61-63.

13

* * *

MS. PACHECO: So while they keep flashing the temporary injunction -- and I'm not here to argue the temporary injunction. It is what it is. It was

72

entered in the case, but -- before I was in it, while Mr. Allison was involved. But the reality is, one of the issues we have consistently told Judge Adrogue is the fact that we've got an injection against individuals, and what they're trying to do is control companies that are not parties. I've said it to her, I'm candidly saying it to you. My position has been the same. The ownership of the rightful owners needs to be decided, but it needs to be decided in a court where the entities that claim ownership, which in this case is either Enterprises or Berry GP, the decision is made so my client can quit being a punching bag in the middle of this, because they want to somehow force her as an individual to do or not do something she has no control over. As I told that Court and I'm telling this Court, she has no ownership of Axis. That is between these two parties, and the sooner it's decide, the better.

Ex. A-10, pp. 71-72.

* * *

14

MR. ALLISON: Yes. Well, they should not be able to take this Court's power just affirmed by the Court of Appeals that you decide the ownership Axis. They're going to go try to -- whether it's from contempt and controlling Axis or by they asking it in their case set in February -- they're asking for permanent injunctive relief that they can't do anything with Axis. They're trying to directly interfere with exactly the powers that the Court of Appeals here told you you have, which is to decide the ownership issue. And 90 days, quite frankly, is way more than they could ever -- I'm real serious, there's only two documents that are the key documents, and then you go look at the case law, and TBOC, but if -- if there was a -- if you wanted to give them two weeks or something like that, I mean, I can't even -- I would love to hear what they think they need. But the ownership issue should be decided here, and the reason they're trying to put it off is they're trying to circumvent the Court of Appeals' ruling here and circumvent your jurisdiction.

Ex. A-10, p. 77.

31.     Next, on November 20, 2025, Defendants Marty Berry and Bonnie Berry caused Berry GP Inc. and RBT to file an Amended Motion for Summary Judgment in the Nueces County Case.[24] In that Motion, movants again asked the Nueces County Court to determine "as a matter of law – that Axis Midstream Holdings LLC is wholly owned (100%) by Berry GP; or alternatively, that Axis is wholly owned (100%) by RFB (a company wholly owned by Berry GP)." *Id*. at 2.  In this context, "RFB" is Redfish Bay Terminals, Inc., which is referred to herein as "RBT".  support of that relief, movants assert that (i) Lawrence Berry had no authority to sign certain documents, an issue before this Court; and (ii) only Marty and Bonnie, Berry GP Inc., and/or RBT have the power to change the ownership and control of various Lone Star Ports

---

[24] A copy of the November 20, 2025 Berry GP and RFB's (Amended) Motion for Summary Judgment filed in the Nueces County Case is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-11.

15

entities, rights, assets, and properties, which are also issues before this Court. The Amended Motion for Summary Judgment is currently set for hearing on December 11, 2025.[25]

32. The filing of such motions and seeking the above-described relief "as a matter of law" in the Nueces County Case regarding the management, ownership, and control of Axis, the other Lone Star Ports Project entities, and their tangible or intangible rights are repeated and flagrant violations of the TI Order, and audacious attempts to circumvent this Court's finding it has dominant jurisdiction over ownership issues related to Axis, other Lone Star Ports Project entities, the Lone Star Ports Project, and their tangible and intangible rights, and wrongful attempts to interfere with and to moot this Court's February 9, 2026 trial setting on these issues.

## II.   APPLICATION FOR SHOW CAUSE ORDER AND MOTION FOR CONTEMPT

33. A trial court may enforce an injunction by holding the enjoined party in contempt for violating the injunction order. TEX. R. CIV. P. 692. This Court "has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction." TEX. GOV'T CODE § 21.001(a). The power to punish a party for refusal or failure to obey a previous order of the Court "is an inherent power of the court and is an essential element of judicial independence and authority." *Ex Parte Gorena*, 595 S.W.2d 841, 843 (Tex. 1979); *see also Holland v. Holland*, 357 S.W.3d 192, 198 (Tex. App—Dallas 2012, no pet.) (trial courts have inherent authority to enforce their orders and decrees).

34. "Indeed, the power to enforce judgments is inherent in every court with the authority to render them, and functions as vital assurance that judicial proceedings will achieve

---

[25] A copy of the Notice of Hearing scheduling the Berry GP and RFB (Amended) Motion for Summary Judgment for argument on December 11, 2025 is attached to Plaintiffs' Declaration filed contemporaneously herewith as Exhibit A-12.

ACTIVE 716638471v10

some purpose in keeping with their aims." *See Rose v. Bonvino*, 05-14-00702-CV, 2015 WL 4736837, at *3 (Tex. App—Dallas Aug. 11, 2015, pet. denied) (mem. op.). This power includes the ability to punish defendants for contempt, and the authority to otherwise enforce its judgment by "suitable methods." *See id.*; TEX. GOV'T CODE § 21.002. Ultimately, it is not necessary that a person intends to be contemptuous for a contempt of court to occur. *See Ex parte Rose*, 704 S.W.2d 751, 757 (Tex. Crim. App. 1984). Rather, the court must evaluate the act itself to determine whether it amounts to contempt. *See id*.

35.     As set forth in Section 21.002 of the Texas Government Code in relevant part:

Sec. 21.002.  CONTEMPT OF COURT.  (a)  Except as provided by Subsection (g), a court may punish for contempt.
(b)  The punishment for contempt of a court other than a justice court or municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both such a fine and confinement in jail.
* * *
(e)  Except as provided by Subsection (h), this section does not affect a court's power to confine a contemner to compel the contemner to obey a court order.

36.     A court's power to punish for contempt is an inherent power and an essential element of judicial independence and authority. *In re Gabbai*, 986 S.W.2d 929, 931 (Tex. 1998).

37.     Texas jurisprudence recognizes two types of punishment for contempt of court: civil, or coercive contempt; and criminal, or punitive contempt. *In re Cantu*, 961 S.W.2d 482, 489 (Tex. App. 1997), on reh'g (Nov. 20, 1997), order set aside (Feb. 19, 1998).  For example, when the only purpose of a contempt hearing is to punish a party for its conduct, the only form of contempt for a trial court to consider is criminal contempt.  *See, e.g., In re Grande Garbage Collection Co., LLC*, No. 04-16-00450-CV, 2016 WL 5922394, at *2 (Tex. App. Oct. 12, 2016).

38.     Here, Defendants Marty Berry and Bonnie Berry violated this Court's TI Order by:

a.  Acting as and/or serving as "Managers" of Axis;

17

b.  Acting as and/or serving as "Chairman: of Axis;

c.  Acting as and/or serving as "Secretary" of Axis;

d.  Holding a "Special Meeting of Managers" of Axis on October 14, 2025;

e.  Naming Todd Griggs as Vice President, Treasurer and CFO of Axis;

f.  Naming the officers of Axis as follows: Craig Crawford, President; Defendant Bonnie Berry, Vice-President; Defendant Marty Berry, Vice President; Crissy Hinojosa, Secretary; Mike Hummell, Vice President & General Counsel; and Todd Griggs, Vice President, Treasurer, CFO;

g.  Certifying the October 14, 2025 Special Meeting of Managers of Axis as "Correct";

h.  Signing the October 14, 2025 Special Meeting of Managers of Axis as "Vice President";

i.  Attesting the October 14, 2025 Special Meeting of Managers of Axis;

j.  Signing the October 14, 2025 Special Meeting of Managers of Axis as "Secretary of meeting";

k.  Causing the October 22, 2025 Certificate of Amendment of Axis to be filed with the Secretary of State;

l.  Causing the October 22, 2025 Certificate of Amendment of Axis to change Axis's certificate of formation by adding the following individuals as officers of Axis: Craig Crawford (President); Bonnie Berry (Vice President); Marty Berry (Vice President); Mike Hummell (Vice President & General Counsel); Todd Griggs (Vice President); and Crissy Hinojosa (Secretary);

m. Causing the October 22, 2025 Certificate of Amendment of Axis to change Axis's certificate of formation by deleting the following individuals as officers of Axis:

18

Lawrence Berry (President); Dennis Berry (Vice President); Robert Powers (Vice President and Secretary); James Klein (Vice President, Treasurer & CFO);

n. Causing the October 22, 2025 Certificate of Amendment of Axis to become effective when the document was filed with the Texas Secretary of State;

o. Causing the October 22, 2025 Certificate of Amendment of Axis to be executed by Mike Hummell;

p. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to be filed with the Secretary of State;

q. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to remove Gretchen Reed as Registered Agent of Axis;

r. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to add Mike Hummell as Registered Agent of Axis;

s. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to change the registered office of Axis from 5005 Riverway Drive, Suite 440, Houston Texas 77056 to 1414 Valero Way, Corpus Christi, Texas 78409;

t. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to become effective when filed with the Texas Secretary of State.

u. Causing the October 22, 2025 Statement of Change of Registered Office/Agent of Axis to be executed by Todd Griggs.

v. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to file the October 27, 2025 Motion for Partial Summary Judgment in the Nueces County Case;

w. Causing their counsel, and/or counsel for entities under their exclusive direction

and control, to file the October 29, 2025 Advisory to the Court in the Nueces County Case;

x. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to assert positions at the November 18, 2025 status conference in the Nueces County Case; and

y. Causing their counsel, and/or counsel for entities under their exclusive direction and control, to file the November 20, 2025 Amended Motion for Summary Judgment in the Nueces County Case.

39. This Court should issue a show cause order, and order Defendants Marty and Bonnie Berry, Individually, to appear and show good cause why they should not be held in contempt for repeatedly defying and violating this Court's TI Order.[26]

40. Accordingly, Plaintiffs ask this Court to hold Defendants Marty Berry and Bonnie Berry in contempt of the TI Order, and (i) compel Defendants Marty Berry and Bonny Berry to obey this Court's TI Order by withdrawing the Axis meeting minutes and Texas Secretary of State filings and restoring Axis's ownership and management structure as set forth in this Court's TI Order; (ii) withdrawing the filings in the Nueces County Case as this Court has dominant jurisdiction to decide such issues as a matter of law; (iii) order each of Defendants Marty Berry and Bonnie Berry to pay a fine of $500.00 for each act of contempt as a penalty, and (iii) confine Defendants Marty Berry and Bonnie Berry to the Harris County Jail for a period of not less than forty-eight (48) hours for each act of contempt, and continuing, until Defendants Marty Berry and Bonnie Berry reverse the actions taken by them in violation of the TI Order.

## III. MOTION FOR SANCTIONS

---

[26] A proposed Order to Show Cause is filed contemporaneously herewith.

20

41.     In addition to Defendants being held in contempt of this Court for their flagrant violation of the TI Order, Plaintiffs respectfully ask that sanctions be imposed against Defendants Marty Berry and Bonnie Berry in the form of the amount of attorneys' fees Plaintiffs will incur necessitated by the filing of this Motion and the prior filings regarding this matter. Indeed, Plaintiffs will incur attorneys' fees related to the drafting and filing of the November 3, 2025 correspondence to the Court, this Motion, as well as attending prior hearings as well as a hearing on this Motion, attending hearings and drafting and filing motions in the Nueces County case, and seeking the relief sought herein. Plaintiffs seek leave of court to file evidence of the amount of their reasonable and necessary attorney's fees and costs incurred for such services.

## IV.     CONCLUSION AND PRAYER

WHEREFORE, Plaintiffs respectfully requests that this Court:

a)      issue a Show Cause Order compelling Defendants Marvin Glenn Berry and Bonnie Berry to appear and show good cause why they should not be held in contempt for violating the Order for Temporary Injunction this Court entered on April 2, 2025;

b)      find that Defendants Marvin Glenn Berry and Bonnie Berry are in contempt for the violations of the Court's Order for Temporary Injunction this Court entered on April 2, 2025;

c)      compel Defendants Marty Berry and Bonny Berry to obey this Court's TI Order by (i) withdrawing the Axis meeting minutes and Texas Secretary of State filings and restoring Axis's ownership and management structure as set forth in this Court's TI Order; and (ii) withdrawing the filings in the Nueces County Case as this Court has dominant jurisdiction to decide such issues as a matter of law;

d)      issue an order for each of Defendants Marty Berry and Bonnie Berry to pay a fine of $500.00 for each act of contempt as a penalty;

21

e) confine Defendants Marty Berry and Bonnie Berry to the Harris County Jail for a period of not less than 48 hours for each act of contempt, and continuing, until Defendants Marty Berry and Bonnie Berry reverse the actions taken by them in violation of the TI Order;

f) require Defendants Marty Berry and Bonnie Berry to pay to Plaintiffs reasonable and necessary attorney's fees and costs in an amount to be determined; and

g) for all other relief to which Plaintiffs may be justly entitled to, whether at law or in equity.

ACTIVE 716638471v10

Dated: November 25, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Roland Garcia*
Roland Garcia
State Bar No. 07645250
Cara Mittleman Kelly
State Bar No. 24074518
Steven Higginbotham
State Bar No. 24125274
E-mail: garciar@gtlaw.com
E-mail: cara.kelly@gtlaw.com
E-mail: higginbothams@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS**

**BECK REDDEN LLP**

*/s/ M. Jake McClellan*
Mary Kate Raffetto
State Bar No. 24098296
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: mkraffetto@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Telecopier: (713) 951-3720

**ATTORNEYS FOR PLAINTIFF ALBERT THEODORE POWERS**

23

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing instrument contains 5560 words which is within the word limit of 7,500 words for motions and responses as set forth in the Local Rules of the Texas Business Court.

*/s/ Cara Kelly*
Cara Kelly


**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served electronically, in accordance with the Texas Rules of Civil Procedure, on November 25, 2025 on all counsel of record.

*/s/ Cara Kelly*
Cara Kelly

ACTIVE 716638471v10

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Torres on behalf of Roland Garcia
Bar No. 7645250
Angela.Torres@gtlaw.com
Envelope ID: 108479090
Filing Code Description: Motions - All Other
Filing Description: Plaintiffs' Application for Show Cause Order, Motion for Sanctions, and Brief in Support
Status as of 11/26/2025 9:13 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kathrine Silver | | ksilver@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Joel Glover | | jglover@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Richard Howell | | rahowell@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Charles Henke | 784254 | chenke@henkelawfirm.com | 11/25/2025 7:39:33 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Alistair Dawson | | adawson@beckredden.com | 11/25/2025 7:39:33 PM | SENT |
| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 11/25/2025 7:39:33 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 11/25/2025 7:39:33 PM | SENT |
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 11/25/2025 7:39:33 PM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 11/25/2025 7:39:33 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 11/25/2025 7:39:33 PM | SENT |
| Austin Yancy | | ayancy@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Sarah Pacheco | | efile-spacheco@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Davis LaBarre | | dlabarre@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Torres on behalf of Roland Garcia
Bar No. 7645250
Angela.Torres@gtlaw.com
Envelope ID: 108479090
Filing Code Description: Motions - All Other
Filing Description: Plaintiffs' Application for Show Cause Order, Motion for Sanctions, and Brief in Support
Status as of 11/26/2025 9:13 AM CST

Case Contacts

| Cameron Roth | | CRoth@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
|---|---|---|---|---|
| Becky Young | | Becky.Young@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 11/25/2025 7:39:33 PM | SENT |
| Gladys Simone Brown | | browngl@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 11/25/2025 7:39:33 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 11/25/2025 7:39:33 PM | SENT |
| Angela Torres | | angela.torres@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Javier Gonzalez | | jgonzalez@jw.com | 11/25/2025 7:39:33 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 11/25/2025 7:39:33 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 11/25/2025 7:39:33 PM | SENT |
| Jessica Valdez | | jvaldez@gibbsbruns.com | 11/25/2025 7:39:33 PM | SENT |
| Shanna Gohlke | | gohlkes@bayltd.com | 11/25/2025 7:39:33 PM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 11/25/2025 7:39:33 PM | SENT |
| Foster Baird | | foster.baird@txcourts.gov | 11/25/2025 7:39:33 PM | SENT |
| Cara MittlemanKelly | | Cara.Kelly@gtlaw.com | 11/25/2025 7:39:33 PM | SENT |
| Ethan Lim | | elim@henkelawfirm.com | 11/25/2025 7:39:33 PM | SENT |

**Tab E**
**December 3, 2025 Plaintiffs' Corrected Supplement to Application for Show Cause Order, Motion for Sanctions, and Brief in Support**

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2025 11:27 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

BUSINESS COURT OF TEXAS
ELEVENTH DIVISION

ALBERT THEODORE POWERS;　§
ALLIED PORTS LLC,　　　　　　§
　　　　　　　　　　　　　　　§
*Plaintiffs,*　　　　　　　　　　§
　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　§　　　　CAUSE NO. 24-BC11A-0025
　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　§
ALLEN LAWRENCE BERRY;　　§
MARVIN GLENN BERRY; AND　§
BONNIE BERRY　　　　　　　　§
　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　§
*Defendants.*　　　　　　　　　§

## PLAINTIFFS' CORRECTED SUPPLEMENT TO APPLICATION FOR SHOW CAUSE ORDER, MOTION FOR SANCTIONS, AND BRIEF IN SUPPORT

Plaintiffs Albert Theodore Powers ("Powers") and Allied Ports LLC ("Allied Ports" and, together with Powers, "Plaintiffs") file this Corrected[1] Supplement to their Application ("Application") for Show Cause Order, Motion for Sanctions, and Brief in Support to hold Defendants Marvin Glenn Berry ("Marty Berry") and Bonnie Berry, Individually ("Bonnie Berry" and, together with Marty Berry and for purposes of this Motion only, "Defendants") in contempt for violating this Court's April 2, 2025 Order Granting Temporary Injunction (the "TI Order"), and respectfully show the Court as follows:

In Plaintiffs' Application filed November 25, 2025, Plaintiffs referenced and attached as Exhibit A-12 a Notice of Hearing regarding the setting of Berry GP's Amended Motion for Summary Judgment and RFB's Amended Motion for Summary Judgment for a hearing on

---

[1] This "corrected" supplement is due to the prior filed Exhibit A omitted a cover page identifying it as Exhibit A.

1

ACTIVE 716978968v1

December 11, 2025 at 2 pm in the matter pending in the 94th Judicial District Court of Nueces County, Texas, Cause No. 2024DCV-0045-C (the "Nueces County Lawsuit").

Plaintiffs respectfully inform the Court that the previously filed Exhibit A-12 was inadvertently not the correct copy of the Notice of Hearing referenced in the motion.

Attached hereto as **Exhibit A** is the correct and true copy of the Notice of Hearing, which sets the Berry GP's Amended Motion for Summary Judgment and RFB's Amended Motion for Summary Judgment for hearing on December 11, 2025 at 2:00 p.m. before the Honorable Mark Woerner, County Court at Law No. Four, Nueces County Courthouse, Corpus Christi, Texas.

Plaintiffs respectfully request that the Court consider the correct Exhibit A (Notice of Hearing) attached hereto as the accurate document referenced in the Application, and apologize to the Court and parties for the inadvertent previous filing of the wrong document.

Dated: December 3, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Roland Garcia*
Roland Garcia
State Bar No. 07645250
Cara Mittleman Kelly
State Bar No. 24074518
Steven Higginbotham
State Bar No. 24125274
E-mail: garciar@gtlaw.com
E-mail: cara.kelly@gtlaw.com
E-mail: higginbothams@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS**

2

ACTIVE 716978968v1

**BECK REDDEN LLP**

*/s/ M. Jake McClellan*
Mary Kate Raffetto
State Bar No. 24098296
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: mkraffetto@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:     (713) 951-3720

**ATTORNEYS FOR PLAINTIFF ALBERT THEODORE POWERS**

3

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing instrument contains 277 words which is within the word limit of 7,500 words for motions and responses as set forth in the Local Rules of the Texas Business Court.

*/s/ Roland Garcia*
Roland Garcia


## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served electronically, in accordance with the Texas Rules of Civil Procedure, on December 3, 2025 on all counsel of record.

*/s/ Roland Garcia*
Roland Garcia

ACTIVE 716978968v1

# DECLARATION OF ROLAND GARCIA

| THE STATE OF TEXAS | § |
| | § |
| | § |
| COUNTY OF HARRIS | § |

1.      "My name is Roland Garcia. I am over twenty-one (21) years of age and am fully competent to make this Declaration. I have knowledge of the facts recited herein, which are true and correct. My knowledge of these facts is based on my own personal knowledge."

2.      "I am counsel for Plaintiff Allied Ports, LLC in Cause No. 24-BC11A-0025, *Powers, et. al. v. Berry, et. al.*, in the Business Court, Eleventh Division, in Harris County, Texas and in the related Nueces County Lawsuit (Cause No. 2024DCV-0045-CI, pending in 94th Judicial District of Nueces County, Texas). I provide this Declaration in support of Plaintiffs Albert Theodore Powers and Allied Ports LLC's Supplement ("Supplement") to their Application ("Application") for Show Cause Order, Motion for Sanctions, and Brief.

3.      As part of my role as counsel for Allied Ports LLC in the litigation before this Court and in the Nueces County Lawsuit, I am familiar with the documents attached as Exhibits to the Application and Supplement.

4.      Attached as Exhibit A to this Supplement is a true and correct copy of the Notice of Hearing, setting the Berry GP's Amended Motion for Summary Judgment and RFB's Amended Motion for Summary Judgment for hearing on December 11, 2025 at 2:00 p.m. in the Nueces County Lawsuit, Cause No. 2024DCV-0045-C, in the 94th Judicial District Court of Nueces County, Texas.

ACTIVE 716978968v1

"My name is Roland Garcia. My date of birth is December 26, 1958, and my address is 1000 Louisiana Street, Suite 6700, Houston, Texas 77002. I declare under penalty of perjury that the foregoing is true and correct."

Executed in Harris County, Texas on December 3, 2025 by:

/s/ Roland Garcia
Roland Garcia

ACTIVE 716978968v1

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephanie Sanchez on behalf of Roland Garcia
Bar No. 7645250
sanchezst@gtlaw.com
Envelope ID: 108658925
Filing Code Description: No Fee Documents
Filing Description: Plaintiffs Corrected Supplement to Application for Show Cause Order and Motion for Contempt and Sanctions
Status as of 12/3/2025 11:48 AM CST

Associated Case Party: Bonnie Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kathrine Silver | | ksilver@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Joel Glover | | jglover@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Richard Howell | | rahowell@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Austin Yancy | | ayancy@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Sarah Pacheco | | efile-spacheco@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Davis LaBarre | | dlabarre@jw.com | 12/3/2025 11:27:17 AM | SENT |
| Javier Gonzalez | | jgonzalez@jw.com | 12/3/2025 11:27:17 AM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Charles Henke | 784254 | chenke@henkelawfirm.com | 12/3/2025 11:27:17 AM | SENT |
| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/3/2025 11:27:17 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephanie Sanchez on behalf of Roland Garcia
Bar No. 7645250
sanchezst@gtlaw.com
Envelope ID: 108658925
Filing Code Description: No Fee Documents
Filing Description: Plaintiffs Corrected Supplement to Application for Show Cause Order and Motion for Contempt and Sanctions
Status as of 12/3/2025 11:48 AM CST

Case Contacts

| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/3/2025 11:27:17 AM | SENT |
|---|---|---|---|---|
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 12/3/2025 11:27:17 AM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Gladys Simone Brown | | browngl@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/3/2025 11:27:17 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/3/2025 11:27:17 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Angela Torres | | angela.torres@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 12/3/2025 11:27:17 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/3/2025 11:27:17 AM | SENT |
| Jessica Valdez | | jvaldez@gibbsbruns.com | 12/3/2025 11:27:17 AM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 12/3/2025 11:27:17 AM | SENT |
| Foster Baird | | foster.baird@txcourts.gov | 12/3/2025 11:27:17 AM | SENT |
| Ethan Lim | | elim@henkelawfirm.com | 12/3/2025 11:27:17 AM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/3/2025 11:27:17 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephanie Sanchez on behalf of Roland Garcia
Bar No. 7645250
sanchezst@gtlaw.com
Envelope ID: 108658925
Filing Code Description: No Fee Documents
Filing Description: Plaintiffs Corrected Supplement to Application for Show Cause Order and Motion for Contempt and Sanctions
Status as of 12/3/2025 11:48 AM CST

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Susan Gonzales | | susan@dallisonlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Shanna Gohlke | | gohlkes@bayltd.com | 12/3/2025 11:27:17 AM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | | adawson@beckredden.com | 12/3/2025 11:27:17 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/3/2025 11:27:17 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 12/3/2025 11:27:17 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/3/2025 11:27:17 AM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Cara MittlemanKelly | | Cara.Kelly@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 12/3/2025 11:27:17 AM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/3/2025 11:27:17 AM | SENT |

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2025 11:27 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

# EXHIBIT A

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § § | |
| Defendants. | § § | 94TH JUDICIAL DISTRICT |

## NOTICE OF HEARING

Please take notice that the following motion has been scheduled for hearing on **Thursday, December 11, 2025, at 2:00 p.m. CST** before the Honorable Mark Woerner, County Court at Law No. Four, Nueces County Courthouse, Corpus Christi, Texas:

- Berry GP's Amended Motion for Summary Judgment and RFB's Amended Motion for Summary Judgment

DATED: November 20, 2025

Respectfully submitted,

LAW OFFICES OF DOUGLAS A. ALLISON

By: /s/ Douglas A. Allison
    Douglas A. Allison
    State Bar No. 01083500
    doug@dallisonlaw.com
    403 N. Tancahua Street
    Corpus Christi, Texas 78401
    Telephone: (361) 888-6002

Facsimile: (361) 888-6651

ATTORNEY FOR DEFENDANTS
AND COUNTER-PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th  day of November 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.


   */s/ Douglas A. Allison*
Douglas A. Allison

**Tab F**
**December 1, 2025 Bonnie Berry's Objection**
**to Plaintiffs' Proposed Show Cause Order**

E-filed in the Office of the Clerk
for the Business Court of Texas
12/1/2025 10:01 AM
Accepted by: Alexis Jennings
Case Number: 24-BC11A-0025

**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Cause No. 24–BC11A–0025 |
| ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; and BONNIE BERRY, | § § § § § | |
| *Defendants.* | § § § | |

**BONNIE BERRY'S OBJECTION[1] TO**
**PLAINTIFFS' PROPOSED SHOW CAUSE ORDER**

TO THE HONORABLE JUDGE ADROGUÉ:

Defendant Bonnie Berry ("Bonnie") files her Objection to Plaintiffs' Proposed Show Cause Order (the "Objection") and respectfully shows this Honorable Court as follows:

**I.**
**INTRODUCTION**

1.      Plaintiffs' proposed show cause order is improper and would constitute both error and a violation of Bonnie's due process rights because it includes pre-hearing factual findings and accusations of temporary injunction violations that are not substantiated—factually or legally—by Plaintiffs' declaration. Without an evidentiary hearing and without competent, sworn evidence supporting those specific accusations, Plaintiffs ask this Court to issue a show cause order that: (1) embeds premature findings of fact under the guise of a "background" section; and (2) directs

---

[1] For purposes of clarity, Bonnie files her Objection (rather than a response on the merits) to identify procedural errors in the proposed order should the Court decide to rely on it when (and if) it decides to issue a show cause order. Bonnie will respond more fully on the merits prior to any show cause hearing should the Court issue a show cause order and expressly reserves her right to do so.

1

Bonnie to "show cause" as to twenty-five purported violations of the Court's TI Order. Doing so would constitute error and a violation of Bonnie's due process rights.

2. While Bonnie will show the Court why Plaintiffs' proposed violations lack merit at the show cause hearing on December 10 (if the Court deems one necessary), procedurally, Plaintiffs' proposed show cause order is improper. The Court cannot issue findings of fact—either as "background" in its show cause order, or as final determinations of fact—without an evidentiary hearing. And Plaintiffs' declaration in support of their proposed show cause order fails to support all twenty-five of their alleged TI Order violations, meaning the Court lacks the necessary evidence to issue a show cause order as to the unverified alleged violations. Were the Court to issue Plaintiffs' proposed show cause order, Bonnie would be deprived of due process, since she would neither have a meaningful opportunity to be heard on Plaintiffs' alleged "background" or notice as to the alleged contemptuous acts. *Armstrong v. Manzo*, 380 U.S. 545, 550, 552 (1965) (holding due process demands meaningful notice and opportunity to be heard).

3. Because Plaintiffs' proposed show cause order is procedurally improper and would violate Bonnie's due process rights, the Court should refuse to issue the show cause order with any "background" findings and with any show cause violations related to unverified allegations.

## II.
## ARGUMENT AND AUTHORITIES

### A. Standard

4. Texas Rule of Civil Procedure 692 governs violation of an injunction:

> Disobedience of an injunction may be punished by the court or judge, in term time or in vacation, as a contempt. In case of such disobedience, the complainant, his agent or attorney, may file in the court in which such injunction is pending or with the judge in vacation, his affidavit stating what person is guilty of such disobedience and describing the acts constituting the same; and thereupon the court or judge shall cause to be issued an attachment for such person, directed to the sheriff or any constable of any

2

county, and requiring such officer to arrest the person therein named if found within his county and have him before the court or judge at the time and place named in such writ; or said court or judge may issue a show cause order, directing and requiring such person to appear on such date as may be designated and show cause why he should not be adjudged in contempt of court. On return of such attachment or show cause order, the judge shall proceed to hear proof; and if satisfied that such person has disobeyed the injunction, either directly or indirectly, may commit such person to jail without bail until he purges himself of such contempt, in such manner and form as the court or judge may direct.

Importantly, any allegation of contempt must include an "affidavit stating what person is guilty of such disobedience and describing the acts constituting the same[.]" *Id.* And it has long been recognized that, subject to limited exceptions not present here, "[i]n the case of constructive contempt,[2] the first step to be taken is the filing of an affidavit or complaint [and] in most cases the complaint must be verified." *Ex parte White*, 149 Tex. 155, 158 (1950), *abrogated on other grounds by Ex parte Winfree*, 153 Tex. 12 (1953). Only after such a filing, may the Court then issue a show cause order. *Id.* at 159. Without said verified allegations, the alleged contemptor's due process rights would be violated. *See Ex parte Browne*, 543 S.W.2d 82, 89 (Tex. 1976) ("Since the affidavit and show cause order did not describe or specify the actions or words for which relator Browne has been held in contempt, they did not afford him the due process to which he was entitled under Rule 692 and the above cited authorities.") (Daniel, J., dissenting,[3] joined by McGee and Denton, JJ.).

---

[2] Because the alleged contemptuous acts would have occurred outside the presence of the Court, any alleged contempt would be constructive contempt, not direct. *See In re Reece,* 341 S.W.3d 360, 365–66 (Tex. 2011).

[3] The majority in *Browne* did not reach the issue of the inadequate affidavit because it concluded that the show-cause order was sufficiently specific to satisfy due-process requirements. *Browne*, 543 S.W.2d at 86.

3

5.     Per Rule 692, the declaration itself must state "what person is guilty of such disobedience and describe[] the acts constituting the same[.]" Tex. R. Civ. P. 692. Where a declaration merely incorporates by reference allegations in the pleading, the declaration is legally insufficient to support relief. *See State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in United States Currency ($90,235.00)*, 511 S.W.3d 136, 144 (Tex. App.—El Paso 2014, no pet.) ("A summary judgment affidavit which simply adopts the pleadings, including a motion for summary judgment, is not competent summary judgment evidence and is insufficient either to support or defeat a motion for summary judgment.") (citing *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 60 (Tex. App.—Fort Worth 2011, pet. denied); *Lawrenson v. Global Marine, Inc.,* 869 S.W.2d 519, 522–23 (Tex. App.—Texarkana 1993, writ denied); *Loomis v. City of Dallas,* 472 S.W.2d 809, 811 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.)).

6.     Findings of facts "can have no purpose" where a "judgment [is] rendered without an evidentiary hearing." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *See also Love v. Moreland*, 280 S.W.3d 334, 339 (Tex. App.—Amarillo 2008, no pet.) ("That no one actually tendered evidence or stipulated to the relevant facts at the hearing is also troublesome since factual findings were rendered.").

7.     Contempt through "violation of a written court order, outside the presence of the court, is constructive contempt. A criminal contempt conviction for disobedience to a court order requires proof ***beyond a reasonable doubt*** of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (emphasis added).

4

**B.**   **The Court Cannot Include Plaintiffs' Proposed "Background" Without an Evidentiary Hearing.**

8.      Plaintiffs' proposed show cause order includes a "background" section that, on its face, makes findings of fact. Because the Court has not held an evidentiary hearing on Plaintiffs' purported "background," it cannot include the background within the show cause order without violating Bonnie's due process right to be heard on those alleged facts.

9.      While Plaintiffs have attached exhibits they claim establish violations of the TI Order, the Court will have no opportunity to hear the opposing evidence before issuing Plaintiffs' proposed show-cause order—much less consider any proof meeting a beyond-a-reasonable-doubt standard. Without such an opportunity, Bonnie's due process rights would be violated. Further, if the Court were to adopt Plaintiffs' requested "background" findings, Plaintiffs would almost certainly weaponize that language for purposes far beyond any legitimate framing. Their treatment of the TI Order and related hearings illustrates the problem: although the Court heard four days of testimony before entering that order, it remains a preliminary, interlocutory ruling—not a binding adjudication of facts. Yet Plaintiffs continually cite the TI Order, which is on appeal to the Fifteenth Court of Appeals, and the testimony underlying it, as though it were a final judicial determination of the facts. That conduct underscores the risk of including any additional non-binding findings in a show cause order that Plaintiffs can later misuse.

**C.**   **Plaintiffs' Improper and Insufficient Declaration Cannot Support Their Laundry List of Violations.**

10.     The Court cannot issue a show cause order against Bonnie based on unverified allegations or a declaration that is facially deficient. Plaintiffs' proposed order improperly recites numerous purported TI Order violations that are not sworn to in the declarant's statement. Further, even where the declaration touches on certain events, it does so without establishing personal knowledge and relies on assertions outside the declarant's competency. A show cause order cannot

rest on allegations that are neither verified nor supported by admissible evidence. Issuing such an order would violate Bonnie's due process rights. *See Browne*, 543 S.W.2d at 89; *see also In re Acceptance Ins. Co.*, 33 S.W.3d 443, 448 (Tex. App.—Fort Worth 2000, no pet.) ("Due process requires that full and unambiguous notice of an accusation of contempt be served on the alleged contemnor in a motion for contempt, show cause order, or equivalent legal process stating how, when, and by what means the party has been guilty of the alleged contempt.") (citing *Chambers*, 898 S.W.2d at 262).

11.     Plaintiff Powers begins his declaration by stating that the factual allegations contained in Plaintiffs' Application for Show Cause Order, Motion for Sanctions, and Brief in Support are true and accurate based on Powers' personal knowledge "and/or" his personal knowledge gained from review of the filings and publicly available documents. Such a verification by reference circumvents the well-established rule that "pleadings and motions . . . are not competent . . . evidence, even if they are sworn to or verified within the pleading or motion." *XTO Energy*, 357 S.W.3d at 60 ("We cannot conceive any logical reason, therefore, to conclude that the facts contained in such pleadings and motions should be competent evidence if they are sworn to or verified by a different, independent document, such as an affidavit.").

12.     As such, the Court can only look at the statements contained specifically within Powers' declaration for any show cause order. Looking only at Powers' declaration, Plaintiffs claim the following acts (many of which were not done by Bonnie, individually) constitute violations of the TI Order:[4]

---

[4] Similar to Powers' initial mass-incorporation by reference, Powers states in paragraph 21 that "[t]he above-described unauthorized actions . . . constitute knowing and intentional violations of the TI Order by Defendants." While vague and unclear exactly what Powers alleges are violations of the TI Order, Bonnie lists the alleged violations she can reasonably ascertain from Powers' declaration.

(i) Axis (not Bonnie) holding a Special Meeting of Managers on October 14, 2025;[5]

(ii) Axis (not Bonnie) naming Todd Griggs as Vice President, Treasurer, and CFO on October 14, 2025;[6]

(iii) Axis (not Bonnie) accepting James Klein's resignation from Vice President, Treasurer, and CFO on October 14, 2025;[7]

(iv) Axis (not Bonnie) "clarifying" the officers for Axis as Craig Crawford, President; Bonnie Berry, Vice-President; Marty Berry, Vice President; Crissy Hinojosa, Secretary; Mike Hummell, Vice President & General Counsel; and Todd Griggs, Vice President, Treasurer, CFO on October 14, 2025;[8]

(v) Bonnie having signed the October 14, 2025, minutes (acting as "Secretary of [M]eeting" for Axis);[9]

(vi) Mike Hummel (not Bonnie) filing a certificate of amendment with the Texas Secretary of State on October 22, 2025;[10]

(vii) Todd Griggs (not Bonnie) executing a Statement of Change of Registered Agent;[11]

A majority of these so-called violations concern the conduct of third parties or unjoined entities.[12]

Not one of them identifies any act by Bonnie, in her individual capacity, that could constitute a breach of the TI Order.

---

[5] Declaration ¶ 12.

[6] Declaration ¶ 13.

[7] Declaration ¶ 13.

[8] Declaration ¶ 13.

[9] Declaration ¶ 14.

[10] Declaration ¶¶ 15–18.

[11] Declaration ¶¶ 19–22.

[12] While the Court is familiar with Plaintiffs' previous representation to the Fifteenth Court of Appeals that the TI Order does not apply to Axis Midstream (or other unjoined entities), Bonnie reinserts it here for reference:

13.    Powers also complains of various activities in the Nueces County Case, such as:

    (viii)    "Causing" Redfish Bay Terminals Inc. and Canada Projects Holdings Inc. (i.e., not Bonnie) to file an original petition in intervention in Nueces County Case, "prior to the TI Order";[13]

    (ix)    "Causing" Berry GP and Redfish Bay Terminals Inc. (i.e., not Bonnie) to file a motion for partial summary judgment in the Nueces County Case;[14]

    (x)    Filing an advisory to the Nueces County court "through Berry GP Inc.";[15]

    (xi)    Bonnie's counsel arguing to the Nueces County Court during a November 18, 2025 status conference that the Nueces County Court should determine certain ownership and control issues;[16]

    (xii)    Bonnie's counsel arguing to the Nueces County Court that the hearing on the Motion for Partial Summary Judgment should go forward;[17]

    (xiii)    "Causing" Berry GP Inc. and Redfish Bay Terminals Inc. (i.e., not Bonnie) to file an Amended Motion for Summary Judgment on November 20, 2025, before the Nueces County Court;[18]

---

Finally, Marty and Bonnie contend that the temporary injunction must be dissolved because Axis Midstream and Berry GP are not parties to the case or the temporary injunction order. Br. at 54–57. But this argument is misplaced—the temporary injunction order does not purport to enjoin Axis Midstream or Berry GP from taking any action.

Brief of Appellees, Cause No. 15-25-00060-CV at pg. 42.

[13] Declaration ¶ 25.

[14] Declaration ¶ 26.

[15] Declaration ¶ 27.

[16] Declaration ¶ 28.

[17] Declaration ¶ 29.

[18] Declaration ¶ 30.

Powers concludes this section by stating:[19]

> The filing of such motions and seeking the above-described relief "as a matter of law" in the Nueces County Case regarding the management, ownership, and control of Axis, and other Lone Star Ports Project entities, and their tangible or intangible rights are (a) repeated and flagrant violations of the TI Order, (b) audacious attempts to circumvent this Court's finding it has dominant jurisdiction over ownership issues related to Axis, other Lone Star Ports Project entities, their tangible and intangible rights, and the Lone Star Ports Project, and (c) wrongful attempts to interfere with and moot this Court's February 9, 2026 trial setting on these issues.

However, Powers does not explain or analyze how or why actions in the Nueces County Case are "attempts to circumvent this Court's finding it has dominant jurisdiction" or "wrongful attempts to interfere with and moot this Court's February 9, 2026 trial setting." In any event, these conclusory assertions cannot support any alleged TI Order violation because neither the Court's dominant-jurisdiction finding nor its trial setting is incorporated into, or enforceable through, the TI Order.

14. These thirteen alleged violations are the only violations actually sworn to by Powers in his declaration. As such, they are the only statements that can form a basis for any show cause order.

15. Finally, to the extent the Court considers Powers' declaration properly sworn, Powers' declaration is independently improper because it Powers lacks the personal knowledge to support any show cause order. Powers testifies that Bonnie "knowing[ly] and intentional[ly]" violated the TI Order, but Powers lacks any evidence to support said testimony. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010) (disregarding assertion of third party's intent which was not based on personal knowledge because affidavits must "be based on personal

---

[19] Declaration ¶ 31.

9

knowledge, not supposition."). And Powers' mere review of the documents he attaches to his declaration are insufficient to qualify him as having personal knowledge of the facts contained within the documents. *See Southtex 66 Pipeline Co., Ltd. v. Spoor*, 238 S.W.3d 538, 542 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that personally traveling to Austin to pick up two certified copies of printouts from the Railroad Commission insufficient to prove declarant had personal knowledge of the facts from said documents recited in the affidavit).

**III.**
**CONCLUSION & PRAYER**

16.     The Court should not issue a show cause order because Plaintiffs have failed to provide this Court sworn evidence linking Bonnie, individually, to any alleged violation of the TI Order. Nevertheless, should the Court decide to issue a show cause order, and while Bonnie is confident the Court will find Plaintiffs' claimed violations without merit, due process requires that the Court's show cause order not include (i) findings of fact that Bonnie has not had the opportunity to contest at an evidentiary hearing (even under the guise of a "background" section, or (ii) allegations that lack verified or sufficient support.

10

Respectfully submitted,

**JACKSON WALKER LLP**

By: _____

    Joel R. Glover
    State Bar No. 24087593
    jglover@jw.com
    Sarah Patel Pacheco
    State Bar No. 00788164
    efile-spacheco@jw.com
    Richard A. Howell
    State Bar No. 24056674
    rahowell@jw.com
    Kathrine M. Silver
    State Bar No. 24013510
    ksilver@jw.com
    Austin K. Yancy
    State Bar No. 24110558
    ayancy@jw.com
    Javier Gonzalez
    State Bar No. 24119697
    jgonzalez@jw.com
    J. Davis LaBarre
    State Bar No. 24131442
    dlabarre@jw.com
    1401 McKinney St., Suite 1900
    Houston, Texas 77010
    (713) 752-4200 – Telephone
    (713) 752-4221 – Fax

*Counsel for Defendant Bonnie Berry*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing instrument contains 2,737 words, inclusive of footnotes and endnotes, but exclusive of the case caption, any index, table of contents or table of authorities, signature blocks, attached evidence, or any required certificates, which is within the word limit of 7,500 words for motions and responses as set forth in the Local Rules of the Texas Business Court.

_____

Sarah Patel Pacheco

## CERTIFICATE OF SERVICE

I certify that on December 1, 2025 a true and correct copy of the foregoing instrument was served upon all counsel of record pursuant to the Texas Rules of Civil Procedure by e-service.

_____

Sarah Patel Pacheco

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Javier Gonzalez on behalf of Sarah Pacheco
Bar No. 788164
jgonzalez@jw.com
Envelope ID: 108546336
Filing Code Description: No Fee Documents
Filing Description: Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order
Status as of 12/1/2025 10:33 AM CST

Associated Case Party: Bonnie Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kathrine Silver | | ksilver@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Joel Glover | | jglover@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Richard Howell | | rahowell@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Austin Yancy | | ayancy@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Sarah Pacheco | | efile-spacheco@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Davis LaBarre | | dlabarre@jw.com | 12/1/2025 10:01:33 AM | SENT |
| Javier Gonzalez | | jgonzalez@jw.com | 12/1/2025 10:01:33 AM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Charles Henke | 784254 | chenke@henkelawfirm.com | 12/1/2025 10:01:33 AM | SENT |
| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/1/2025 10:01:33 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Javier Gonzalez on behalf of Sarah Pacheco
Bar No. 788164
jgonzalez@jw.com
Envelope ID: 108546336
Filing Code Description: No Fee Documents
Filing Description: Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order
Status as of 12/1/2025 10:33 AM CST

Case Contacts

| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/1/2025 10:01:33 AM | SENT |
|---|---|---|---|---|
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 12/1/2025 10:01:33 AM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Gladys Simone Brown | | browngl@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/1/2025 10:01:33 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/1/2025 10:01:33 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Angela Torres | | angela.torres@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 12/1/2025 10:01:33 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/1/2025 10:01:33 AM | SENT |
| Jessica Valdez | | jvaldez@gibbsbruns.com | 12/1/2025 10:01:33 AM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 12/1/2025 10:01:33 AM | SENT |
| Foster Baird | | foster.baird@txcourts.gov | 12/1/2025 10:01:33 AM | SENT |
| Ethan Lim | | elim@henkelawfirm.com | 12/1/2025 10:01:33 AM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/1/2025 10:01:33 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Javier Gonzalez on behalf of Sarah Pacheco
Bar No. 788164
jgonzalez@jw.com
Envelope ID: 108546336
Filing Code Description: No Fee Documents
Filing Description: Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order
Status as of 12/1/2025 10:33 AM CST

Associated Case Party: MarvinGlennBerry

| Susan Gonzales | | susan@dallisonlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Shanna Gohlke | | gohlkes@bayltd.com | 12/1/2025 10:01:33 AM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | | adawson@beckredden.com | 12/1/2025 10:01:33 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/1/2025 10:01:33 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 12/1/2025 10:01:33 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/1/2025 10:01:33 AM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Cara MittlemanKelly | | Cara.Kelly@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 12/1/2025 10:01:33 AM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/1/2025 10:01:33 AM | SENT |

E-filed in the Office of the Clerk
for the Business Court of Texas
12/1/2025 5:00 PM
Accepted by: Alexis Jennings
Case Number: 24-BC11A-0025

**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| ALBERT THEODORE POWERS;<br>ALLIED PORTS LLC, | § <br> § <br> § | |
| *Plaintiffs,* | § <br> § <br> § | |
| v. | § <br> § | Cause No. 24–BC11A–0025 |
| ALLEN LAWRENCE BERRY;<br>MARVIN GLENN BERRY; and<br>BONNIE BERRY, | § <br> § <br> § <br> § | |
| *Defendants.* | § <br> § <br> § | |

**DEFENDANT MARVIN BERRY'S JOINDER TO BONNIE BERRY'S OBJECTION TO PLAINTIFFS' PROPOSED SHOW CAUSE ORDER**

To the Honorable Judge of Said Court:

Defendant Marvin Glen Berry ("Marty," "Marty Berry" or "Defendant Marty Berry") files this Joinder to Defendant Bonnie Berry's Objection to Plaintiffs' Show Cause Order (the "Objection") and respectfully show this Honorable Court as follows:

**I. NOTICE OF JOINDER**

1. On December 1, 2025, Defendant Bonnie Berry filed her Objection to Plaintiffs' Proposed Show Cause Order. Defendant Marty Berry hereby notifies the Court and all parties that he joins in Defendant Bonnie Berry's Objections to Plaintiffs' Proposed Show Cause Order for the reasons stated therein. By this notice of joinder, Defendant Marty Berry adopts by reference the arguments and authorities set forth by Defendant Bonnie Berry in the Objection. Furthermore, Defendant Marty Berry joins in the Objection rather than file a response on the merits to bring to the Court's attention various procedural errors in the proposed order.

2. Defendant Marty Berry will respond more fully on the merits prior to any show cause hearing should the Court issue a show cause order pursuant to the Texas Rules of Civil

1

Procedure.  Defendant Marty Berry expressly reserves the right to respond on the merits of any show cause order issued duly issued by this Court.

## II. PROPOSED SHOW CAUSE ORDER VIOLATES DUE PROCESS RIGHTS

3. As stated in the Objection, Plaintiffs' proposed show cause order violates Defendant Marty Berry's right to due process.  TEX. R. CIV. P. 692; *Ex parte White*, 149 Tex. 155, 158 - 59 (1950), *abrogated on other grounds by Ex parte Winfree*, 153 Tex. 12 (1953); *Ex parte Browne*, 543 S.W.2d 82, 89 (Tex. 1976).

4. Where a declaration merely incorporates by reference allegations in the pleading, the declaration is legally insufficient to support relief. *See State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in United States Currency ($90,235.00)*, 511 S.W.3d 136, 144 (Tex. App.—El Paso 2014, no pet.) ("A summary judgment affidavit which simply adopts the pleadings, including a motion for summary judgment, is not competent summary judgment evidence and is insufficient either to support or defeat a motion for summary judgment.") (citing *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 60 (Tex. App.—Fort Worth 2011, pet. denied); *Lawrenson v. Global Marine, Inc.,* 869 S.W.2d 519, 522–23 (Tex. App.—Texarkana 1993, writ denied); *Loomis v. City of Dallas,* 472 S.W.2d 809, 811 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.)).

5. Findings of facts "can have no purpose" where a "judgment [is] rendered without an evidentiary hearing." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *See also Love v. Moreland*, 280 S.W.3d 334, 339 (Tex. App.—Amarillo 2008, no pet.) ("That no one actually tendered evidence or stipulated to the relevant facts at the hearing is also troublesome since factual findings were rendered.").  Plaintiffs' proposed show cause order includes such findings of fact without the requisite evidentiary hearing.  Furthermore, such civil contempt requires proof ***beyond a reasonable doubt*** of a violation of a court order that is

2

reasonably specific and done with willful intent. *Ex parte Chambers*, 898 S.W.2d 257, 259(Tex. 1995) (emphasis added).

### III. INCLUSION OF "BACKGROUND FACTS" WITHOUT EVIDENTIARY HEARING VIOLATES MARTY'S DUE PROCESS RIGHTS

6. Defendant Marty Berry objects to the inclusion of "background facts" in Plaintiffs' proposed show cause order for the same reasons Defendant Bonnie Berry sets forth in the Objection. These "background facts" were not established nor proven beyond a reasonable doubt through an evidentiary hearing and their inclusion violates Defendant Marty Berry's right to due process.

7. Furthermore, for the reasons stated in the Objection, which Marty Berry adopts and joins in, the Court cannot issue a show cause order as proposed by Plaintiffs based on unverified allegations or facially defective declarations. Doing so violates Marty Berry's right to due process.

### IV.
### CONCLUSION & PRAYER

For the reasons stated herein and in the Objection, which Defendant Marty Berry adopts and joins, the Court should not issue the show cause order proposed by Plaintiffs. If the Court should decide to issue a show cause order, Defendants' right to due process requires that such an order no include: i) findings of fact that Defendant Marty Berry has not had the opportunity to contest at an evidentiary hearing (even if disguised as "background" section) and ii) allegations that lack verified and/or sufficient evidentiary support.

Dated: December 1, 2025           Respectfully submitted,

**HENKE & WILLIAMS, LLP**

*/s/ Charlie Henke*
CHARLIE HENKE
State Bar No. 00784254
CHenke@HenkeLawFirm.com
JETT WILLIAMS III
State Bar No. 21554000
JWilliams@HenkeLawFirm.com
COLEMAN TUCKER
State Bar No. 00786442
CTucker@HenkeLawFirm.com
DEBRA DONALDSON
State Bar No. 00787382
DDonaldson@HenkeLawFirm.com
2929 Allen Parkway, 39th Floor
Houston, Texas 77019
Telephone: (713) 940-4500
Facsimile: (713) 940-4545

**COUNSEL FOR DEFENDANTS
MARVIN GLEN BERRY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following counsel of record via electronic service through the electronic filing manager ("EFM") if the following email addresses are on file with the EFM pursuant to TEX. R. CIV. P. 21a(a)(1), otherwise via electronic mail service pursuant to TEX. R. CIV. P. 21a(a)(2) on December 1, 2025:

Douglas A. Allison, Esq.
Law Offices of Douglas Allison
403 N. Tancahua Street
Corpus Christi, Texas 78401
doug@dallisonlaw.com

Vanessa D. Gilmore, Esq.
Roberts Markland LLP
2555 N MacGregor Way
Houston, Texas 77004
vg@robertsmarkland.com

**Attorneys for Defendants**
**Marty Berry and Bonnie Berry**

Sarah Patel Pacheco
Joel R. Glover
Jackson Walker, LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
spacheco@jw.com
jglover@jw.com

**Attorneys for Defendant Bonnie Berry**

Barrett Reasoner
Mike Absmeier
Bruce Baldree
Gibbs & Bruns, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002-5215
breasoner@gibbsbruns.com
mabsmeier@gibbsbruns.com
bbaldree@gibbsbruns.com

**Attorney for Defendant Allen Lawrence**
**Berry**

M. Jake McClellan, Esq.
Madeline E. Gay, Esq.
Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
jmcclellan@beckredden.com
mgay@beckredden.com

**Attorneys for Plaintiff**
**Albert Theodore Powers**

Roland Garcia, Esq.
Steven Higginbotham, Esq.
Greenberg Traurig, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
garciar@gtlaw.com
higginbothams@gtlaw.com

**Attorneys for Plaintiffs**
**Allied Ports, LLC and**
**Albert Theodore Powers**

/s/ *Charlie Henke*
Charlie Henke

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charlie Henke
Bar No. 784254
chenke@henkelawfirm.com
Envelope ID: 108581644
Filing Code Description: No Fee Documents
Filing Description: Defendant Marvin Berry's Joinder to Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order
Status as of 12/2/2025 8:25 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Kathrine Silver | | ksilver@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Joel Glover | | jglover@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Richard Howell | | rahowell@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Charles Henke | 784254 | chenke@henkelawfirm.com | 12/1/2025 5:00:29 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Alistair Dawson | | adawson@beckredden.com | 12/1/2025 5:00:29 PM | SENT |
| Emily Williams | 24093375 | ewilliams@henkelawfirm.com | 12/1/2025 5:00:29 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/1/2025 5:00:29 PM | SENT |
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 12/1/2025 5:00:29 PM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 12/1/2025 5:00:29 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/1/2025 5:00:29 PM | SENT |
| Austin Yancy | | ayancy@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Sarah Pacheco | | efile-spacheco@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Davis LaBarre | | dlabarre@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charlie Henke
Bar No. 784254
chenke@henkelawfirm.com
Envelope ID: 108581644
Filing Code Description: No Fee Documents
Filing Description: Defendant Marvin Berry's Joinder to Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order
Status as of 12/2/2025 8:25 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Cameron Roth | | CRoth@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/1/2025 5:00:29 PM | SENT |
| Gladys Simone Brown | | browngl@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/1/2025 5:00:29 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/1/2025 5:00:29 PM | SENT |
| Angela Torres | | angela.torres@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Javier Gonzalez | | jgonzalez@jw.com | 12/1/2025 5:00:29 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 12/1/2025 5:00:29 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 12/1/2025 5:00:29 PM | SENT |
| Jessica Valdez | | jvaldez@gibbsbruns.com | 12/1/2025 5:00:29 PM | SENT |
| Shanna Gohlke | | gohlkes@bayltd.com | 12/1/2025 5:00:29 PM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 12/1/2025 5:00:29 PM | SENT |
| Foster Baird | | foster.baird@txcourts.gov | 12/1/2025 5:00:29 PM | SENT |
| Cara MittlemanKelly | | Cara.Kelly@gtlaw.com | 12/1/2025 5:00:29 PM | SENT |
| Ethan Lim | | elim@henkelawfirm.com | 12/1/2025 5:00:29 PM | SENT |

**Tab G**
**December 8, 2025 Business Court Order**
**Abating the OSC and Cancelling**
**12/10/25 Hearing**

FILED IN
BUSINESS COURT OF TEXAS
BEVERLY CRUMLEY, CLERK
ENTERED
12/8/2025



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § § | |
| *Plaintiffs,* | § § § | Cause No. 24-BC11A-0025 |
| v. | § § | |
| Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry, | § § § | |
| *Defendants.* | § | |

**ORDER**

On December 3, 2025, this Court entered an Order to Show Cause ("December 3 Order") following consideration of Plaintiffs' Application for Show Cause Order and Motion for Sanctions (filed November 25, 2025); Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order (filed December 1, 2025); Defendant Marvin Berry's Joinder to Bonnie Berry's Objection to Plaintiffs' Proposed Show Cause Order (filed December 1, 2025); and Plaintiffs' Supplement and Corrected Supplement to Application for Show Cause Order and Motion for Sanctions (filed December 3, 2025). The December 3 Order requires Defendants Marty Berry and Bonnie Berry to appear before this Court on December

1

Copy from re:SearchTX

10, 2025 at 10:00 AM CST to show cause why they should not be held in contempt for violation of the Court's April 2, 2025 Order Granting Temporary Injunction ("TI Order").

On December 8, 2025 at 10:12 AM CST, Defendant Bonnie Berry filed her Emergency Motion to Vacate Show Cause Order, informing the Court that the TI Order is still the subject of a pending appeal (Case No. 15-25-00060-CV), and that Plaintiffs had not yet sought a referral of enforcement of the TI Order from the Fifteenth Court of Appeals under Texas Rule of Appellate Procedure 29.4. On December 8, 2025 at 2:00 PM CST, pursuant to the Court's request, Plaintiffs filed their Response in Opposition to Bonnie Berry's Emergency Motion to Vacate Show Cause Order, which informed the Court that Plaintiffs now plan to file a motion with the Fifteenth Court of Appeals on an emergency basis to seek a referral of enforcement of the TI Order to this Court. In addition to the foregoing filings, in issuing this Order, the Court has considered Defendant Marvin Berry's Joinder to Bonnie Berry's Emergency Motion to Vacate Show Cause Order (filed December 8, 2025 at 2:01 PM CST) and Bonnie Berry's Reply to Plaintiff's Response to Emergency Motion to Vacate Show Cause Order (filed December 8, 2025 at 3:20 PM CST).

Accordingly, the Court **ABATES** its December 3 Order and **CANCELS** the December 10, 2025 hearing to show cause pending the resolution of Plaintiffs' request for a referral of enforcement of the TI Order made subject of **Case No. 15-25-00060-CV.**

Notwithstanding this Order's abatement of the December 3 Order, the TI Order remains in full effect under Texas Rule of Appellate Procedure 29.1 unless otherwise ordered by this Court or by the Fifteenth Court of Appeals.

2

Copy from re:SearchTX

**SO ORDERED.**

**SIGNED** this 8th day of December, 2025, at _____ 4:41 PM CST.

_____
Hon. Sofía Adrogué
Texas Business Court, Eleventh Division

3

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gina Pegues on behalf of Elizabeth Bloch
Bar No. 2495500
Peguesg@gtlaw.com
Envelope ID: 108910521
Filing Code Description: Motion
Filing Description: Appellees' Motion for Referral of Enforcement Proceedings to the Trial Court
Status as of 12/10/2025 7:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Adam Aston | 24045423 | aaston@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 12/9/2025 5:13:09 PM | SENT |
| Yvonne Ferrari | | yferrari@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Michelle Bultman | | MBultman@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Jesse Crochet | | jcrochet@beckredden.com | 12/9/2025 5:13:09 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/9/2025 5:13:09 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Elizabeth G. "Heidi"Bloch | | blochh@gtlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Elizabeth G. "Heidi"Bloch | | blochh@gtlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Michael JakeMcClellan | | jmcclellan@beckredden.com | 12/9/2025 5:13:09 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Barrett Reasoner | | breasoner@gibbsbruns.com | 12/9/2025 5:13:09 PM | SENT |
| Roland Garcia | | garciar@gtlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Alistair Dawson | | adawson@beckredden.com | 12/9/2025 5:13:09 PM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Douglas Allison | | doug@dallisonlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/9/2025 5:13:09 PM | SENT |

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gina Pegues on behalf of Elizabeth Bloch
Bar No. 2495500
Peguesg@gtlaw.com
Envelope ID: 108910521
Filing Code Description: Motion
Filing Description: Appellees' Motion for Referral of Enforcement Proceedings to the Trial Court
Status as of 12/10/2025 7:08 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Audrey Vicknair | | avicknair@vicknairlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Douglas Allison | | doug@dallisonlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Anna Erickson | | aerickson@beckredden.com | 12/9/2025 5:13:09 PM | SENT |
| Charlie Henke | | chenke@henkelawfirm.com | 12/9/2025 5:13:09 PM | SENT |
| Joel Glover | | jglover@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Cara MittlemanKelly | | cara.kelly@gtlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Angela Torres | | Angela.Torres@gtlaw.com | 12/9/2025 5:13:09 PM | SENT |
| Debra Donaldson | | ddonaldson@henkelawfirm.com | 12/9/2025 5:13:09 PM | SENT |
| Coleman Tucker | | ctucker@henkelawfirm.com | 12/9/2025 5:13:09 PM | SENT |
| Jett Williams | 21554000 | jwilliams@henkelawfirm.com | 12/9/2025 5:13:09 PM | SENT |
| John LaBarre | 24131442 | dlabarre@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Javier Gonzalez | 24119697 | jgonzalez@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Austin Yancy | 24110558 | ayancy@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Kathrine Silver | 24013510 | ksilver@jw.com | 12/9/2025 5:13:09 PM | SENT |
| Sarah Patel | 788164 | efile-spacheco@jw.com | 12/9/2025 5:13:09 PM | SENT |